**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> THE PRICELINE GROUP INC., KAYAK SOFTWARE CORPORATION, OPENTABLE, INC., AND PRICELINE.COM LLC <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff International Business Machines Corporation ("IBM"), for its Original Complaint for Patent Infringement against The Priceline Group Inc. ("The Priceline Group"), Kayak Software Corporation ("Kayak"), OpenTable, Inc. ("OpenTable"), and priceline.com LLC ("Priceline.com") (collectively "Priceline" or "Defendants") alleges as follows:

**INTRODUCTION**

1. IBM is a world leader in technology and innovation. IBM spends billions of dollars each year on research and development, and those efforts have resulted in the issuance of more than 60,000 patents worldwide. Patents enjoy the same fundamental protections as real property. IBM, like any property owner, is entitled to insist that others respect its property and to demand payment from those who take it for their own use. Priceline has built its business model on the use of IBM's patents. Moreover, despite IBM's repeated demands, Priceline refuses to negotiate a license. This lawsuit seeks to stop Priceline from continuing to use IBM's intellectual property without authorization.

## NATURE OF THE CASE

2. This action arises under 35 U.S.C. § 271 for Priceline's infringement of IBM's United States Patent Nos. 5,796,967 (the "'967 patent"), 7,072,849 (the "'849 patent"), 5,961,601 (the "'601 patent"), and 7,631,346 (the "'346 patent") (collectively the "Patents-In-Suit").

## THE PARTIES

3. Plaintiff IBM is a New York corporation, with its principal place of business at 1 New Orchard Road, Armonk, New York 10504.

4. Defendant The Priceline Group is a Delaware corporation, with its principle place of business at 800 Connecticut Ave, Norwalk, Connecticut 06854. The Priceline Group may be served through its registered agent for service, Corporation Service Company, 2711 Centerville Road Suite 400, Wilmington, Delaware 19808. The Priceline Group provides online travel and related services to consumers and local partners through the priceline.com, KAYAK, and OpenTable brands. The Priceline Group management team includes Chief Executive Officers for Priceline.com, Kayak, and OpenTable.

5. Defendant Priceline.com is a Delaware limited liability company, with its principle place of business at 800 Connecticut Ave, Norwalk, Connecticut 06854. Priceline.com does business through the website www.priceline.com. Priceline.com may be served through its registered agent for service, Corporation Service Company, 2711 Centerville Road Suite 400, Wilmington, Delaware 19808. Priceline.com is a wholly-owned subsidiary of The Priceline Group.

6. Defendant Kayak is a Delaware corporation, with its principle place of business at 7 Market Street, Stamford, CT 06902. Kayak does business through the website www.kayak.com. Kayak may be served through its registered agent for service, Corporation

Service Company, 2711 Centerville Road Suite 400, Wilmington, Delaware 19808. Kayak is a wholly-owned subsidiary of The Priceline Group.

7.  Defendant OpenTable is a Delaware corporation, with its principle place of business at 1 Montgomery Street, Suite 700, San Francisco, CA 94104. OpenTable does business through the website www.opentable.com. OpenTable may be served through its registered agent for service, Corporation Service Company, 2711 Centerville Rd Suite 400, Wilmington, Delaware 19808. OpenTable is a wholly-owned subsidiary of The Priceline Group.

## JURISDICTION AND VENUE

8.  This action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq*. The jurisdiction of this Court over the subject matter of this action is proper under 28 U.S.C. §§ 1331 and 1338(a).

9.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

10. Personal jurisdiction exists over Defendants because each Defendant is organized under the laws of Delaware, because each Defendant conducts business in Delaware, by at least offering for sale and selling products and services through its websites, which are accessible in Delaware, and because infringement has occurred and continues to occur in Delaware.

## FACTUAL BACKGROUND

**A.  IBM Is A Recognized Innovator.**

11. IBM is recognized throughout the world as a pioneer in many aspects of science and technology. On eight occasions, more times than any other company or organization, IBM has been awarded the U.S. National Medal of Technology, the nation's highest award for technological innovation. During IBM's over 100-year history, IBM's employees have included six Nobel laureates, five National Medal of Science recipients, and at least fourteen inventors in

the National Inventors Hall of Fame.

12. These and other IBM employees have introduced the world to technology that the global community takes for granted today, including the dynamic random access memory—DRAMs—found in nearly all modern computers; magnetic disk storage—hard disk drives—found in computers and portable music players; and some of the world's most powerful supercomputers, including Deep Blue, the first computer to beat a reigning chess champion and which is on display at the Smithsonian's National Museum of American History in Washington, D.C. IBM's commitment to developing these types of advanced computing technologies has helped to usher in the information age.

**B.    IBM Is Committed To Protecting Its Innovations Through The Patent System.**

13. IBM's research and development operations differentiate IBM from many other companies. IBM annually spends billions of dollars for research and development. In addition to yielding inventions that have literally changed the way in which the world works, IBM's research and development efforts have resulted in more than 60,000 patents worldwide. For over two decades the United States Patent and Trademark Office ("USPTO") has issued more patents to IBM than to any other company in the world.

14. Like the research upon which the patents are based, IBM's patents also benefit society. Indeed, the Supreme Court has recognized that the patent system encourages both the creation and the disclosure of new and useful advances in technology. Such disclosure, in turn, permits society to innovate further. And, as the Court has further recognized, as a reward for committing resources to innovation and for disclosing that innovation, the patent system provides patent owners with the exclusive right to prevent others from practicing the claimed invention for a limited period of time.

C. **IBM Routinely Licenses Its Patents In Many Fields, But Will Enforce Its Rights Against Those Who Take Its Intellectual Property Unlawfully.**

15. IBM's commitment to creating a large patent portfolio underscores the value that IBM places in the exchange of innovation, and disclosure of that innovation, in return for limited exclusivity. Indeed, IBM has used its patent portfolio to generate revenue and other significant value for the company by executing patent cross-license agreements. The revenue generated through patent licensing enables IBM to continue to commit resources to innovation. Cross licensing, in turn, provides IBM with the freedom to innovate and operate in a manner that respects the technology of others.

16. Given the investment IBM makes in the development of new technologies and the management of its patent portfolio, IBM and its shareholders expect companies to act responsibly with respect to IBM's patents. IBM facilitates this by routinely licensing its patents in many fields and by working with companies that wish to use IBM's technology in those fields in which IBM grants licenses. When a company appropriates IBM's intellectual property but refuses to negotiate a license, IBM has no choice but to seek judicial assistance.

D. **IBM Invented Methods For Presenting Applications And Advertisements In An Interactive Service While Developing The PRODIGY Online Service.**

17. The inventors of the '967 and '849 patents developed the patented technology as part of the efforts to launch the PRODIGY online service ("Prodigy"), a forerunner to today's Internet, in the late 1980s. The inventors believed that to be commercially viable, Prodigy would have to provide interactive applications to millions of users with minimal response times. The inventors believed that the "dumb" terminal approach that had been commonly used in conventional systems, which heavily relied on host servers' processing and storage resources for performance, would not be suitable. As a result, the inventors sought to develop more efficient methods of communication that would improve the speed and functionality of interactive

5

applications and reduce equipment capital and operating costs.

18. In light of the above considerations, the inventors developed novel methods for presenting applications and advertisements in an interactive service that would take advantage of the computing power of each user's PC and thereby reduce demand on host servers, such as those used by Prodigy. The inventors recognized that if applications were structured to be comprised of "objects" of data and program code capable of being processed by a user's PC, the Prodigy system would be more efficient than conventional systems. By harnessing the processing and storage capabilities of the user's PC, applications could then be composed on the fly from objects stored locally on the PC, reducing reliance on Prodigy's server and network resources.

19. Prodigy embodied inventions from the '967 and '849 patents when it launched in the late 1980s. The efficiencies derived from the use of the patented technology permitted the implementation of one the first graphical user interfaces for online services. The efficiencies also allowed Prodigy to quickly grow its user base. By 1990, Prodigy had become one of the largest online service providers with hundreds of thousands of users. The technological innovations embodied in these patent persist to this day and are fundamental to the efficient communication of Internet content.

**E.  IBM Invented Methods Of Preserving State Information In A Continuing Conservation Between A Client And Server Networked Via A Stateless Protocol.**

20. The inventor of the '601 patent, Arun K. Iyengar, developed the patented technology as part of IBM's efforts to discover a better technique of preserving state information in Internet communications. State information allows clients and servers to keep track of prior communications during a conversation. For example, online merchants can use state information to keep track of a client's product and service selections while the client is shopping and then use

6

that information when the client decides to make a purchase.  However, typical Internet communication protocols, such as HTTP, are stateless, in other words, they do not have a built-in mechanism to keep track of state information.  At the time of the invention, engineers attempted to solve this problem by passing state information as hidden variables within forms or by using "Cookies."  Both of those methods had significant drawbacks and limited the types of interactions that could preserve state information.

21. The inventor recognized the need for techniques to preserve state information that supported a wide variety of network interactions.  He thus developed novel methods of recursively embedding state information into communications between clients and servers.  For example, the specification of the '601 patent discloses program modules that modify hypertext links in HTML pages in a way that preserves state information for the duration of a conversation.  By transforming Internet communications in this way, the patented technology of the '601 patent provides an efficient mechanism to build on previous communications between a server and a client, such as between an online merchant and a customer.

F. **IBM Invented Methods For A Runtime User Account Creation Operation Using A Single-Sign-On Process In A Federated Computer Environment.**

22. The inventors of the '346 patent developed the patented technology as part of IBM's efforts to improve single-sign-on technology.  To access a protected resource at a service provider on the Internet, a user typically has to authenticate him or herself with the service provider.  Single-sign-on technology facilitates a user's connection to resources by requiring only one authorization operation during a particular user session.  However, conventional technology at the time of the invention required that the user already have an account with the service provider to use single-sign-on technology.

23.     The inventors of the '346 patent sought to develop single-sign-on technology that would permit a new user of a service provider to access protected resources. They developed novel methods for systems interacting within a federated computing environment to trigger a single-sign-on operation on behalf of a user that would obtain access to a protected resource and create an account for the user. The specification discloses how to structure a federated computing environment and the sequence and content of interactions between different systems that can support the patented methods. The '346 patent thus extends the benefits of single-sign-on technology.

G.      **Priceline Has Built Its Business By Infringing IBM's Patents.**

24.     Priceline is a well-known company that connects consumers wishing to make travel or related reservations with providers of those services. Priceline has grown rapidly and is now a Fortune 500 company with billions of dollars of revenue per year.

25.     Rather than build its business on its own technologies, Priceline has appropriated the inventions of the Patents-In-Suit. Websites under Priceline's control, including at least www.priceline.com, www.kayak.com, and www.opentable.com, use the technology claimed by the Patents-In-Suit to provide travel and reservation applications to its users.

26.     On October 13, 2011, IBM sent a letter to inform Priceline that it was infringing at least the '967, '849, and '601 patents. IBM subsequently informed Priceline that it also infringed the '346 patent. Since 2011, IBM has tried to work with Priceline in an effort to negotiate a licensing agreement. IBM has made repeated trips to Priceline's facilities and presented detailed examples to Priceline of its infringement of each of the Patents-In-Suit.

27.     Priceline has refused to engage in any meaningful discussion on the merits, resorting instead to delay and non-responsive answers. Throughout, Priceline has continued to willfully infringe IBM's patents so as to obtain the significant benefits of IBM's innovations

without paying any compensation to IBM.

28. Because IBM's three-year struggle to negotiate a license agreement that remedies Priceline's unlawful conduct has failed, IBM has been forced to seek relief through litigation. Among other relief sought, IBM seeks royalties on the billions of dollars in revenue that Priceline has received based on its unlawful infringement of IBM's patented technology.

## COUNT ONE

## INFRINGEMENT OF THE '967 PATENT

29. IBM is the owner of all right, title and interest in the '967 patent. The '967 patent was duly and properly issued by the USPTO on August 18, 1998. The '967 patent was duly assigned to IBM. A copy of the '967 patent is attached hereto as Exhibit A.

30. In violation of 35 U.S.C. § 271, Priceline has infringed, contributed to the infringement of, and/or induced others to infringe one or more of the claims of the '967 patent by having made, designed, offered for sale, sold, provided, used, maintained, and/or supported its www.priceline.com, www.kayak.com, and www.opentable.com websites, as well as other similar websites under The Priceline Group's control. Priceline's infringement is continuing.

31. IBM has been damaged by the infringement of its '967 patent by Priceline and will continue to be damaged by such infringement. IBM is entitled to recover from Priceline the damages sustained by IBM as a result of Priceline's wrongful acts.

32. The continued infringement by Priceline of the '967 patent is deliberate and willful, entitling IBM to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

33. IBM has suffered and continues to suffer irreparable harm, for which there is no adequate remedy at law, and will continue to do so unless Priceline is enjoined therefrom by this Court.

## COUNT TWO

## INFRINGEMENT OF THE '849 PATENT

34. IBM is the owner of all right, title and interest in the '849 patent. The '849 patent was duly and properly issued by the USPTO on July 4, 2006. The '849 patent was duly assigned to IBM. A copy of the '849 patent is attached hereto as Exhibit B.

35. In violation of 35 U.S.C. § 271, Priceline has infringed, contributed to the infringement of, and/or induced others to infringe one or more of the claims of the '849 patent by having made, designed, offered for sale, sold, provided, used, maintained, and/or supported its www.priceline.com, www.kayak.com, and www.opentable.com websites, as well as other similar websites under The Priceline Group's control. Priceline's infringement is continuing.

36. IBM has been damaged by the infringement of its '849 patent by Priceline and will continue to be damaged by such infringement. IBM is entitled to recover from Priceline the damages sustained by IBM as a result of Priceline's wrongful acts.

37. The continued infringement by Priceline of the '849 patent is deliberate and willful, entitling IBM to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

38. IBM has suffered and continues to suffer irreparable harm, for which there is no adequate remedy at law, and will continue to do so unless Priceline is enjoined therefrom by this Court.

## COUNT THREE

## INFRINGEMENT OF THE '601 PATENT

39. IBM is the owner of all right, title and interest in the '601 patent. The '601 patent was duly and properly issued by the USPTO on October 5, 1999. The '601 patent was duly assigned to IBM. A copy of the '601 patent is attached hereto as Exhibit C.

40. In violation of 35 U.S.C. § 271, Priceline has infringed, contributed to the infringement of, and/or induced others to infringe one or more of the claims of the '601 patent by having made, designed, offered for sale, sold, provided, used, maintained, and/or supported its www.priceline.com, www.kayak.com, and www.opentable.com websites, as well as other similar websites under The Priceline Group's control. Priceline's infringement is continuing.

41. IBM has been damaged by the infringement of its '601 patent by Priceline and will continue to be damaged by such infringement. IBM is entitled to recover from Priceline the damages sustained by IBM as a result of Priceline's wrongful acts.

42. The continued infringement by Priceline of the '601 patent is deliberate and willful, entitling IBM to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

43. IBM has suffered and continues to suffer irreparable harm, for which there is no adequate remedy at law, and will continue to do so unless Priceline is enjoined therefrom by this Court.

## COUNT FOUR

## INFRINGEMENT OF THE '346 PATENT

44. IBM is the owner of all right, title and interest in the '346 patent. The '346 patent was duly and properly issued by the USPTO on December 8, 2009. The '346 patent was duly assigned to IBM. A copy of the '346 patent is attached hereto as Exhibit D.

45. In violation of 35 U.S.C. § 271, Priceline has infringed, contributed to the infringement of, and/or induced others to infringe one or more of the claims of the '346 patent by having made, designed, offered for sale, sold, provided, used, maintained, and/or supported its www.priceline.com, www.kayak.com, and www.opentable.com websites, as well as other similar websites under The Priceline Group's control. Priceline's infringement is continuing.

46.     IBM has been damaged by the infringement of its '346 patent by Priceline and will continue to be damaged by such infringement. IBM is entitled to recover from Priceline the damages sustained by IBM as a result of Priceline's wrongful acts.

47.     The continued infringement by Priceline of the '346 patent is deliberate and willful, entitling IBM to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

48.     IBM has suffered and continues to suffer irreparable harm, for which there is no adequate remedy at law, and will continue to do so unless Priceline is enjoined therefrom by this Court.

## RELIEF REQUESTED

Wherefore, IBM respectfully requests that this Court enter judgment against the Defendants as follows:

B.      That the '967 patent has been infringed by Priceline;

C.      That Priceline's infringement of the '967 patent has been willful;

D.      An injunction against further infringement of the '967 patent;

F.      That the '849 patent has been infringed by Priceline;

G.      That Priceline's infringement of the '849 patent has been willful;

H.      An injunction against further infringement of the '849 patent;

J.      That the '601 patent has been infringed by Priceline;

K.      That Priceline's infringement of the '601 patent has been willful;

L.      An injunction against further infringement of the '601 patent;

N.      That the '346 patent has been infringed by Priceline;

O.      That Priceline's infringement of the '346 patent has been willful;

D.      An injunction against further infringement of the '346 patent;

T.     An award of damages adequate to compensate IBM for the patent infringement that has occurred, together with pre-judgment interest and costs;

U.     An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

V.     That this is an exceptional case and an award to IBM of its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

W.     Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

IBM hereby demands trial by jury on all claims and issues so triable.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

| OF COUNSEL: | By: */s/ Richard L. Horwitz* |
|---|---|
| John M. Desmarais<br>Karim Oussayef<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 351-3400<br><br>Dated: February 9, 2015<br>1180685 / 42141 | Richard L. Horwitz (#2246)<br>David E. Moore (#3983)<br>Bindu A. Palapura (#5370)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>Tel: (302) 984-6000<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com<br><br>*Attorneys for Plaintiff International Business Machines Corporation* |