# **EXHIBIT 1**

Trials@uspto.gov
571-272-7822

Paper 32
Date:  April 24, 2015

## UNITED STATES PATENT AND TRADEMARK OFFICE

_____

## BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

BANK OF AMERICA, N.A.,
PNC FINANCIAL SERVICES GROUP, INC., and PNC BANK, N.A.,
Petitioners,

v.

INTELLECTUAL VENTURES I LLC,
Patent Owner.

_____

Case CBM2014-00030
Patent 7,603,382 B2

Before THOMAS L.

*.C. § 328(a) and 37 C.F.R. § 42.73*

CBM2014-00030
Patent 7,603,382 B2

Bank of America, N.A., PNC Financial Services Group, Inc., and PNC Bank, N.A. ("Petitioners") filed a Petition (Paper 6, "Pet.") requesting institution of a covered business method patent review of claims 1–23 of U.S. Patent 7,603,382 B2 ("the '382 patent") pursuant to 35 U.S.C. § 321. Patent Owner, Intellectual Ventures I LLC, filed a preliminary response. Paper 12 ("Prelim. Resp."). Based on these submissions, we instituted trial as to all claims of the '382 patent. Paper 14 ("Institution Dec.").

After institution, Patent Owner filed a Response (Paper 19, "PO Resp."), and Petitioners filed a Reply (Paper 22, "Pet. Reply"). In addition, the parties rely upon expert testimony. Petitioners proffered the Declaration of Brad Myers, Ph.D. (Ex. 1004, "Myers Decl.") with the Petition. Patent Owner proffered the Declaration of Peter Martin (Ex. 2003, "Martin Decl.") with its Response. In addition, a transcript of Mr. Martin's deposition (Ex. 1037, "Martin Dep.") was submitted by Petitioners. No deposition transcript was filed for Dr. Myers.

Oral Hearing was held on March 2, 2015. A transcript of the argument is entered in the record as Paper 31 ("Hearing Tr.").

We have jurisdiction under 35 U.S.C. § 6(c). This Final Written Decision is entered pursuant to 35 U.S.C. § 328(a). We conclude for the reasons that follow that Petitioners have shown by a preponderance of the evidence that claims 1–23 of the '382 patent are unpatentable.

## I. INTRODUCTION

### A. The '382 Patent (Ex. 1001)

The '382 patent, titled "Advanced Internet Interface Providing User Display Access of Customized Webpages" issued on October 13, 2009.

The '382 patent describes a system for delivering information from an information provider to an information user that is selectively tailored toward the capabilities of the information provider and the needs of the information user.  Ex. 1001, 2:3–6.

Figure 3 of the '382 patent is reproduced below.



Figure 3 is a block diagram of the interface between information users and information providers over the Internet according to the invention.  *Id.* at 2:35–37.  Information users may tailor their information user profile as needed to acquire specific information.  *Id.* at 3:40–49.  The user profile is a file that includes a plurality of fields containing information specific to the user.  *Id.* at 3:53–55.  This profile is stored in computer memory and transferred to an information provider when a Web page is accessed.  *Id.* at 4:11–14.

*B. Related Matters*

Petitioners state that they have been sued for infringement of the '382 patent in the following cases: *Intellectual Ventures I LLC v. PNC Financial Services Group, Inc.*, No. 2:13-cv-00740 (W.D. Pa. filed May 29, 2013) and *Intellectual Ventures I LLC v. Bank of America Corp.,* , No. 3:13-cv-00358

CBM2014-00030
Patent 7,603,382 B2

(W.D.N.C. filed June 12, 2013).   Pet. 1 (citing Exhibits 1006 and 1007).
Patent Owner has identified four additional lawsuits involving the '382
patent.  Paper 9.

In addition, Petitioners have submitted two memorandum decisions
entered in co-pending lawsuits.  Petitioners have submitted an April 16,
2014, Memorandum Opinion in *Intellectual Ventures I LLC v. Capital One
Financial Corp.,* Civil Action No. 1:13-cv-00740 (E.D. Va.) (Ex. 1032) and
a December 18, 2014 Memorandum Opinion in *Intellectual Ventures I LLC
v. Manufacturers & Traders Trust Co.,* Civil Action No. 13-1274-SLR (D.
Del.)(Ex. 1039).

*C. Illustrative Claims*

The '382 patent has 23 claims, all of which are being challenged in
this proceeding.  Claims 1, 7, 16, and 21 are independent.  Claim 1 is a
system claim and claims 7, 16, and 21 are method claims.  Illustrative claims
1 and 7 are reproduced below:

> 1.  A system for providing web pages accessed from a
> web site in a manner which presents the web pages tailored to
> an individual user, comprising:
> an interactive interface configured to provide dynamic
> web site navigation data to the user, the interactive interface
> comprising:
> a display depicting portions of the web site visited by the
> user as a function of the web site navigation data; and
> a display depicting portions of the web site visited by the
> user as a function of the user's personal characteristics.

> 7.  A method of generating a web page comprising:
> generating a plurality of data streams, wherein each data
> stream is associated with a particular portion of the web page,
> and wherein each data stream is stored in a computer memory;
> and

CBM2014-00030
Patent 7,603,382 B2

changing at least one of the particular portions of the web page as a function of time.

### D. The Asserted Ground

Trial was instituted on the sole ground advanced by Petitioners: that claims 1–23 are unpatentable as directed to patent-ineligible subject matter under 35 U.S.C. § 101.  Pet. 13; Institution Dec. 15.

### E. Claim Interpretation

The Board will interpret a claim of an unexpired patent using the broadest reasonable construction in light of the specification of the patent in which it appears.  *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48766 (Aug. 14, 2012); 37 CFR § 42.300(b); *In re Cuozzo Speed Techs., LLC*, 778 F.3d 1271, 1279–83 (Fed. Cir. 2015).

Under that standard, claim terms are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the context of the entire disclosure.  *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).  Any special definition for a claim term must be set forth with reasonable clarity, deliberateness, and precision.  *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

In instituting trial, we determined that, at that stage, only two terms required construction.  Institution Dec. 5–7.  Patent Owner agrees that the terms not previously construed by the Board do not require construction.  PO Resp. 6.  Patent Owner requests that the Board reconsider its construction of the two terms.  *Id.*  Furthermore, claim construction is "is not an inviolable prerequisite to a validity determination under § 101."  *Content Extraction & Transmission LLC v. Wells Fargo Bank,* 776 F.3d 1343, 1349 (Fed. Cir. 2014) (citations omitted).

CBM2014-00030
Patent 7,603,382 B2

### 1. *"interactive interface"*— *Independent Claims 1, 16, and 21*

The Board adopted the construction of "interactive interface" as "an Internet interface that provides a medium for information users to communicate with information providers." Institution Dec. at 5–6; Pet. 15.

Patent Owner contends that neither Petitioners nor the Board provides any evidence that "interactive" and "Internet" have the same meaning, "either in the '382 patent or as understood by one of skill in the art." PO Resp. 7. Patent Owner further contends that Board should adopt a construction requiring the interface to be a "selectively tailored medium." *Id.* at 8–9.

Petitioners respond that there are not any claim terms "that could reasonably be construed in a manner that would impact the 35 U.S.C. § 101 analysis." Reply 11. Petitioners further contend that the Board's construction was nevertheless correct because the patent specification and claims make it clear that it is the information that is "selectively tailored," not the information medium. *Id.* at 11–12.

We are not convinced of any error in our initial construction of "interactive interface" as an Internet interface. Institution Dec. 6. Petitioners' reliance on the Myers Declaration and the '382 patent's interchangeable use of interactive and Internet to describe the interface are persuasive. Pet. 15, 17 (citing Myers Dec., Ex. 1004 ¶ 52), 18 (citing Ex. 1001, Title, Abstract). We, therefore, determine that the correct construction of "interactive interface" is "an Internet interface that provides a medium for information users to communicate with information providers."

6

CBM2014-00030
Patent 7,603,382 B2

2.  *"display depicting portions of [the/a] web site visited by the user as a function of [the] web site navigation data"*— Independent Claims 1, 16, and 21

The Board adopted the parties' position that "web site navigation data" should be interpreted as "data representing portions of the web site visited by the user." Institution Dec. 7. However, the Board construed the entire limitation as "data representing portions of the web site visited by the user and display of same." *Id*.

Patent Owner contends that to the extent this construction "requires the depicted portions of the website to be the exact same as the website navigation data," it is improper. PO Resp. 10. Patent Owner, therefore, contends that "website navigation data" should be replaced by "data representing portions of the web site visited by the user." *Id*. at 10–11.

Petitioners contend that even if Patent Owner's construction were adopted the claims are unpatentable under 35 U.S.C. § 101. Reply 12–13. We are not persuaded by Patent Owner's argument that there is a need to change our original construction. We agree also with Petitioners that this construction is not necessary to our decision.

3.  *Other terms*

Several other claim terms are discussed in Patent Owner's Response "in case Petitioner contests the Board's finding on these terms." PO Resp. 6. As Petitioners have not contested these terms, in light of Patent Owner's statement we see no need to consider them further.

CBM2014-00030
Patent 7,603,382 B2

## II.  ANALYSIS

### A.  Patentability under 35 U.S.C. § 101

Section 101 of 35 U.S.C. defines what constitutes patentable subject matter:  "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

There are, however, three specific exceptions to the broad categories of § 101: laws of nature, physical phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010).  "The 'abstract ideas' category embodies the longstanding rule that '[a]n idea of itself is not patentable.'" *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

In *Alice*, the Supreme Court followed the two-step framework set forth in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355.  In the first step, "we determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.*  "If so, we then ask, '[w]hat else is there in the claims before us?'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1297).  In the second step, we consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application. *Id.*

Step two of the analysis may be described as a search for an "inventive concept"—i.e., an element or combination of elements that is

8

CBM2014-00030
Patent 7,603,382 B2

sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself. *Id.* (citing *Mayo*, 132 S. Ct. at 1294).

### B. Are the '382 Patent Claims Directed to Abstract Ideas?

In our Institution Decision, we determined that the '382 patent claims are directed to the abstract idea of tailoring an information provider's web page based on data about a particular user. Institution Dec. 12. Patent Owner responds that the claims do not fall within any of the "categories of abstract ideas enumerated by the Supreme Court." PO Resp. 15. Citing *Alice,* Patent Owner asserts that the claims are not directed to "an idea itself, a mathematical formula or algorithm, a fundamental economic practice long prevalent in our system of commerce, or a method of organizing human activity." *Id.* (internal quotation marks omitted). Therefore, Patent Owner asserts, the first step in the *Alice/Mayo* test is not met. *Id.* at 15–21.

Petitioners respond that in *Alice*, the Supreme Court expressly declined to limit the categories of unpatentable abstract ideas as suggested by Patent Owner. Reply 3. We are persuaded by the Supreme Court's opinion in *Alice* that Petitioners are correct, and that these enumerated categories were not intended as exclusive. Specifically, the Court wrote: "In any event, we need not labor to delimit the precise contours of the 'abstract ideas' category in this case." 134 S. Ct. at 2357; *accord Content Extraction*, 776 F.3d at 1347.

We are influenced also by the evidence from Patent Owner's expert, who testified as follows:

> I'm trying to make clear that the patent is described at
> what may appear to be a *fairly high abstract level*, because it
> was generally known by persons of skill in the art that there are

9

CBM2014-00030
Patent 7,603,382 B2

> multiple ways to go about reducing the invention to practice
> depending upon the technologies that they have at hand. And it
> wasn't the patent's job to be that specific at the time.
>     I shouldn't say it wasn't the patent's job. The inventor
> did not choose to describe at that level of detail.

Ex. 1037, 47:12–23 (emphasis added).  We therefore conclude that the first

step in the *Alice/Mayo* test is met for claims 1–23.

C.  *Are the Claims Patentable Because They Include Limitations That*
*Represent Sufficiently Inventive Concepts?*

The second step of our analysis requires us to determine whether the

claims do more than describe the abstract idea identified *supra*.

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).  In this

step we must examine the limitations of the claims to determine whether the

claims contain an "inventive concept" to "transform" the claimed abstract

idea into patentable subject matter.  *Id.*  "A claim that recites an abstract idea

must include additional features to ensure that the claim is more than a

drafting effort designed to monopolize the abstract idea." *Id.* (quoting

*Mayo*, 132 S. Ct. at 1297) (internal quotation marks and brackets omitted).

Not every included feature will suffice.  Those "additional features"

must be more than "well-understood, routine, conventional activity." *Mayo*,

132 S. Ct. at 1298;  *see Ultramercial*, 772 F.3d at 716 ("[E]ach of those

eleven steps merely instructs the practitioner to implement the abstract idea

with 'routine, conventional activit[ies],' which is insufficient to transform

the patent-ineligible abstract idea into patent-eligible subject matter."

(Second alteration in original)); *Content Extraction*, 776 F.3d at 1348

("[Patentee] conceded at oral argument that the use of a scanner or other

10

CBM2014-00030
Patent 7,603,382 B2

digitizing device to extract data from a document was well-known at the
time of filing, as was the ability of computers to translate the shapes on a
physical page into typeface characters."); *buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350, 1355 (Fed. Cir. 2014)(holding that the subject of the patent
claims was "beyond question of ancient lineage").

Patent Owner contends that the claims of the '382 patent "do not
preempt the alleged abstract idea and are transformed by an inventive
concept." PO Resp. 21. Claims 1–6 and 16–23 use the claimed interactive
interface to provide tailored content based upon the user's personal
characteristics and the user's website navigation data. *Id.* at 23. For these
claims, Patent Owner contends there is no preemption because "there are a
near infinite number of ways to tailor a web page based on data about a
particular information user without tailoring based on the website navigation
data." *Id.* at 24. In addition, Patent Owner challenges the assertion that the
"inventive concept" of these claims was conventional and routine by the
filing date of the '382 patent. *Id.* at 25–30. Similarly, as to claims 7–15,
which tailor a web page as a function of time, Patent Owner asserts that
there is no preemption. *Id.* at 24–25.

In response, Petitioners contend that the '382 patent fails to indicate
how to tailor web pages or use website navigation data. Reply 5–6.
Petitioners rely in part on alleged admissions by Patent Owner's expert on
cross-examination. *Id.* at 6–7. For example, Petitioners assert that Patent
Owner's expert admits that the prior art depicted web navigation data for
multiple web sites and showed creating a visitation history. *Id.* at 6.

Petitioners assert also that the Patent Owner's expert agreed that all
technical aspects of the claims were well-known in the art before the

CBM2014-00030
Patent 7,603,382 B2

provisional application that led to the '382 patent was filed. *Id.* at 7 (citing Ex. 1037 at 18:17–23 (web pages); 20:5–10 (web sites); 21:12–15 (displays); 21:23–25 (data files); 22:13–16 (memory); 23:2–7, 23:20–24:14 (user profiles)). Responding to Patent Owner's argument that there is no preemption, Petitioners assert "[b]ecause the claims lack any implementation details . . . preemption remains an issue." Reply 9 (citing Ex. 1037 103:11–20). Citing testimony from Patent Owner's expert, Petitioners assert "[t]he limitless nature of the '382 patent claims raises a serious preemption concern." *Id.* at 9 (citing *Gottschalk,* 409 U.S. at 68 ).

We are convinced by Petitioners' argument that the '382 patent claims do not contain an "inventive concept" sufficient to transform the claimed abstract idea into a patentable invention. Stated another way, we determine that the claims do not "significantly more than simply describe that abstract method." *Ultramercial*, 772 F.3d at 715. Instead, "the claims simply instruct the practitioner to implement the abstract idea with routine, conventional activity." *Id.*

   *1. Claim 1*

Taking claim 1 as an example, the system defined by that claim comprises three elements: an interactive interface and two displays. When asked at oral argument to respond to Petitioners' argument that everything in the claim was known, Patent Owner's counsel argued that Petitioners provided no evidence that an "interactive interface" was known. Hearing Tr. 42:3–11.

Petitioners assert that the interactive interface provides a way for interaction between user and the web server and is a basic functionality of the Internet. *Id.* at 21:11–21:15. Petitioners further contend the Internet is

12

CBM2014-00030
Patent 7,603,382 B2

by its nature is an interactive interface. *Id.* at 21:16–18. Petitioners assert also that the claim provides no details about performing the display elements of the claim. *Id*. at 20:21–21:2. Unchallenged testimony from Petitioners' expert supports this argument.[1] Ex. 1004, ¶¶ 30–31. We are persuaded that these are conventional elements.

*2. Claim 7*

Claim 7 includes the method step of generating a plurality of data streams. During oral argument, in response to a question from the panel asking him to identify which elements in claim 7 were not conventional technology, Patent Owner's counsel pointed to this feature. Hearing Tr. 37:19–38:4. However, Petitioners respond that the patent does not describe how the streams are generated. *Id.* at 65:14–23. This is confirmed by Patent Owner's expert. Ex. 1037, 36:21–37:16. Furthermore, Petitioners' expert, Dr. Myers, testified that the only technological component in the claim, a computer memory, was "a well-known and standard computer component long before the earliest filing date of the '382 patent." Ex. 1004 ¶ 36.

*3. Claims 2–4, 5, and 6*

For the dependent claims 2–4 and 6, we credit Dr. Myers's testimony that the additional elements are conventional. Ex. 1004 ¶ 32. Similarly as to claim 5, we are persuaded by Petitioners' argument that the added "data file" is used for the purpose of gathering data. Pet. 31; Ex. 1004 ¶ 33. This conventional means for data gathering is not a meaningful limitation on the abstract idea. Pet. 31; *Content Extraction*, 776 F.3d at 1348 (no inventive

---

[1] As no deposition transcript was filed (*see supra*), the record contains no cross-examination of Dr. Myers's testimony.

13

CBM2014-00030
Patent 7,603,382 B2

concept in use of "generic" scanner and computer).

### 4. Claims 8, 9, 10, 11–14, and 15

For the dependent claims 8, 9, and 15, we credit Dr. Myers's testimony that the added elements were conventional web page content as of the earliest filing date of the '382 patent. Ex. 1004 ¶ 37. Likewise, for dependent claims 10 and 11–14, we credit Dr. Myers's testimony that the features added were conventional features of web pages or information that was commonly provided on web pages at the earliest filing date of the '382 patent. Ex. 1004 ¶¶ 38, 39.

### 5. Claims 16–20

Independent claim 16 is a method claim similar to system claim 1 discussed *supra*. We, therefore, credit Dr. Myers's testimony that the claimed method uses "conventional computing components and web site features in their conventional ways." *Id.* ¶¶ 42–43. We likewise credit his testimony regarding dependent claims 17–20. *Id.* ¶ 44. We conclude that those claims add elements that are well known and conventional and which do not meaningfully limit the scope of the claims. *Id.*

### 6. Claims 21–23

Independent claim 21 is a method claim similar to method claim 16. We credit Dr. Myers's testimony that the '382 patent specification does not describe how the user's "web site navigation data" and the "received data from the user profile" are used. *Id.* ¶ 46. We also credit Dr. Myers's testimony that the claim uses "conventional computing components and web site features in their conventional ways." *Id.* ¶¶ 47–48. Finally, we credit Dr. Myers's testimony that dependent claims 22 and 23 add steps that were well-known as of the earliest filing date of the '382 patent. *Id.* ¶ 49.

14

CBM2014-00030
Patent 7,603,382 B2

Patent Owner's expert does not rebut convincingly Dr. Myers's claim-by-claim analysis. Instead, Patent Owner's expert addresses the claims in two groups only. Ex. 2003, ¶¶ 26–28. We find this approach unconvincing, and therefore, credit Dr. Myers's testimony as to specific claims over the testimony of Patent Owner's expert.

We are therefore persuaded, by a preponderance of the evidence, that, like the claims considered in *Ultramercial*, claims 1–23 of the '382 patent simply instruct the practitioner to implement the abstract idea with routine, conventional activity. *Ultramercial*, 772 F.3d at 715. For the reasons stated above, none of the elements recited in the claims, including the "interactive interface" and the "plurality of data streams," transforms the nature of the claims into patent-eligible subject matter. We credit the cited testimony of Patent Owner's expert that the '382 patent lacks implementation details because it is written at a "fairly high abstract level." *See supra*. As a result of this choice by the patentee, the risk of preemption is great.

Finally, Patent Owner relies on the Federal Circuit's decision in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). In *DDR Holdings*, the Federal Circuit decided that although the patent claims at issue there involved conventional computers and the Internet, the claims addressed the problem of retaining website visitors who, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after "clicking" on an advertisement and activating a hyperlink. *DDR Holdings*, 773 F.3d at 1257. "[T]he claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.*

15

CBM2014-00030
Patent 7,603,382 B2

The *DDR Holdings* Court went on to distinguish the invention from

that in *Ultramercial*:

> Unlike the claims in *Ultramercial*, the claims at issue here
> specify how interactions with the Internet are manipulated to
> yield a desired result—a result that overrides the routine and
> conventional sequence of events ordinarily triggered by the
> click of a hyperlink. . . .  When the limitations of the '399
> patent's asserted claims are taken together as an ordered
> combination, the claims recite an invention that is not merely
> the routine or conventional use of the Internet.

*DDR Holdings*, 773 F.3d at 1258–59.  As the Court went on to explain:

> It is also clear that the claims at issue do not attempt to
> preempt every application of the idea of increasing sales by
> making two web pages look the same, or of any other variant
> suggested by [defendants]. Rather, *they recite a specific way to
> automate the creation of a composite web page* by an
> "outsource provider" that incorporates elements from multiple
> sources in order to solve a problem faced by websites on the
> Internet.

*Id*. at 1259 (emphasis added).

This case involves an invention more similar to that in *Ultramercial*

than *DDR Holdings*.  As discussed *supra*, the claims in the '382 patent

describe conventional activity and technology and provide no

implementation details.  The Internet is used in its normal, expected, and

routine manner.  The claims contain little more than a directive to "use the

Internet" to implement the abstract idea embraced by the claims. The

transformation of an abstract idea into patent-eligible subject matter

"requires 'more than simply stat[ing] the [abstract idea] while adding the

words 'apply it.''" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at

1294).  In contrast, the patent claims in *DDR Holdings,* as described by the

Court, "specify how interactions with the Internet are manipulated to yield a

CBM2014-00030
Patent 7,603,382 B2

desired result." *DDR Holdings*, 773 F.3d at 1258.

### D. Patent Owner's Argument that the '382 Patent is Not a Covered Business Method Patent

This argument was addressed in the Institution Decision at pages 8–11.  Patent Owner contends that the specification and claims of the '382 patent are directed to a technological invention, namely, "to improve the interface and display of information for web pages by dynamically tailoring select portions of the web page."  PO Resp. 31.

In our Institution Decision, we determined that the '382 patent is a covered business method patent because at least one claim (claim 11) is not directed to a technological invention and meets the other requirements of the statute.  Institution Dec. 9.  Our reasoning was that the only technology mentioned in the claim is a computer memory, which is generic in nature.  *Id*.  Patent Owner challenges this determination.  PO Resp. 31–43.  We have reviewed Patent Owner's arguments and are persuaded that our determination is supported by a preponderance of the evidence, including testimony from Patent Owner's expert that computer memory was well known by May 1998 by those of ordinary skill in the art.  Ex. 1037, 22:13–16.  Thus, there is no technological feature in that claim that is novel and unobvious.  *See* 37 C.F.R. § 42.301(b).

Patent Owner's other arguments are unavailing.  For instance, Patent Owner asserts that the underlying software was overlooked.  PO Resp. 32.  Patent Owner's expert testified, however, that the patent does not describe software or algorithms.  Ex. 1037, 30:12–22; 70:7–21.  Patent Owner contends there is insufficient evidence that certain elements in the claims are

CBM2014-00030
Patent 7,603,382 B2

not novel or obvious.  PO Resp. 33–34.  As discussed above, there was

persuasive evidence from both experts that the patent claim elements were

conventional.  *See supra*.  Finally, Patent Owner's discussion is

unconvincing to the extent that it focuses on claims other than claim 11,

which was the basis for instituting trial.  PO Resp. 35 (discussing claims 1,

16, and 21).

### E.  Patent Owner's Arguments that Section 101 Is Not a Proper Ground Upon Which a Covered Business Method Patent Review May Be Maintained

This argument was addressed in the Institution Decision at pages 10–

11.  Patent Owner relies on legislative history of the AIA to demonstrate the

existence of two alleged exclusions from covered business patent review.

PO Resp. 44–48.

The first is an exception for "novel software tools."  *Id.* at 44.  Patent

Owner contends that the '382 patent claims are directed to such tools, and

they are novel tools because Petitioners have not challenged them as

unpatentable under 35 U.S.C. §§ 102 or 103 in this proceeding.  *Id.* at 44–

45.  We do not need to reach the question of whether such an exception

exists, because we are not convinced that the '382 patent is directed to a

"software tool."  Nor do we reach the question of what "novel" means in this

context.  Patent Owner points to no persuasive evidence that the '382 patent

claims are directed to developing software tools as described in the

legislative history quoted.  To the contrary, the expert testimony of record

establishes that the patent does not describe software or algorithms.

Ex. 1037, 30:12–22; 70:7–21.

Nor is there any persuasive evidence that the second alleged exception

18

CBM2014-00030
Patent 7,603,382 B2

urged by Patent Owner, for patents related to business "across sectors," would apply, if such an exception exists.  PO Resp. 46–48.  From the quoted statement by Senator Leahy, it appears that the so-called exception is merely a restatement of the "financial products or services" requirement of the statute.  *Id.* at 46.  In any event, the exception would not be applicable to at least claim 11, which includes explicit recitation of a condition "associated with the price of products sold by the company."  The Board relied on this claim language as meeting the financial products or services requirement (and not merely the assertion of the '382 patent against the financial industry) in instituting review.  Institution Dec. 8–9.

Finally, Patent Owner asserts that the Board may not consider subject matter eligibility challenges under 35 U.S.C. § 101 as part of a covered business method patent review because § 101 is not a "condition for patentability."  PO Resp. 48–49.  For the reasons stated in our Institution Decision (at 10–11) we are not convinced by Patent Owner's argument.

CBM2014-00030
Patent 7,603,382 B2

## III.  CONCLUSION

We determine that Petitioners have demonstrated, by a preponderance of the evidence, that claims 1–23 of the '382 patent are not patentable because they are directed to ineligible subject matter under 35 U.S.C § 101.


## IV.  ORDER

In consideration of the foregoing, it is hereby

ORDERED that claims 1–23 of U.S. Patent No. 7,603,382 B2 have been shown to be unpatentable; and

FURTHER ORDERED that this is a Final Decision.  Parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

CBM2014-00030
Patent 7,603,382 B2

PETITIONERS:

Donald R. Steinberg
Monica Grewal
WILMER CUTLER PICKERING
don.steinberg@wilmerhale.com
monica.grewal@wilmerhale.com

PATENT OWNER:

Henry A. Petri, Jr.
James P. Murphy
NOVAK DRUCE CONNOLLY BOVE + QUIGG LLP
henry.petri@novakdruce.com
james.murphy@novakdruce.com

Don Coulman
dcoulman@intven.com