# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORPORATION, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:15-cv-00137-LPS-CJB |
| THE PRICELINE GROUP INC., et al., | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |


## REPLY BRIEF IN SUPPORT OF DEFENDANTS'
## <u>MOTION TO DISMISS</u>

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

Dan D. Davison
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201
Tel: 214.855.8000
Fax: 214.855.8200
dan.davison@nortonrosefulbright.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010
Tel: 713.651.5283
Fax: 713.651.5246
richard.zembek@nortonrosefulbright.com

Gilbert A. Greene
Marwan Elrakabawy
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
Tel: 512.474.5201
Fax: 512.536.4598
bert.greene@nortonrosefulbright.com
marwan.elrakabawy@nortonrosefulbright.com

Filing Date: June 23, 2015

*Attorneys for Defendants, The Priceline
Group Inc., Priceline.com LLC, KAYAK
Software Corporation, and OpenTable, Inc.*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT AND AUTHORITY ......................................................................... 1

   A.   Defendants' Motion is Ripe. ............................................................................ 1

   B.   The '346 Patent Is Invalid Under Section 101 ................................................. 2

      1.   Claim 1 of the '346 Patent is abstract. ...................................................... 2

      2.   Claim 1 of the '346 Patent contains no inventive concept .......................... 6

      3.   Claim 1 of the '346 Patent is representative. ............................................. 7

   C.   The '601 Patent Is Invalid Under Section 101 ................................................. 8

      1.   Claim 1 of the '601 Patent is abstract. ...................................................... 8

      2.   Claim 1 of the '601 Patent has no inventive concept ................................. 9

      3.   Claim 1 of the '601 Patent is representative .............................................. 11

   D.   The '967 and '849 Patents Are Invalid Under Section 101. ............................ 11

      1.   The representative claims of the '967 and '849 Patents are abstract. ........... 12

      2.   The claims of the '967 and '849 Patents include no inventive concepts. ...... 14

      3.   Claim 1 of the '967 Patent and Claim 1 of the '849 Patent are representative. ............ 15

III.    CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)...................................................................................3

*Advanced Auctions v. eBay, Inc.*,
    No. 13-cv-1612, 2015 WL 1415265 (S.D. Cal. Mar. 27, 2015)..............................13

*Alice Corp. Pty Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347................................................................2, 3, 6, 8, 10, 14, 15

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    56 F. Supp. 3d 813, 817 (E.D. Va. 2014) ...............................................................2

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    --- F.3d ---, 2015 WL 3634649 (Fed. Cir. Jun. 12, 2015).......................................7

*Bank of America v. Intellectual Ventures I, LLC*,
    CMB2014-00030, Paper No. 32 (P.T.A.B. Apr. 24, 2015) ....................................13

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2010)................................................................................10

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)....................................................................1, 7, 11

*Card Verification Solutions, LLC v. Citigroup Inc.*,
    No. 13-cv-6339, 2014 WL 4922524 (N.D. Ill. Sept. 29, 2014)................................3

*Cloud Satchel v. Amazon.com, Inc.*,
    No. 13-941-SLR, 2014 WL 7227942 (D. Del. Dec. 18, 2014)................................12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Assn*,
    776 F.3d 1343 (Fed. Cir. 2014)...............................................................1, 8, 10, 12

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)..............................................................................14

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)......................................................................5, 6, 14

*Enfish, LLC v. Microsoft Corp.*,
    56 F. Supp. 3d 1167 (C.D. Cal. 2014) .....................................................................3

*Hewlett Packard Co. v. ServiceNow, Inc.*,
  No. 14-CV-00570-BLF, 2015 WL 1133244 (N.D. Cal. Mar. 10, 2015)................................13

*Intellectual Ventures I v. Symantec Corp.*,
  --- F. Supp. 3d ----, No. 10-cv-1067-LPS, 2015 WL 1843528 (D. Del. Apr. 22,
  2015) ........................................................................................................4, 5, 6, 10, 13, 14

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
  No. 13-cv-3777, 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015) ...........................2, 3, 8, 12, 15

*Internet Patents Corp. v. Active Networks Inc.*,
  Nos. 2014-1048, et. al, slip op. (Fed. Cir. Jun. 23, 2015) (attached as Exhibit
  2) ..............................................................................................................1, 4, 8, 9, 10

*Kenexa BrassRing, Inc. v. HireAbility.com, LLC*,
  No. CIV.A. 12-10943-FDS, 2015 WL 1943826 (D. Mass. Apr. 28, 2015) ........................3, 8

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
  No. 2:12-CV-800-WCB, -- F. Supp. 3d ---, 2015 WL 3452469 (E.D. Tex.
  May 29, 2015).........................................................................................................3, 8, 12

*Mayo Collab. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012).................................................................................................3, 7

*Messaging Gateway Solutions, LLC v. Amdocs, Inc.*,
  No. 14-cv-732-RGA, 2015 WL 1744343 (D. Del. Apr. 15, 2015).....................................7, 10

*Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*,
  No. 14 C 4957, 2015 WL 3637740 (N.D. Ill. Jun. 11, 2015) ..................................................10

*Shortridge v. Payroll4Construction.com*,
  No. 3-14-cv-04850, 2015 WL 1739256 (N.D. Cal. Apr. 14, 2015) ........................................12

Smartflash LLC v. Apple Inc., No. 6:13-CV-447JRG-KNM,
  2015 WL 661174 (E.D. Tex. Feb. 13, 2015) ..........................................................................3

*Tenon & Groove, LLC v. Plusgrade S.E.C.*,
  No. 12-cv-1118-GMS-SRF, 2015 WL 1133213 (D. Del. Mar. 11, 2015).............................12

*TriPlay v. WhatsApp Inc.*,
  No. 13-1703-LPS, 2015 WL 1927696 (D. Del. Apr. 28, 2015) ........................................2, 14

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014).................................................................1, 3, 4, 7, 9, 13

## Rules and Statutes

*35 U.S.C. § 101* .......................................................................1, 2, 3, 8, 10, 11, 12, 15

## I.      INTRODUCTION

Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opp.") fundamentally misapplies the applicable legal standard for determining patentability under Section 101. Neither an identification of the underlying problems purportedly addressed by Plaintiff's patents, nor an exhaustive analysis of each claim limitation, is required to determine that the claims are directed to abstract ideas. As numerous similar cases and analogous brick and mortar hypotheticals make clear, they unquestionably are.

The key question becomes "what else is there in the claim?" and whether those additional elements are enough to "transform the nature of the claim" into a patent-eligible application of an abstract idea. Because the claims' recitation of additional elements is confined to generic computer hardware and software performing basic functions of a computer—with no specificity as to how the supposedly novel functions of the patented methods are accomplished—as a matter of law, there are no additional elements in the claims that transform the abstract ideas to patentable subject matter.

## II.     ARGUMENT AND AUTHORITY

All of the Asserted Patents are invalid under Section 101. Plaintiff's Complaint fails to state a claim for relief and should be dismissed with prejudice pursuant to Rule 12(b)(6).

### A.      Defendants' Motion is Ripe.

The Federal Circuit has repeatedly confirmed that determining patent-eligibility under § 101 is appropriate at the pleading stage,[1] and this case is no different. While Plaintiff has identified several claim terms for which it offers constructions, it has not challenged Defendants'

---

[1] *Internet Patents Corp. v. Active Networks Inc.*, Nos. 2014-1048, et. al, slip op. at 12 (Fed. Cir. Jun. 23, 2015) (attached as Exhibit 2) (affirming motion to dismiss ruling claims directed to ineligible subject matter); *Content Extraction v. Wells Fargo Bank, Nat. Assn.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (same); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711 (Fed. Cir. 2014) (*Ultramercial III*); *buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1351 (Fed. Cir. 2014).

Motion on the basis that it misconstrues any terms of the Asserted Patents. In any event, Plaintiff's proposed constructions do not—and cannot—transform the abstract claims into patentable subject matter. Because the basic character of the claims are readily ascertainable, Defendants' Motion is ripe.[2]

**B.      The '346 Patent Is Invalid Under 35 U.S.C. § 101.**

The claims of the '346 Patent are directed to the abstract idea of using access rights to a first system to obtain access rights to a second system, and the claims do nothing more than require that this abstract idea be implemented on a generic computing device.

**1.      Claim 1 of the '346 Patent is abstract.**

It was Plaintiff's Complaint, and not Defendants' Motion, that first characterized the '346 Patent as directed to "access rights."[3] Plaintiff now resists such a characterization, undoubtedly because numerous recent cases have held similar data access and relationship characterization concepts—even when implemented in computer-centric terms—as directed to abstract ideas.[4]

Plaintiff suggests Defendants have ignored certain limitations of Claim 1 in their analysis of the abstract idea at the heart of the claim. Opp., p. 7. This argument is built on a crucial

---

[2] *See TriPlay v. WhatsApp Inc.*, No. 13-1703-LPS, 2015 WL 1927696, at *6 (D. Del. Apr. 28, 2015) (citing *Open Text S.A. v. Alfresco Software Ltd*, No. 13-cv-04843-JD, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014) (observing that "lack of dispute over the proper construction of the asserted claims confirms that it is unnecessary to engage in claim construction before addressing validity under [§] 101")); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F. Supp. 3d 813, 817 (E.D. Va. 2014) ("[A] court must evaluate the claims [o]n their face to determine to which concept the claims are drawn") (citing *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2356) (2014) (internal citation omitted)).

[3] *See* D.I. 1, ¶ 22 (explaining that inventors' purported goal was to permit a user "[t]o access a protected resource at a service provider on the Internet . . . [while] requiring only one authorization operation during a particular user session").

[4] *See, e.g.*, *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-cv-3777, 2015 WL 1941331, at *12 (S.D.N.Y. Apr. 28, 2015) ("*JP Morgan*") ("The concept of protecting access to otherwise unprotected digital information or property by the enforcement of rules is a conventional concept.").

misunderstanding of the Supreme Court's framework for assessing patent-eligibility under § 101, because the first step of the *Alice* analysis does not require "a detailed examination of the asserted claims, either individually or as an ordered combination; that analysis is properly lodged within step two."[5] Accordingly, courts consistently recite a claim's concept at a reasonably high level of generality.[6] The same approach appears in several of the decisions upon which Plaintiff relies. For instance, *Smartflash LLC v. Apple Inc.* contained extensively detailed claims which were, nonetheless, reduced to the concept of "conditioning and controlling access to data based on payment." No. 6:13-CV-447-JRG-KNM, 2015 WL 661174, at *8 (E.D. Tex. Feb. 13, 2015).[7]

As the Complaint's characterization of the '346 Patent confirms, the concept embodied by Claim 1 describes an abstract idea that at its core amounts to using access rights to a first system to obtain access rights to a second system. *See* '346 Patent, Claim 1, preamble ("A method . . . to provide access to protected resources . . . ."). The limitations Plaintiff emphasizes—including that the user needs to authenticate himself only once per session ("single-sign-on") and that the two systems are distinct but cooperate ("federated computer

---

[5] *Kenexa BrassRing, Inc. v. HireAbility.com, LLC*, No. CIV.A. 12-10943-FDS, 2015 WL 1943826, at *4 (D. Mass. Apr. 28, 2015) (citing *Alice*, 134 S. Ct. at 2356; *Mayo Collab. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297 (2012)); *see also Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-CV-800-WCB, -- F. Supp. 3d ---, 2015 WL 3452469, at *11 (E.D. Tex. May 29, 2015) (Bryson, J. sitting by designation) (noting that while "additional limitations . . . may make those claims narrower, they don't make them any less abstract"); *JP Morgan*, 2015 WL 1941331, at *9 ("[A]ny claim of alleged novelty is an entirely separate and unrelated question than whether the claimed method amounts to an abstract idea.").

[6] *See Enfish, LLC v. Microsoft Corp.*, 56 F. Supp. 3d 1167, 1173 (C.D. Cal. 2014) (describing "quick look" test); *see also Kroy*, 2015 WL 3452469, at *11 (describing "core idea" of challenged patent as "providing a computer-based incentive award program").

[7] *See also Card Verification Solutions, LLC v. Citigroup Inc.*, No. 13-cv-6339, 2014 WL 4922524, at *3 (N.D. Ill. Sept. 29, 2014) (characterizing multi-step method characterized as abstract idea of "verifying a transaction"); *Accenture Global Servs., GmbH v. Guidewire Software Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) (stating "abstract idea at the heart" of multi-component system claim "is generating tasks based on rules to be completed upon the occurrence of an event"); *Ultramercial III*, 722 F.3d at 714–15 (describing eleven-step method as "abstract idea of showing an advertisement before delivering free content").

environment")—change neither the analysis nor the conclusion because they only "add a degree of particularly," and they do not change the "concept embodied by the majority of the limitations." *Ultramercial III*, 772 F.3d at 715.

Plaintiff's analogy to the virus detection claims upheld in *Intellectual Ventures I v. Symantec Corp*., --- F. Supp. 3d ----, No. 10-cv-1067-LPS, 2015 WL 1843528, at *19 (D. Del. Apr. 22, 2015) (*Symantec*) readily collapses in view of the generality of the computer aspects of the '346 Patent. The claims in *Symantec* were directed to screening "computer viruses," with the dependent claim requiring "at least three computers configured in a specific manner." *Id*. at *19.[8] It was this necessary and specific coordination between the three computers that appears to have buttressed the Court's conclusion that the claims were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id*. at *20.

Unlike those claims, Claim 1 of the '346 Patent discloses only collecting data, recognizing data, and communicating results—all abstract steps.[9] These steps neither "improve the functioning of the computer itself" nor "effect an improvement in . . . technology." *Id*. And while the claims are stated in computer-centric terms, they are neither rooted in, nor unique to, the realm of computer networks.[10] This is demonstrated by the previously furnished brick and mortar hypothetical. Plaintiff suggests the hypothetical is imperfect, Opp., p. 8; but even

---

[8] In particular, it was "necessary in practicing the claim to in some way imitate the receiving computer's configuration in order to properly detect whether a harmful virus in an executable file may infect the receiving computer." *Symantec*, 2015 WL 1843528, at *20.

[9] *Symantec*, 2015 WL 1843528, at *8 (holding abstract claim directed to "collecting, recognizing, and storing data" [with] "additional step [for] communicating a result of the 'recognizing' step back to a querying computer").

[10] Recent Federal Circuit authority demonstrates that claims directed to computer concepts may be abstract. *See Internet Patents*, slip op. at 3-4 (finding claims directed to abstract idea of retaining information in the navigation of online forms).

accepting Plaintiff's critique, all such "flaws" may be eliminated by trivial amendments. For example, the hypothetical could specify that only a single authentication is required per visit or session by Joe (he can use all the resources at the facility without reauthorization); and the first store could give Joe a secret passcode, which he could provide to the second store (remotely if need be) to verify his identity.[11] The amended rows are reproduced below:

| Step of '346 Claim 1 | Corresponding Routine Step Performed to Provide Access to a Sister Store |
|---|---|
| receiving from the **first system** at the second system **an identifier associated with the user**; | Jane Clerk receives from the grocery store [**first system**] a list of all the grocery store's members (including Joe's name) or a passcode provided by Joe [**an identifier associated with Joe**]. |
| and creating a **user account** for the user at the second system based at least in part on the received **identifier associated with the user** after **triggering the single-sign-on** operation but before generating at the second system a response for accessing the **protected resource**, wherein the created **user account** supports single-sign-on operations between the **first system** and the **second system** on behalf of the user. | Jane Clerk completes the membership creation for Joe Shopper [**user account**] based at least in part on the received list from the grocery store or a passcode provided by Joe [**identifier associated with user**]. She completes the membership after she began the process of creating the membership card [**triggering the single-sign-on**] but before providing Joe access to the electronics store's merchandise [**protected resource**]. Joe may use his membership [**user account**] to access the grocery store [**first system**] and electronics store [**second system**] with only a single authentication per visit to either store. |

In short, unlike the virus-directed claims in *Symantec* or the claims held to be patent-eligible in *DDR Holdings*, there is a simple analog to the representative patent claim in the physical word. In both the electronic and physical context, some identifier from the first system/store (e.g., a key, passcode, or identification credential) may be used to gain access to the second system/store for an entire user session even without a preexisting user account. That

---

[11] Plaintiff complains that Defendants fail to associate the "triggering a single-sign-on operation" limitation and the "creating a user account" with distinct operations. *See* Opp., p. 8. Assuming that such operations must be distinct, triggering a single-sign-on can be analogized to starting a paper form that will result in an access card allowing access to the store without repeated identifications, while the creation of a user account simply corresponds to the creation of an association between, for example, an ID number in the store's file and Joe's name.

identifier can be in the possession of the user based on authorization to access the first system. The authorities and this scenario demonstrate that all of the concepts contained in the claim limitations have life outside of a computer context.[12]

### 2. Claim 1 of the '346 Patent contains no inventive concept.

Plaintiff asserts that the ordered combination of the steps in Claim 1 of the '346 Patent "constitute[s] inventive concepts by providing a novel way of protecting digital content." Opp., p. 10. But Plaintiff's mere listing of the steps and a bald assertion that the combination is inventive is no argument at all. To the extent Plaintiff asserts that an inventive concept can be found in the '346 Patent's solving a deficiency in the prior art single-sign-on implementations because prior methods "required users to have preexisting user accounts at a service provider" (Opp., p. 6), this argument fails.

While the claims in *DDR Holdings* satisfied the second step of *Alice* because they detailed "*how* interactions with the Internet are manipulated to yield a desired result" and a specific way to do so, 773 F.3d at 1258–60, in the instant case, Claim 1 of the '346 Patent does not disclose any specific hardware or detail regarding *how* it eliminates the requirement that users have preexisting accounts. The claim does not specify *how*, for example, the second system "creat[es] a user account," or *how* it "trigger[s] the single-sign-on operation." Unlike in *Symantec*, there is no disclosure demonstrating the "configuration of [] computers in a specific manner."[13] The claim thus reduces to an instruction to apply an abstract idea using "conventional

---

[12] Plaintiff's contention that irreconcilable differences exist between computer and physical security is false. Users may attempt unauthorized access of both a protected website or protected building without asking permission.

[13] Plaintiff implausibly and without explanation claims that the systems of Claim 1 are "specifically programmed" (Opp., at p. 10); but neither the claim language nor the specification describe such programing or specialized equipment. The generic "first system" and "second

computer technology and the Internet" and therefore does not contain an inventive concept. *See buySAFE*, 964 F. Supp. 2d at 336.

Plaintiff's citation to *Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, No. 14-cv-732-RGA, 2015 WL 1744343, at *1 (D. Del. Apr. 15, 2015), is inapposite. Claim 1 does not override the conventional operation of machines, e.g., by allowing mobile phones to communicate with computers via text message; rather, it merely claims the steps of granting access to resources on certain systems based on a characteristic (a user relationship with a different system). Assigning access permissions based on user characterizations is a basic example of "what computers do," and does not suggest an inventive concept. *See Ultramercial III*, 772 F.3d at 717.

The above analysis demonstrates the profound preemption concerns inherent in Claim 1. The carve-outs offered by Plaintiff, requiring repeated sign-on, requiring an account at each enterprise, etc. (Opp., p. 11) are insufficient. The question is not whether a claim ties up an entire field but instead whether it "tie[s] up too much future use" of the abstract idea. *See Mayo*, 132 S. Ct. at 1302.[14] Claim 1 does because it imposes no significant limitations on the abstract idea.

### 3.    Claim 1 of the '346 Patent is representative.

Claims 3 and 4 simply identify additional steps to accomplish the "triggering a single-sign-on operation" step of the method of Claim 1. Claim 3 describes "sending a message" while Claim 4 recites "receiving a message." These concepts do not change the analysis or conclusion.[15] Plaintiff also contends that each dependent claim must be addressed in depth to

---

[13] system" are described in the specification as including commonly known devices such as "mainframes, personal computers, personal digital assistants, etc." '346 Patent, 4:45–48.

[14] *See also Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, --- F.3d ---, 2015 WL 3634649, at *7 (Fed. Cir. Jun. 12, 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility.").

[15] *buySAFE*, 765 F.3d at 1355 (finding that "sending" and "receiving" data over a network is "not even arguably inventive").

warrant a finding of ineligibility. This is wrong. *See Content Extraction*, 776 F.3d at 1348. Because the dependent claims merely disclose conventional, routine design choices, Claim 1 is representative of all claims for purposes of the § 101 analysis.

### C.     The '601 Patent Is Invalid Under Section 101.

The claims of the '601 Patent are directed to the abstract idea of keeping track of prior communications during a conversation, and they apply the concept in a computer context.[16]

#### 1.     Claim 1 of the '601 Patent is abstract.

Again, despite Plaintiff's critique, it is Plaintiff's Complaint, not Defendants' Motion, that is the source of the abstract idea articulation.[17]

In any event, Plaintiff again misapprehends the inquiry at step one of the *Alice* analysis, improperly focusing on implementation details and whether specific improvements upon the prior art distinguish Claim 1 from similar patent claims held to be directed to abstract concepts in *Tuxis I* and *Ultramercial III*. As explained above, additional claim limitations and specific assertion of alleged novelty may narrow the claims, but they do not make the claims any less abstract.[18] Accordingly, this type of "detailed examination of the asserted claims, either individually or as an ordered combination is properly lodged within step two."[19]

The concept embodied by the claims is the abstract idea of keeping track of prior

---

[16] Plaintiff suggests that the word "computers" in Defendants' articulation of the abstract idea establishes that the claim is patent-eligible. Opp., p. 14. It does not. "The fact that the claimed system and methods employ computers or a network such as the Internet is clearly insufficient to make the claims patent eligible." *Kroy*, 2005 WL 3452469, at *11. ("The core idea of the '830 patent—providing a computer-based incentive award program—is plainly an unpatentable abstract idea by itself."); *see also Internet Patents*, slip op. at 10.

[17] *See* D.I. 1, ¶ 20 (describing the invention as "allow[ing] clients and servers to keep track of prior communications during a conversation").

[18] *Kroy IP Holdings*, 2015 WL 3452469, at *11; *JP Morgan* , 2015 WL 1941331, at *9.

[19] *Kenexa*, 2015 WL 1943826, at *4.

communications during a conversation. Implementation details—cookies versus stateless protocol, using the embedding of state information in subsequent requests for service—do not change the analysis or the conclusion under step one.[20]

Plaintiff identifies a perceived flaw in Defendants' brick and mortar scenario but ignores the lack of any obstacle to making a minor adjustment to the scenario to address the concern. Specifically, the scenario may be amended to make clear that the merchant repeats back the entire content of the communication whenever asking further questions or continuations:[21]

| Step of '601 Claim 1 | Corresponding Routine Step Performed to Process Customer Order |
| --- | --- |
| **recursively embedding the state information** in all **identified continuations**; and | Each time the customer orders an additional item, asks to complete the order, or specifies shipping details [**identified continuations**], the merchant repeats all the information back to the customer each time [**recursively embedding the state information** ]. |

That the concepts contained in the limitations have life outside of a computer context highlights the abstract nature of the claim.

### 2.    Claim 1 of the '601 Patent has no inventive concept.

Plaintiff improperly focuses its arguments entirely on a purported embodiment of the '601 Patent that "transforms HTML code through the embedding of state information into hyperlinks." *See* Opp., p. 16. Even if the purported "transformations" in Plaintiff's Exhibits D–F are covered by a claim of the '601 Patent (such figures do not appear in the patent), Plaintiff does not contend that alternative embodiments, covered by the broader claim language in representative Claim 1, require the same transformations. They clearly would not and "it is the

---

[20] *See Ultramercial III*, 772 F.3d at 715; *Internet Patents*, slip. op. at 10 (finding abstract patent directed to idea of retaining information in navigation of online forms).

[21] Plaintiff's assertion that the telephone is not a "stateless protocol" because humans using a phone use their memory to remember the "state" of their conversation is a red herring. Regardless of whether humans can remember "state," it is nonsensical to suggest that the actual medium of communication (the telephone) retains state. It is the communication medium (telephone, voice, http) and not the capabilities of the participants that is at issue.

claims, not the specification, that govern analysis under § 101." *Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 WL 3637740, at *10 (N.D. Ill. Jun. 11, 2015). Specific embodiments—even with detailed implementations—do not make a patent claim eligible under § 101. *See id.*

The broader attempt to cast the '601 Patent as a "translation" or "transformation" patent, in the vein of *Messaging Gateway*, is unsupported. The representative claim in *Messaging Gateway* was found to contain an inventive concept because the claimed method manipulated the interaction between phones and computers, translating messages in a way that allowed a computer to receive and understand the message. *Messaging Gateway*, 2015 WL 1744343, at *5. Here, no translation (of format or otherwise) is actually claimed. Instead, as Plaintiff concedes, the discussed embodiment (which again is much narrower than Claim 1) merely adds state information into the hyperlinks. Opp., p. 16. In other words, the purported novelty reduces to abstract steps of data collection, recognition, and storage.[22] Accordingly, the claimed method does not accomplish any "transformation" and there is nothing inventive.[23]

But *even if* the translation or transformation characterization is deemed persuasive, the claims of the '601 Patent fail to pass the second step of the *Alice* analysis because they offer no specific way to accomplish these purported manipulations. For instance, no algorithm is detailed with respect to the "convert1 module" in Plaintiff's citation to the specification. The module is

---

[22] *Symantec*, 2015 WL 1843528, at *8 (holding abstract claim directed to "collecting, recognizing, and storing data" [with] "additional step [for] communicating a result of the 'recognizing' step back to a querying computer"); *Internet Patents*, slip. op., 11 (limitations directed to combining data to form a webpage did not add inventive concept).

[23] *See Content Extraction*, 776 F.3d at 1348 (using existing technology to recognize and store data from specific data field held not to include an inventive concept); *In re Bilski*, 545 F.3d 943, 963 (Fed. Cir. 2010) (limiting transformations under the machine or transformation test to "visual depiction that represents specific physical objects or substances"; "[w]e note that, at least in most cases, gathering data would not constitute a transformation of any article"). Plaintiff does not argue and apparently concedes the '601 Patent is not tied to any novel machine.

instead only described in functional terms. *See* '601 Patent, 14:30–46 ("[T]he convert1 module . . . takes HTML page h and modifies all the hypertext links . . . ."). Thus, the claim reduces to an instruction to apply an abstract idea using "conventional computer technology and the Internet" and thus is not sufficient to impart an "inventive concept." *See buySAFE*, 964 F. Supp. 2d at 336.

Profound preemption concerns are inherent because Claim 1 of the '601 Patent fails to impose any significant limitations on the implementation of the abstract idea of keeping track of a prior communication in a conversation. The few remaining options in the field offered by Plaintiff (using state-aware protocols, i.e., not HTTP, or using small files containing state information stored at the client computer) demonstrate the over-breadth of the claim.

### 3.    Claim 1 of the '601 Patent is representative.

Plaintiff asserts Claim 8 describes specific implementation details, i.e., using the "World Wide Web," "hypertext transfer protocol" ("HTTP"), "hyperlinks to hypertext markup language files" ("HTML"), and "common gateway interface programs" ("CGI programs"). Each of these limitations, however, are industry-standard elements that had widespread use at the time of the filing of the patent application. '601 Patent at 4:32–33 ("The most common method of communicating between clients and servers is via the HTTP protocol."); *id.* at 4:37–38 ("CGI programming is well known in the art.").

Just as with claim 8, each of the limitations of claim 13 are generic, conventional features that add no inventive concept sufficient to save the claim from ineligibility under § 101. *Id.* at 7:50–52 ("One current method for handling state on the Web involves the use of CGI programs. A client can invoke a CGI program by passing arguments to it.").

### D.    The '967 and '849 Patents Are Invalid Under Section 101.

The claims of the '967 and '849 Patents (or "the Filepp Patents") are directed to the abstract ideas of local storage of information and resources at a user's computer, presenting a

partitioned display, and presenting a user with targeted advertising that is stored on the user's computer.[24]

### 1. The representative claims of the '967 and '849 Patents are abstract.

Plaintiff spends a number of pages discussing what it sees as the innovative aspects of the Filepp patents and the implementation details used to solve the problem of slow response times at a host system, i.e., using the processing power of a user's machine. Opp., p. 20–22.

Plaintiff's focus is misplaced. The abstract ideas at the heart of the Filepp patents—presenting the display, utilizing local storage, and presenting targeted advertising—remain just as abstract when the display is delivered via modular data objects and no matter whether the data underlying the display is delivered as-needed or in advance.[25] Contrary to Plaintiff's assertions, even non-conventional strategies can be employed to implement abstract ideas. *See Cloud Satchel v. Amazon.com, Inc*., No. 13-941-SLR, 2014 WL 7227942, at *8 (D. Del. Dec. 18, 2014) (holding that even in light of "plaintiff's arguments that the steps . . . may not have been conventional practices in the field of computing at the time of invention," patents were directed to abstract idea and lacked inventive concept).

Thus, whether or not it was well-known to use the concepts Plaintiff alleges are the "novel" aspects of the Filepp patents—local storage, modular objects, as-needed retrieval—does not address whether the representative claims are directed to abstract ideas. Rather, courts look to

---

[24] Contrary to Plaintiff's suggestion, Defendants have not put forward "varying formulations" of the abstract ideas. Opp., p. 21–22. Instead, like other patents found abstract and invalid under Section 101, the Filepp patents are directed to multiple abstract ideas. *See Shortridge v. Payroll4Construction.com*, No. 3-14-cv-04850, 2015 WL 1739256, at *11 (N.D. Cal. Apr. 14, 2015) ("[M]erely combining two or three abstract ideas [does not] bring a patent within the scope of Section 101") (citing *Content Extraction*, 776 F.3d at 1347). In any event, as this Court has recognized, "the use of slightly different words to describe something abstract is [not] proof that it is not abstract." *Tenon & Groove, LLC v. Plusgrade S.E.C*., No. 12-cv-1118-GMS-SRF, 2015 WL 1133213, at *3 (D. Del. Mar. 11, 2015).

[25] *Kroy IP*, 2015 WL 3452469, at *11; *JP Morgan*, 2015 WL 1941331, at *9.

analogous authority and consider whether these concepts "make sense outside of a computer context." *Symantec*, 2015 WL 1843529, at *9, *21. Defendants' Motion highlighted several analogous precedents reciting similar data storage, transmission, and display concepts.[26] These authorities demonstrate that these concepts have life outside of the computer context.

Further, it is easy to elaborate on the hypothetical for the Filepp patents in a simple office setting suggested in Defendants' Motion. Taking for example Claim 1 of the '967 Patent:

| Step of '967 Claim 1 | Corresponding Routine Step Performed to View Files |
|---|---|
| a. generating a screen display at a **respective reception system** for a requested application, the screen display being generated by the respective reception system from **data objects having a prescribed data structure**, at least **some of which objects may be stored at the respective reception system**, the screen display including a plurality of partitions, the **partitions being constructed from objects**, the objects being retrieved from the objects stored at the respective reception system, or **if unavailable from the objects stored at the respective reception system, then from the network**, such that at least some of the objects may be used in more than one application; | "Mike" at "Company With Files LLC" has his own office **[respective reception system]** where he accesses files **[applications]**. Those files are composed of 8 x 11 paper **[reusable objects with prescribed structure]**.[27] Certain pages are relevant to and may be used in more than one file. Some pages may be stored at Mike's office or on his desk or, if not stored in the office or desk, at a file room **[network]**. Pages are grouped at different parts of Mike's desk for viewing **[plurality of partitions]** |
| b. **generating** at least a **first partition** for presenting applications; and | Mike places a file titled "Accounts" at one side of the top of his desk. **[generating . . . a first partition]** |
| c. generating concurrently with the first partition at least a second partition for presenting a plurality of command functions, the **command functions** including at least a first group which are selectable to | Mike may move between different files on his desk with his mind and eyes by shifting his attention to a different file. **[command functions . . . permit** |

---

[26] *See, e.g., Ultramercial III*, 772 F.3d at 712, 715 ("facilitating a display"); *Advanced Auctions v. eBay, Inc.*, No. 13-cv-1612, 2015 WL 1415265, at *1, *3–4 (S.D. Cal. Mar. 27, 2015) ("using a computer to produce information representing a webpage"); *Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14-CV-00570-BLF, 2015 WL 1133244, at *1–2, *5 (N.D. Cal. Mar. 10, 2015) ("display instructions for displaying a graphical display"); *Bank of America v. Intellectual Ventures I, LLC*, CBM2014-00030, Paper No. 32 (P.T.A.B. Apr. 24, 2015) ("tailoring a webpage based on user data").

[27] Plaintiff contends that the real world analogy to the Filepp patents would be to "separately photocopy parts of a piece of paper." Opp., p. 25. This is absurd. The reusable objects of the claims are better analogized to parts of a larger paper file (i.e., some but not all the pages).

| Step of '967 Claim 1 | Corresponding Routine Step Performed to View Files |
|---|---|
| **permit movement between applications**. | **movement between applications]** |

The obvious non-computer applications of the concepts contained in the limitations of the Filepp patents, as well as the presence of a step which can be performed entirely in the human mind, demonstrate that the patents are neither "necessarily rooted in computer technology" nor directed to problems "specifically arising in the realm of computer networks." *Symantec*, 2015 WL 1843529, at *21 (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014); *CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1372 (Fed. Cir. 2011).

> **2.      The claims of the '967 and '849 Patents include no inventive concepts.**

Plaintiff suggests that the inventive concept of the Filepp Patents is to improve the functioning of the host computer by breaking applications into objects that can be more efficiently processed by the host and user reception systems working together. Opp., p. 21. Contrary to Plaintiff's suggestion, however, nothing about the host computer's operation actually changes under such a scenario. Indeed, the host machine works just as it always did—the Filepp patents merely suggest asking the host system to do less processing, offloading that work to user machines. Accordingly, the claims—even considered as an "ordered combination"—do not "improve the functioning of the computer itself" and there is no "improvement" in the underlying technology. *Alice*, 134 S. Ct. at 2359.

The lack of specificity of the claims further demonstrates the failure to make a significant improvement in the field. The claim limitations do not provide details regarding how, for example, the claimed data objects generate the display, or how the displays are generated concurrently. Accordingly, there is no further detail from which to find an inventive concept. *See TriPlay*, 2015 WL 1927696, at *15 (finding no inventive concept where claim did not contain

specific functionality by for example limiting itself to any specific way of converting a message from one layout to another).

Preemption concerns are manifest because Plaintiff does not dispute that the Filepp patents cover all of Defendants' webpages, and most likely, nearly every other webpage on the Internet. The lack of implementation details explains why so much of the field of presenting displays is preempted by the Filepp patents. Because they tie up too much of the field, the claims of the Filepp patents unacceptably curb innovation related to utilizing the local storage of information and resources at a user's computer to present a partitioned display.

### 3. Claim 1 of the '967 Patent and Claim 1 of the '849 Patent are representative.

To the extent that Claims 12 and 13 of the '967 Patent narrow the scope of the claim from which they depend, they do so by merely claiming well-known, generic computer functions related to storage and organization of information, such as the use of data objects with a defined structure. *See, e.g.*, '967 Patent, Claim 12 ("data structure of objects includes a header and one or more data segments"). Similar claims claiming the use of computer data objects have been found patent-ineligible. *See JP Morgan*, 2015 WL 1941331, at *8. The practice of claiming generic computer functions, as illustrated here, does not contribute towards patent-eligibility. *Alice*, 134 S. Ct. at 2359. Therefore, because the remaining independent claims as well as the dependent claims recite little more than the same abstract idea found in Claim 1 of the '967 Patent and Claim 1 of the '849 Patent, those claims are representative for purposes of the § 101 analysis.

## III. CONCLUSION

For the reasons set forth above and in Defendants' Opening Brief, all claims of the Asserted Patents are directed to patent-ineligible subject matter under Section 101 and are thus invalid. Accordingly, Defendants' Motion to Dismiss should be granted.

Dated:  June 23, 2015

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

Dan D. Davison
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201
Tel: 214.855.8000
Fax: 214.855.8200
dan.davison@nortonrosefulbright.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010
Tel: 713.651.5283
Fax: 713.651.5246
richard.zembek@nortonrosefulbright.com

Gilbert A. Greene
Marwan Elrakabawy
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
Tel: 512.474.5201
Fax: 512.536.4598
bert.greene@nortonrosefulbright.com
marwan.elrakabawy@nortonrosefulbright.com

*Attorneys for Defendants The Priceline*
*Group Inc., Priceline.com LLC, KAYAK*
*Software Corporation, and OpenTable, Inc.*

## CERTIFICATE OF SERVICE

I certify that on June 23, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Francis DiGiovanni*
Francis DiGiovanni

81435119.1