# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> THE PRICELINE GROUP INC., et al., <br><br> Defendants. | § § § § § § § § § § § § § § §   C.A. No. 15-cv-00137-LPS-CJB |

**DEFENDANTS' FIRST NOTICE OF RULE 30(b)(6) DEPOSITION TO IBM**

Please take notice that pursuant to Federal Rule of Civil Procedure 30(b)(6), The Priceline Group Inc., KAYAK Software Corporation, OpenTable, Inc., and priceline.com LLC ("Defendants") will take the deposition on oral examination of Plaintiff International Business Machines Corporation ("IBM"). The deposition will begin at 9:30 a.m. on October 5, 2016, in the New York offices of Norton Rose Fulbright, 1301 Avenue of the Americas, New York, New York 10019, or at such other time and location as the parties may mutually agree, and will continue from day to day until completed. IBM shall designate one or more persons who are qualified, knowledgeable, and competent to testify on its behalf as to all information known or reasonably available to IBM with respect to each of the individual topics specified below on which examination is requested. The deposition will be conducted before a court reporter authorized to administer oaths and will be recorded by stenographic, audio, video, and/or real-time transcription.

# I.
# DEFINITIONS AND INSTRUCTIONS

1. "IBM," "You," "Your," or "Plaintiff" mean and include International Business Machines Corp. and all related entities, parents, subsidiaries or divisions, and any predecessor or successor entities and any of its officers, directors, agents, attorneys, consultants, accountants, employees, representatives, and any other persons acting, or purporting to act for or on their behalf, and any such Persons that are or become party to this action.

2. "Defendant(s)" means and includes any one or more of the parties to this litigation: The Priceline Group Inc., KAYAK Software Corporation, OpenTable, Inc., and/or priceline.com LLC.

3. "Patents-in-Suit," "'967 patent," "'849 patent," "'601 patent," and "'346 patent" have the same scope and meaning as in Plaintiff's Original Complaint.

4. "Document" has the same scope and meaning as provided in Rule 34(a). Non-identical copies are considered separate documents.

5. "Prior Art" has the same meaning as is generally understood in proceedings before the U.S. Patent and Trademark Office (e.g., MPEP 901, et seq.) and as defined in Plaintiff's requests for production and interrogatories.

6. "Defendants' Invalidity Contentions" means Defendants' Preliminary Invalidity Contentions, served on November 17, 2015; Defendants' Supplemental Preliminary Invalidity Contentions, served on December 28, 2015; and Defendants' Final Invalidity Contentions, due on September 13, 2016; and all supplements and amendments to

Defendants' Preliminary Invalidity Contentions and Defendants' Final Invalidity Contentions, without regard to whether a supplement or amendment was served before or after the date of service of this notice.

7. "Related Patent" means, whether foreign or domestic, (a) any patent or patent application to which an Asserted Patent claims priority; (b) any patent or patent application that claims priority to an Asserted Patent; (c) any reissue or application for reissue of any Asserted Patent or otherwise Related Patent; (d) any certificate of patentability or unpatentability under 35 U.S.C. § 307, or any request for reexamination, relating to any Asserted Patent or otherwise Related Patent; or (e) any foreign counterpart of an Asserted Patent or otherwise Related Patent.

8. "Accused Products" means and includes the products, services, and methods of any Defendant identified in IBM's Preliminary Infringement Contentions, served October 16, 2015, and any subsequent amendment or supplement thereto.

9. "Litigation" means *International Business Machines Corp. v. The Priceline Group et. al*, 15-cv-137 (D. Del).

10. All other terms, unless specifically defined, are to be given their ordinary meaning, except that any legal terms of art are to be given the meaning as understood in the field of law.

## II.
## TOPICS OF EXAMINATION

1. The Patents-in-Suit.

2. The preparation and prosecution of each of the patent applications that led to the Patents-in-Suit or any Related Patents, including but not limited to, all communications to or from any patent office, whether prior to or after the issuance of any of the Asserted Patents or Related Patents.

3. The conception, reduction to practice, research, design, development, programming, coding, operation, manufacture, first offer for sale, and first sale of the alleged invention(s) disclosed in the Patents-in-Suit, including the PRODIGY online service and the Tivoli Federated Identity Management product, and also including the identity of all individuals currently or formerly working for, on behalf of, or with IBM who are knowledgeable about the reduction to practice, research, design, development, coding, programming, operation, manufacture, first offer for sale, and first sale of the alleged invention(s) disclosed in the Patents-in-Suit, including the PRODIGY online service and the Tivoli Federated Identity Management product.

4. The Trintex and Prodigy projects.

5. The respective contribution of each of the named inventors to the conception and/or reduction to practice of each asserted claim of the Patents-in-Suit.

6. The origins of any IBM products or services covered by or relating to the alleged inventions disclosed in the Patents-in-Suit, including the time, place, circumstances, and individuals involved in the decision to begin researching, designing, developing, programming, and coding any such products or services, and any agreement between IBM and any third party concerning the research, design, development, programming, and/or coding of any such products or services.

7. Any proposed or actual sale or offer to sell, public use, public demonstration, public disclosure, or importation of any products, systems, or services that either uses or encompasses any claim of the Patents-in-Suit, or that was intended to use or encompass any claim of the Patents-in-Suit or a Related Patent.

8. The first disclosure, design, research, development, testing, evaluation, commercialization, manufacture, or operation of the subject matter of any alleged invention described and/or claimed in the Patents-in-Suit or any Related Patents, including without limitation the design and marketing of Trintex technology and software and the design and marketing of Prodigy technology and software.

9. The prior art known to IBM, the named inventors, or the attorneys of record at the time of the application for the Patents-in-Suit and/or any related patent or patent application and throughout the pendency of such applications.

10. Any opinions of counsel that relate to any of the Patents-in-Suit or Related Patents.

11. Any agreements, assignments, and/or licenses relating to the Patents-in-Suit or any Related Patent, including but not limited to the specific rights granted by any such agreements, assignments, and/or licenses.

12. IBM's knowledge of any facts supporting IBM's allegation that Defendants willful infringed the Patents-in-Suit.

13. Any products or instrumentalities of any Defendant, person, or entity that allegedly practices any claim of any Patents-in-Suit or any Related Patent, including the testing or analysis of any products or instrumentalities.

14. Any pre-suit technical investigations, evaluations, analyses, studies, reports, and tests conducted by or on behalf of IBM involving or concerning infringement of Patents-in-Suit.

15. IBM's communications with any third party, including any Defendants in this lawsuit, regarding the Asserted Patents, any Related Patents, or this Litigation, including the dates of such communications and the identity of the individual(s) making such communications.

16. IBM's first knowledge or awareness of the accused instrumentalities and circumstances related to IBM's first knowledge.

17. IBM's knowledge of the alleged infringement by Defendants of the Patents-in-Suit.

18. IBM's activities between when it first became aware of the accused instrumentalities and the date on which it filed the Litigation.

19. Any persons or entities that IBM has alleged or is currently alleging is a direct and/or indirect infringer(s) of the Patents-in-Suit or Related Patents, including all communications, analysis, reviews, or opinions regarding the allegedly infringing product or instrumentality.

20. Each IBM product, system, or service that practices or did practice one or more of the Patents-in-Suit.

21. IBM's efforts to mark IBM products with the numbers of the Patents-in-Suit.

22. IBM's efforts to ensure that its licensees mark their products with the numbers of the Patents-in-Suit.

23. IBM's understanding of the prior art of each of the Patents-in-Suit, including but not limited to the prior art in identified in Defendants'.

24. Any and all objective evidence of non-obviousness relating to the Patents-in-Suit.

25. The age, size, and/or storage policies and practices associated with the following: (1) the data sources identified in IBM's ESI Disclosure, (2) the data sources from which IBM has produced documents to date, (3) the data sources that contain information responsive to Defendants' Requests for Production.

26. IBM's policies and practices with respect to the retention and destruction of Documents and electronically stored information, including its practices for backing up or otherwise preserving data.

27. IBM's interrogatory answers in this Litigation except for the answers to Defendants' Common Interrogatories No. 1-5, KAYAK Software Corporation's Interrogatories 1-2, and OpenTable, Inc.'s Interrogatories 1-2.

28. The allegations contained in IBM's Complaint in the Litigation.

29. All litigation or threatened litigation concerning or relating to any of the Patents-in-Suit.

30. The litigation between IBM and Amazon, Inc. in the Eastern District of Texas, 9:06-cv-00242 ("Amazon Litigation).

- 8 -

31. Any contention made, position taken, expert report, or disclosure provided by any party in the Amazon Litigation relating to: (1) the construction or interpretation of any term in any claim of any Patents-in-Suit or Related Patent; (2) the validity and/or invalidity of any Patents-in-Suit or Related Patents, and (3) the infringement of any Patents-in-Suit or Related Patents.

32. The infringement positions advanced by IBM in the Amazon Litigation.

Respectfully submitted,

| | |
|---|---|
| August 31, 2016 | */s/ Dan D. Davison* |

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

Dan D. Davison
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201
Tel: 214.855.8000
Fax: 214.855.8200
dan.davison@nortonrosefulbright.com

Richard S. Zembek
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010
Tel: 713.651.5283
Fax: 713.651.5246
richard.zembek@nortonrosefulbright.com

Gilbert A. Greene
Marwan Elrakabawy
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
Tel: 512.474.5201
Fax: 512.536.4598
bert.greene@nortonrosefulbright.com
marwan.elrakabawy@nortonrosefulbright.com

*Attorneys for Defendants, The Priceline Group Inc., Priceline.com LLC, KAYAK Software Corporation, and OpenTable, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on August 31, 2016, I served the foregoing on all counsel of record.

        */s/ Dan Davison*
        Dan D. Davison
        NORTON ROSE FULBRIGHT US LLP
        2200 Ross Ave., Suite 3600
        Dallas, TX 75201
        Tel: 214.855.8000
        Fax: 214.855.8200
        dan.davison@nortonrosefulbright.com