# EXHIBIT 1

Trials@uspto.gov                                                    Paper 16
Tel: 571-272-7822                              Entered: December 15, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

KAYAK SOFTWARE CORP., OPENTABLE, INC.,
PRICELINE.COM LLC, and THE PRICELINE GROUP INC.,
Petitioner,

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
Patent Owner.

_____

Case CBM2016-00075
Patent 7,072,849

_____

Before MICHAEL W. KIM, CHRISTOPHER M. KAISER, and
KEVIN W. CHERRY, *Administrative Patent Judges*.

KIM, *Administrative Patent Judge*.

DECISION
Declining to Institute Covered Business Method Patent Review
*35 U.S.C. § 324(a) and 37 C.F.R. § 42.208*

CBM2016-00075
Patent 7,072,849

## I.    INTRODUCTION

### A.    Background

KAYAK Software Corp., OpenTable, Inc., Priceline.com LLC, and The Priceline Group Inc. ("Petitioner") filed a Corrected Petition to institute a covered business method patent review of claims 1–25 of U.S. Patent No. 7,072,849 (Ex. 1001, "the '849 patent").  Paper 12 ("Pet.").  International Business Machines Corp. ("Patent Owner") filed a Preliminary Response. Paper 14 ("Prelim. Resp.").

A covered business method patent review may not be instituted unless Petitioner can "demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable."  35 U.S.C. § 324(a). Institution of a covered business method patent review is discretionary.  *See* 35 U.S.C. § 324(a); 37 C.F.R. § 42.208(a).  Furthermore, the Office "may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office."  *See* 35 U.S.C. § 325(d).  For the reasons set forth below, we do not institute a covered business method patent review on any of claims 1–25 of the '849 patent on any ground.

### B.    Related Proceedings

Petitioner and Patent Owner identify the following district court proceeding concerning the '849 patent:  *IBM v. The Priceline Group Inc.*, Civil Action No. 1:15-cv-137 (D. Del. Feb. 9, 2015) (the "Litigation")*; IBM v. Groupon, Inc.*, Civil Action No. 1:16-cv-122 (D. Del. Mar. 2, 2016). Pet. 4; *see also* Paper 10, 1.  Petitioner and Patent Owner also identify the following related proceedings before the Patent Trial and Appeal Board

CBM2016-00075
Patent 7,072,849

("Board") involving the same parties:  (1) Case CBM2016-00076 (the '849 patent); and (2) Cases CBM2016-00077 and CBM2016-00078 (related U.S. Patent No. 5,796,967).  Furthermore, Petitioner and Patent Owner identify the following proceedings before the Board involving the same parties:  (1) Cases IPR2016-00604 and IPR2016-00605 (U.S. Patent No. 5,961,601); and (2) Cases IPR2016-00608 and IPR2016-00609 (U.S. Patent No. 7,631,346).

### C.     The '849 Patent

The '849 patent discloses that the claimed invention relates generally to a distributed processing, interactive computer network intended to serve very large numbers of simultaneous users.  Ex. 1001, 1:16–20.  In making the processing power of large computers available to many users, processing bottlenecks arise that cause network slowdowns and compel expansion of computing resources.  Ex. 1001, 1:43–49.

> Particularly, in an interactive service, if advertising were provided in a conventional manner; as for example, by providing the advertising as additional data to be supplied to and presented at the user sites, the effort would compete with the supplying and presentation of service application data, and have the undesirable effect of diminishing service response time.  More specifically, if advertising were supplied conventionally from a host to a user site, the application traffic, which constitutes the substance of the service, would have to compete with advertising for network communication resources.

Ex. 1001, 2:20–30.  To alleviate at least some of this, one possible form is to selectively distribute advertising and application objects in a service network in accordance with a predetermined plan based on a likelihood the applications and advertising will be called by the respective user reception systems.  Ex. 1001, 3:37–41.  According to the '849 patent, because

CBM2016-00075
Patent 7,072,849

selective storage of objects is local, response time is reduced for those applications that a user accesses most frequently.  Ex. 1001, 7:1–3.

### D.  Illustrative Claim

Petitioner challenges claims 1–25 of the '849 patent.  Claims 1, 8, 13, 14, and 21 are the only independent claims.  Independent claim 1 is illustrative of the challenged claims and is reproduced below:

> 1.    A method for presenting advertising obtained from a computer network, the network including a multiplicity of user reception systems at which respective users can request applications, from the network, that include interactive services, the respective reception systems including a monitor at which at least the visual portion of the applications can be presented as one or more screens of display, the method comprising the steps of:
>
> a. structuring applications so that they may be presented, through the network, at a first portion of one or more screens of display; and
>
> b. structuring advertising in a manner compatible to that of the applications so that it may be presented, through the network, at a second portion of one or more screens of display concurrently with applications, wherein structuring the advertising includes configuring the advertising as objects that include advertising data and;
>
> c. selectively storing advertising objects at a store established at the reception system.

CBM2016-00075
Patent 7,072,849

### E.      Asserted Grounds of Unpatentability

Petitioner challenges claims 1–25:

| Reference(s) | Basis | Claims Challenged |
|---|---|---|
| | § 101 | 1–25 |
| Reference 7[1] and Simon[2] | § 103 | 1–3, 5, 6, 8, 9, 12–16, 18, 19, 21, 22, and 25 |
| Reference 7, Simon, and Alber[3] | § 103 | 4, 7, 17, and 20 |
| Reference 7, Simon, and Wilson[4] | § 103 | 2, 3, 5, 6, 9, 12, 15, 16, 18, 19, 22, and 25 |
| Reference 7, Simon, Wilson, and Alber | § 103 | 4, 7, 17, and 20 |

## II.      ANALYSIS

### A.      Obviousness Grounds Based on Reference 7, Simon, Alber, and Wilson

Petitioner asserts that claims 1–25 are unpatentable under 35 U.S.C. § 103 as obvious over various combinations of Reference 7, Simon, Alber, and Wilson.  Pet. 45–86.  Patent Owner disagrees, and asserts further that these grounds should be denied under 35 U.S.C. § 325(d).  Prelim. Resp. 50–82.

---

[1] "Trintex to Aim On-Line Ads At Demographic Segments," Marketing Today, The American Banker (June 30, 1987) (Ex. 1029, "Reference 7").
[2] Simon et al., U.S. Patent No. 4,575,579, pub. Mar. 11, 1986 (Ex. 1024, "Simon").
[3] Alber, Antone F., *Videotex/Teletext Principles & Practices*, 1985 (Ex. 1030, "Alber").
[4] Wilson, U.S. Patent No. 3,991,495, pub. Nov. 16, 1976 (Ex. 1049, "Wilson").

CBM2016-00075
Patent 7,072,849

### 1.     *Relevant Prosecution History*

The '849 patent issued on July 4, 2006 from U.S. Patent Application
No. 08/158,025, filed November 26, 1993 ("the '025 application").
Ex. 1001, [45], [60].  The '025 application is a divisional of U.S. Patent
Application No. 07/338,156, filed July 28, 1989 ("the '156 application").
Ex. 1001, [60].  Each of Reference 7, Simon, and Alber are listed in the '849
patent as having been "cited by examiner."  Ex. 1001, [56].  A first Office
Action, was mailed on April 19, 1994, and a Notice of Allowance was
mailed on March 2, 2006.

In an Office Action mailed October 27, 1997, all pending claims were
rejected under 35 U.S.C. § 103 over Simon and various combinations of
other references.  Ex. 1011, 3–14.  In a Decision on Appeal, mailed February
27, 2002, the Board reversed the rejections of all claims under 35 U.S.C.
§ 103 over Simon and various combinations of other references (Ex. 1003,
5–29), and entered new grounds of rejection under 35 U.S.C. § 103 for
certain claims based at least in part on Reference 7, a reference discovered
during a new prior art search conducted by the Board *sua sponte*.  Ex. 1003,
32–47.  In a Decision on Request for Rehearing, mailed February 27, 2002,
the Board acknowledged Alber (Ex. 1036, 2), and addressed the rejection of
certain claims under 35 U.S.C. § 103 based at least in part on Reference 7.
Ex. 1036, 7–44.

In an Office Action mailed June 19, 2003, certain claims were
rejected based at least in part on Alber (Ex. 1015, 2–3, 8–11), and a passing
acknowledgement was made to Reference 7.  Ex. 1015, 11–12.  On
September 16, 2003, an Amendment was filed that mentioned Simon
(Ex. 1015, 9), addressed the rejections based at least in part on Alber

6

CBM2016-00075
Patent 7,072,849

(Ex. 1015, 10–23, 26–29), and addressed Reference 7.  Ex. 1015, 29–31.  In an Office Action mailed December 10, 2003, certain claims were rejected based at least in part on Alber.  Ex. 1016, 2–3, 11–18*; see also* Ex. 1017, 13 (supplemental Office Action, mailed on December 18, 2003, which includes an additional rejection of claim 32 based at least in part on Alber).  On March 18, 2004, an Amendment was filed that addressed the rejections based at least in part on Alber.  Ex. 1018, 1–3, 6–8, and 17–24.  On March 24, 2004, a Supplemental Amendment was filed that addressed the rejections based at least in part on Alber (Ex. 1018, 9–14), and also indicated that Alber was discussed in an Examiner Interview conducted on March 23, 2004.  Ex. 1018, 9–11.  In an Advisory Action, mailed April 21, 2004, the Examiner indicated that the rejection of certain claims based at least in part on Alber would be maintained.  Ex. 1019, 2–3.

In a Decision on Appeal, mailed December 23, 2005, the Board addressed the rejections of certain claims based at least in part on Alber (Ex. 1004, 3–4, 15-22, 30–33), and entered new grounds of rejection under 35 U.S.C. § 103 for certain claims based at least in part on one of Reference 7 (Ex. 1004, 33–59) and Alber.  Ex. 1004, 56–59.

## 2. *Analysis Under 35 U.S.C. § 325(d)*

Our discretion as to whether to institute a covered business method review under 35 U.S.C. § 324(a) is guided, in part, by the further language of 35 U.S.C. § 325(d), which provides:  "In determining whether to institute or order a proceeding under this chapter, chapter 30, or chapter 31, the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office."

CBM2016-00075
Patent 7,072,849

Petitioner acknowledges the extensive prosecution history of the '849 patent.  Pet. 18–21.  Petitioner further acknowledges that "Reference 7, Simon, and Alber were all considered during the prosecution history of the '849 Patent."  Pet. 46.  Petitioner asserts that the Board should, nevertheless, institute a review because of the following:

> The combinations of references discussed below, however, were never expressly considered during the prosecution history. Rather, the BPAI explicitly stated that it was not reviewing a combination of Simon with a conventional videotex system as is presented herein because it was not before it.  Ex. 1003, BPAI1, at 22 ("While, perhaps, it would have been obvious to modify Simon to operate as a conventional interactive videotext system in view of the fact that Simon discusses conventional interactive videotext in the background of the invention, and the fact that the offline system is sometimes connected online to download new pages, this is not the rejection before us.").

Pet. 46.

In opposition, Patent Owner argues the "the Board does not need to revisit eleven years of prosecution that addressed the patentability of the challenged claims over the same previously-considered references and arguments that Petitioner advances here.  The Board should exercise its discretion under 35 U.S.C. § 325(d) and deny institution" on the obviousness grounds proffered by Petitioner.  Prelim. Resp. 50–54.  We agree with Patent Owner.

For the grounds under 35 U.S.C. § 103(a) based solely on Reference 7, Simon, and Alber, we are persuaded that the record could not be clearer that those references were presented to and extensively considered by the Office during prosecution of the '849 patent.  Aside from the fact that each of Reference 7, Simon, and Alber are listed in the '849 patent as having been "cited by Examiner," the prosecution history, collectively, includes at least

8

CBM2016-00075
Patent 7,072,849

86 pages directed to Reference 7, at least 38 pages directed to Simon, and at least 72 pages directed to Alber. While we acknowledge that no specific rejection was set forth by the Office over the exact combination of Reference 7, Simon, and Alber advanced by Petitioner, every two-reference permutation of Reference 7, Simon, and Alber is mentioned in at least one of the above-referenced papers, and the Amendment filed September 16, 2003, mentions all three. Indeed, both the Examiner and the Board were each separately presented with arguments concerning each of Reference 7, Simon, and Alber.

Furthermore, the Board's previous Decisions, all before the same panel, collectively indicated that the Board had no reservations in setting forth new grounds of rejection based on newly discovered references, providing at least some circumstantial evidence that the Board considered Simon, Reference 7, and Alber in combination, especially at the time of the Decision on Appeal, mailed December 23, 2005, when all three references had been mentioned previously by each of the Examiner, the Board, and the Applicants/Appellants. Accordingly, on these facts, we discern that instituting review solely because the exact combination of Reference 7, Simon, and Alber advanced by Petitioner was not set forth in the prosecution history would exalt form over substance, if Section 325(d) could be avoided entirely by merely adding an already-considered incremental reference to a previously considered prior art combination. We are unpersuaded that such a position is credible.

Of course, some of the grounds of unpatentability proffered by Petitioner under 35 U.S.C. § 103(a) include Wilson, which neither party asserts was cited during prosecution of the '849 patent. To that end, Patent

CBM2016-00075
Patent 7,072,849

Owner asserts that "Petitioner applied only Reference 7 and Simon to the independent claims, using Alber and Wilson only to fill in limitations in dependent claims in Grounds 3–5," and further that "Petitioner introduces Wilson in Grounds 4 and 5 to advance the same argument raised by the Examiner in an office action during prosecution: that it would be purportedly obvious to replenish a store of advertising objects when the store of advertising objects falls below a predetermined level." Prelim. Resp. 53–54. We have reviewed the Petition and agree with Patent Owner that Wilson is only cited for the additional subject matter recited in each of dependent claims 2, 9, 15, and 22. Pet. 82–86 ("Wilson renders obvious the 'order point' concept found in claims 2, 9, 15, and 22.")

Additionally, for the grounds that do not include Wilson, Petitioner cites Simon for the additional subject matter recited in each of dependent claims 2, 9, 15, and 22, providing at least circumstantial evidence that the cited portions of Wilson are substantially similar to certain cited disclosures of Simon for that additional subject matter. And as noted above, Wilson is not cited by Petitioner for the subject matter of any other claim, independent or dependent, and the other references cited for the subject matter of those other claims, including Simon, have already been exhaustively presented to and considered by the Office. Accordingly, on these facts, we determine that Petitioner's additional citation of Wilson in certain grounds, for the additional subject matter of certain dependent claims, is insufficient to persuade us that exercising our discretion under 35 U.S.C. § 325(d) is inappropriate.

Indeed, during prosecution, the Examiner was not persuaded that the additional subject matter recited in each of dependent claims 2, 9, 15, and 22

CBM2016-00075
Patent 7,072,849

was separately patentable, even despite the admission by the Examiner, as identified in an Amendment filed September 16, 2003 (Ex. 1015, 22), that "neither reference explicitly discloses that the cache of advertising objects is replenished when the store falls below a predetermined level." Ex. 1017, 7–8 (dependent claims 2, 9, 15 and 22 of the '849 patent correspond respectively to claims 5, 17, 25, and 27 in the prosecution history); *see also* Ex. 1013, 6–7, 10; Ex. 1016, 6–7, 14–15, 18–19; Ex. 1017, 15–16, 19. Given that the Examiner did not need *any* prior art to reject the additional subject matter recited in each of dependent claims 2, 9, 15, and 22, we are persuaded that *any* prior art or arguments now presented for that additional subject matter would be substantially similar to that already presented to and considered by the Examiner.

To be sure, we acknowledge that similarity of prior art alone does not require the Office to exercise its discretion in denying any grounds set forth in a Petition. There could be situations where, for example, the prosecution is not as exhaustive, where there are clear errors in the original prosecution, or where the prior art at issue was only cursorily considered that can weigh against exercising the discretion. Moreover, if the Petitioner had brought forward and explained some specific circumstances that have materially changed or of which the Office was not aware of during the prior consideration of the prior art and arguments at issue—such as, for example, changed claim constructions or new evidence related to priority dates of the prior art or challenged patent—then those could weigh in favor of institution. Petitioner, however, has not articulated such circumstances in this case. Accordingly, for the above reasons, we exercise our discretion under 35 U.S.C. § 325(d) and decline to institute review on Petitioner's

CBM2016-00075
Patent 7,072,849

proffered grounds of obviousness based on Reference 7, Simon, Alber, and Wilson.

### 3.    *Analysis Under 35 U.S.C. § 324(a)*

Institution of a covered business method patent review is discretionary. *See* 35 U.S.C. § 324(a) ("The Director may not authorize a post-grant review to be instituted unless. . ."); 37 C.F.R. § 42.208(a) ("[T]he Board may authorize the review to proceed."). Furthermore, this discretionary authority may be exercised as to some or all grounds. *See* 37 C.F.R. § 42.208(b) ("[T]he Board may deny some or all grounds for unpatentability for some or all of the challenged claims."). Among the factors we consider in deciding whether to exercise discretion not to institute review on any particular grounds is "the effect on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to complete the proceeding timely in prescribing the rules as required by . . . 35 U.S.C. 326(b)." 77 Fed. Reg. 48,680, 48,702 (Aug 14, 2012).

To that end, the factors set forth above with respect to our analysis under 35 U.S.C. § 325(d) concerning "the same or substantially the same prior art or arguments" also weigh heavily against instituting review under 35 U.S.C. § 324(a) for the prior art grounds proffered by Petitioner.

Additionally, we note that the '025 application underwent more than 12 years of prosecution, including the Examiner's issuance of at least six Office Actions each including a ground of rejection based on prior art, and the Board's issuance of three separate Decisions, each of these Board's Decisions including analysis concerning at least one new ground of rejection based on prior art. While length of prosecution and the numbers of Office

12

CBM2016-00075
Patent 7,072,849

Actions and Board Decisions do not, by themselves, definitively mandate for or against institution on a particular ground, on these facts, we are persuaded that they do weigh heavily against institution of the prior art grounds proffered by Petitioner.

Again, we acknowledge that the existence of the above factors in a particular case does not require the Office to exercise its discretion in denying any grounds set forth in a Petition. Nevertheless, for the above reasons, we exercise our discretion under 35 U.S.C. § 324(a) and decline to institute review on Petitioner's proffered grounds of obviousness based on Reference 7, Simon, Alber, and Wilson.

### 4. Conclusion

For the above reasons, and on this record, for the grounds based on 35 U.S.C. § 103(a) proffered by Petitioner, we reject the Petition under 35 U.S.C. § 325(d), and also exercise our discretion and decline to institute a covered business method patent review of any of claims 1–25 of the '849 patent on those grounds. *See* 35 U.S.C. § 324(a); 37 C.F.R. § 42.208(a).

### B. Grounds Based on 35 U.S.C. § 101

Petitioner asserts that claims 1–25 are unpatentable under 35 U.S.C. § 101 for failing to recite statutory subject matter. Pet. 26–45. Patent Owner disagrees. Prelim. Resp. 26–49.

### 1. Relevant Law

An invention is patent-eligible if it claims a "new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The Supreme Court, however, has long interpreted § 101 to include implicit exceptions: "[l]aws of nature, natural phenomena, and abstract ideas" are

CBM2016-00075
Patent 7,072,849

not patentable.  *E.g.*, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354 (2014).

In determining whether a claim falls within the excluded category of abstract ideas, we are guided in our analysis by the Supreme Court's two-step framework, described in *Mayo* and *Alice*.  *Id.* at 2355 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)).  In accordance with that framework, we first determine whether the claim is "directed to" a patent-ineligible abstract idea.  *See Alice*, 134 S. Ct. at 2356 ("On their face, the claims before us are drawn to the concept of intermediated settlement, *i.e.*, the use of a third party to mitigate settlement risk."); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) ("Claims 1 and 4 in petitioners' application explain the basic concept of hedging, or protecting against risk."); *Diamond v. Diehr*, 450 U.S. 175, 184 (1981) ("Analyzing respondents' claims according to the above statements from our cases, we think that a physical and chemical process for molding precision synthetic rubber products falls within the § 101 categories of possibly patentable subject matter."); *Parker v. Flook*, 437 U.S. 584, 594–595 (1978) ("Respondent's application simply provides a new and presumably better method for calculating alarm limit values."); *Gottschalk v. Benson*, 409 U.S. 63, 64 (1972) ("They claimed a method for converting binary-coded decimal (BCD) numerals into pure binary numerals.").

The patent-ineligible side of the spectrum includes fundamental economic practices, *Alice*, 134 S. Ct. at 2357; *Bilski*, 130 S. Ct. at 3231; mathematical formulas, *Flook*, 437 U.S. at 594–95; and basic tools of scientific and technological work, *Benson*, 409 U.S. at 69.  On the patent-eligible side of the spectrum are physical and chemical processes, such as

CBM2016-00075
Patent 7,072,849

curing rubber, *Diamond*, 450 U.S. at 184, "tanning, dyeing, making waterproof cloth, vulcanizing India rubber, smelting ores," and a process for manufacturing flour, *Gottschalk*, 409 U.S. at 69.

If the claim is "directed to" a patent-ineligible abstract idea, we then consider the elements of the claim—both individually and as an ordered combination—to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea. *Alice*, 134 S.Ct. at 2355. This is a search for an "inventive concept"—an element or combination of elements sufficient to ensure that the claim amounts to "significantly more" than the abstract idea itself. *Id.*

> 2.    *Whether the Claims Are Directed to an "Abstract Idea"*

Petitioner asserts that independent claim 1 is directed to "generating partitioned screen displays for users (with advertisements and applications displayed concurrently) from information stored at the user's computer," and that independent claim 21 is directed to "presenting a user with targeted advertising that is stored at the user's computer." Petitioner asserts further that both of these concepts are abstract ideas. Pet. 26–35. Patent Owner disagrees, asserting that the challenged claims are directed to improvements in computer functionality, and not an "abstract idea." Prelim. Resp. 26–38. We agree with Patent Owner.

Largely, we agree with Petitioner's characterizations as to what independent claims 1 and 21 are "directed to." Pet. 29–30, 34; *see also* Ex. 1034, 47–48. Where Petitioner's assertions are flawed is as to whether those characterizations are an "abstract idea." Beginning with independent claim 1, the overall weakness in Petitioner's analysis is that it breaks up into several pieces what the characterization of independent claim 1 is "directed

CBM2016-00075
Patent 7,072,849

to," and then asserts that each separate piece was well known, with no attempt to tie those pieces together.  We agree with Patent Owner that such an analysis is misplaced, as the proper analytical framework is to treat the characterization as whole, for every characterization can always be broken down into finer constituent pieces, each of which, at some point, can be considered well known.  *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) ("Under step one of *Mayo/Alice*, the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."); *cf. KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418–419 (2007) ("a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art. . . . This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known"); *Alice*, 134 S. Ct. at 2355 ("[W]e consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application.").  To allow otherwise would effectively render every characterization of what a claim is "directed to" superfluous, in that it would be almost impossible for any characterization to be considered anything other than an amalgamation of "abstract ideas" under the first prong of the *Alice* framework.

To that end, independent claim 1 is directed to "generating partitioned screen displays for users (with advertisements and applications displayed concurrently) from information stored at the user's computer."  In analyzing why the aforementioned characterization is an "abstract idea," Petitioner

CBM2016-00075
Patent 7,072,849

begins with the following analogy: "several analogs for the local storage concept exist in the brick-and-mortar context: an office worker may create a copy of certain documents from a larger file stored in a central file room to keep at her desk to avoid visiting the file room each time she needs to use the documents." Pet. 30. We discern that the analogy is a stretch. Moreover, even if were to credit the analogy for being relevant to "information stored at the user's computer," it is lacking with respect to many other aspects of the aforementioned characterization, for example, "partitioned screen displays" and "advertisements." Petitioner's analysis of the commonplace nature of "caching" (Pet. 31) suffers from the same defect.

Of course, for "partitioned screen displays," Petitioner cites the real-world examples of newspapers and magazines. Pet. 30. While we discern that this attempt at a real-world analogy is also a stretch, even if we were to credit Petitioner, this example lacks the other aspects of the aforementioned characterization, for example, "advertisements" and "information stored at the user's computer." Petitioner's analysis of computerized prior art systems is more applicable, in that it also accounts for "advertisements" (Pet. 31–32), but does not account for "information stored at the user's computer."

Petitioner further asserts that "[s]torage, organization, and/or transmission of information, even in facilitating a display on a computer screen, does not render a claim to an abstract idea patent-eligible." Pet. 32–33. We agree, however, again, we discern that this is even less relevant than the above examples, because it does account explicitly for any of "partitioned screen displays," "advertisements," and "information stored at the user's computer."

CBM2016-00075
Patent 7,072,849

Petitioner also asserts that in contrast to the claims recited in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), independent claim 1 only recites generalized steps, and does not go into further detail as to how the generalized steps are accomplished. Pet. 33–34. We agree that the recitation of generalized steps weighs in Petitioner's favor; however, we are unpersuaded that it is sufficient by itself to overcome the aforementioned deficiencies of Petitioner's analysis set forth above with respect to independent claim 1.

Indeed, in that regard, we determine that Petitioner's citation to *Enfish* is instructive, in that if the computer related elements were removed, the characterizations in *Enfish* as to what the claim was "directed to" would be nonsensical. This is particularly the case when the claimed invention is viewed from the perspective of a person of ordinary skill at the time of invention—at the very least the time of the filing of the application, July 28, 1989. Here, were we to remove all computer elements from "generating partitioned screen displays for users (with advertisements and applications displayed concurrently) from information stored at the user's computer," we are left, with our best attempt at wordsmithing and gap-filling, with "generating partitions for viewers (with advertisements and other content displayed concurrently) from information available to the viewer." While minimally comprehensible, we have no trouble in concluding that, to a person of ordinary skill in 1989, the removal of the computer completely changes the character of what the claims are "directed to," weighing against Petitioner's assertion that this characterization is an "abstract idea." Furthermore, this conclusion is supported by the portions of the '849 patent cited by Patent Owner (Prelim. Resp. 28-30 (citing Ex. 1001, 1:43–52, 2:20–

CBM2016-00075
Patent 7,072,849

30, 2:54–58, 3:38–42, 4:63–67, 5:42–6:5, 6:53–7:3, 7:4–13, 10:58–11:2, 12:38–41, 28:22–32, 32:44–48, 33:63–65, and 35:35–39), and we note generally that we agree with Patent Owner the disclosure of the '849 patent itself is almost exclusively directed to solving a problem arising in computer technology (i.e., bandwidth) with a computerized solution (i.e., local storage).

Petitioner further cites paragraphs 76 and 87 of Declaration of David Eastburn. Pet. 30. Those paragraphs, respectively, assert reasons to combine Reference 7, Simon, and Alber (Ex. 1002 ¶ 76) and Reference 7's disclosure of structured advertising. We are unclear as to the relevance of these paragraphs with respect to this ground.

Independent claim 21 is directed to "presenting a user with targeted advertising that is stored at the user's computer." Petitioner's analysis for independent claim 21 suffers from the same flaws as set forth above for independent claim 1. For example, Petitioner cites the prosecution history, specification, and *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015) for supporting the proposition that "targeted advertising" was well known at the time of the claimed invention. We agree. The aforementioned support, however, does not account for "advertising that is stored at the user's computer."

Petitioner then asserts that "applying well-known local storage techniques does not make the claimed concept less abstract." Pet. 35. For support, however, Petitioner only cites to a portion of the prosecution history, and that cited portion only addresses "advertising that is stored at the user's computer," and not "targeted advertising," as set forth above. Moreover, even if we were to agree that this assertion is entitled to some

19

weight in favor of Petitioner, it is insufficient to outweigh all of the factors weighing in favor of Patent Owner set forth above for independent claim 1, with the only difference in the analysis being that the "partitioned screen displays" of independent claim 1 are replaced with the "targeted advertising" of independent claim 21.

As we determine, for the reasons set forth above, that Petitioner has not shown sufficiently that independent claims 1 and 21 are directed to an unpatentable "abstract idea," we see no need to analyze those claims under the "significantly more" prong of the *Alice* framework.

### 3. Conclusion

For the above reasons, and on this record, we are unpersuaded that Petitioner has met its burden of showing that it is more likely than not that claims 1–25 of the '849 patent do not recite statutory subject matter under 35 U.S.C. § 101.

### C. Eligibility for Covered Business Method Patent Review

Petitioner asserts that the '849 patent meet all the requirements for being eligible for a covered business method patent review. Pet. 5–13. Patent Owner disagrees, asserting that Petitioner has not met its burden of showing that the claims of the '849 patent are not directed to a technological invention. Prelim. Resp. 8–26. As we determine that even if the '849 patent is eligible for a covered business method patent review, we would decline institution of a review for the reasons set forth above, we see no need to resolve this issue at this time.

CBM2016-00075
Patent 7,072,849

*D.     Conclusion*

For the reasons set forth above, and on this record, we do not institute a covered business method patent review on any of claims 1–25 of the '849 patent on any ground.

III.    ORDER

For the reasons given, it is:

ORDERED that that no trial or covered business method patent review is instituted for any claim of the '849 patent on any ground in this proceeding.

CBM2016-00075
Patent 7,072,849

For PETITIONER:

Richard Zembek
Gilbert A. Greene
Daniel S. Leventhal
Daniel A. Prati
NORTON ROSE FULBRIGHT US LLP

richard.zembek@nortonrosefulbright.com
bert.greene@nortonrosefulbright.com
daniel.leventhal@nortonrosefulbright.com
dan.prati@nortonrosefulbright.com
Priceline-IBM-NRFService@nortonrosefulbright.com

For PATENT OWNER:

Kevin K. McNish
Andrew G. Heinz
DESMARAIS LLP

IBMPricelineIPRService@desmaraisllp.com
kmcnish@desmaraisllp.com
aheinz@desmaraisllp.com