# EXHIBIT 2

Trials@uspto.gov                                                                            Paper 16
Tel: 571-272-7822                                                          Entered: December 15, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

KAYAK SOFTWARE CORP., OPENTABLE, INC.,
PRICELINE.COM LLC, and THE PRICELINE GROUP INC.,
Petitioner,

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
Patent Owner.

_____

Case CBM2016-00076
Patent 7,072,849

_____

Before MICHAEL W. KIM, CHRISTOPHER M. KAISER, and
KEVIN W. CHERRY, *Administrative Patent Judges*.

KIM, *Administrative Patent Judge*.

DECISION
Declining to Institute Covered Business Method Patent Review
*35 U.S.C. § 324(a) and 37 C.F.R. § 42.208*

CBM2016-00076
Patent 7,072,849

## I. INTRODUCTION

### A. Background

KAYAK Software Corp., OpenTable, Inc., Priceline.com LLC, and The Priceline Group Inc. ("Petitioner") filed a Petition to institute a covered business method patent review of claims 1–9, 12–22, and 25 of U.S. Patent No. 7,072,849 (Ex. 1001, "the '849 patent"). Paper 1 ("Pet."). International Business Machines Corp. ("Patent Owner") filed a Preliminary Response. Paper 14 ("Prelim. Resp."). For the reasons given below, we are unpersuaded that Petitioner has demonstrated sufficiently "that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable." 35 U.S.C. § 324(a). We, thus, decline to institute a covered business method patent review of claims 1–9, 12–22, and 25 of the '849 patent on any ground of unpatentability.

### B. Related Proceedings

Petitioner and Patent Owner identify the following district court proceeding concerning the '849 patent: *IBM v. The Priceline Group Inc.*, Civil Action No. 1:15-cv-137 (D. Del. Feb. 9, 2015) (the "Litigation"); *IBM v. Groupon, Inc.*, Civil Action No. 1:16-cv-122 (D. Del. Mar. 2, 2016). Pet. 4; Paper 6, 1. Petitioner and Patent Owner also identify the following related proceedings before the Patent Trial and Appeal Board ("Board") involving the same parties: (1) Case CBM2016-00075 (the '849 patent); and (2) Cases CBM2016-00077 and CBM2016-00078 (related U.S. Patent No. 5,796,967). Furthermore, Petitioner and Patent Owner identify the following proceedings before the Board involving the same parties: (1) Cases

2

CBM2016-00076
Patent 7,072,849

IPR2016-00604 and IPR2016-00605 (U.S. Patent No. 5,961,601); and (2) Cases IPR2016-00608 and IPR2016-00609 (U.S. Patent No. 7,631,346).

### C. *The '849 Patent*

The '849 patent discloses that the claimed invention relates generally to distributed processing, interactive computer network intended to provide very large numbers of simultaneous users. Ex. 1001, 1:16–20. In making the processing power of large computers available to many users, processing bottlenecks arise that cause network slowdowns and compel expansion of computing resources. Ex. 1001, 1:43–49.

> Particularly, in an interactive service, if advertising were provided in a conventional manner; as for example, by providing the advertising as additional data to be supplied to and presented at the user sites, the effort would compete with the supplying and presentation of service application data, and have the undesirable effect of diminishing service response time. More specifically, if advertising were supplied conventionally from a host to a user site, the application traffic, which constitutes the substance of the service, would have to compete with advertising for network communication resources.

Ex. 1001, 2:20–30. To alleviate at least some of this, one possible form is to selectively distribute advertising and application objects in a service network in accordance with a predetermined plan based on a likelihood the applications and advertising will be called by the respective user reception systems. Ex. 1001, 3:37–41. According to the '849 patent, because selective storage of objects is local, response time is reduced for those applications that a user accesses most frequently. Ex. 1001, 7:1–3.

3

CBM2016-00076
Patent 7,072,849

### D. Illustrative Claim

Petitioner challenges claims 1–9, 12–22, and 25 of the '849 patent. Claims 1, 8, 13, 14, and 21 are the only independent claims. Independent claim 1 is illustrative of the challenged claims and is reproduced below:

> 1. A method for presenting advertising obtained from a computer network, the network including a multiplicity of user reception systems at which respective users can request applications, from the network, that include interactive services, the respective reception systems including a monitor at which at least the visual portion of the applications can be presented as one or more screens of display, the method comprising the steps of:
> a. structuring applications so that they may be presented, through the network, at a first portion of one or more screens of display; and
> b. structuring advertising in a manner compatible to that of the applications so that it may be presented, through the network, at a second portion of one or more screens of display concurrently with applications, wherein structuring the advertising includes configuring the advertising as objects that include advertising data and;
> c. selectively storing advertising objects at a store established at the reception system.

### E. Asserted Ground of Unpatentability

Petitioner challenges claims 1–9, 12–22, and 25 as obvious under 35 U.S.C. § 103 in view of Gitta Salomon, *Design and Implementation of An Electronic Special Interest Magazine*, August 29, 1986 ("Salomon"; Ex. 1041) and Alber, Antone F., *Videotex/Teletext Principles & Practices*, 1985 ("Alber"; Ex. 1030).

4

CBM2016-00076
Patent 7,072,849

## II. ANALYSIS

### A. *Claims 1–9, 12–22, and 25 as Obvious Over Salomon and Alber*

Petitioner asserts that Salomon and Alber render obvious claims 1–9, 12–22, and 25. Pet. 16–80 (citing Exs. 1001–1030, 1032, 1036–1042, and 1044–1048). Patent Owner disagrees. Prelim. Resp. 29–67. In particular, Patent Owner asserts that Petitioner has not met its burden of showing that Salomon is prior art, because Petitioner has not shown sufficiently that Salomon was publicly accessible prior to the pertinent effective date of the '849 patent. Prelim. Resp. 61–67 (citing Exs. 1002, 1045). We agree with Patent Owner.

#### 1. Whether Salomon is Prior Art

Salomon is, on its face, a master's thesis. The first two pages of Salomon do include several dates, of which the two most pertinent are that Gitta B. Salomon purportedly submitted the thesis on June 17, 1986, and there is a stamp on the bottom left corner of page 1 of Salomon that reads as follows: "MASSACHUSETTS INSTITUTE OF TECHNOLOGY; AUG 29 1986; LIBRARIES Rotch." Ex. 1041, 1–2. Nevertheless, while Salomon does have repeated references to a 1986 date, because it is a master's thesis, and no indication has been provided that it is a regular publication, the relevant question is not when Salomon was completed, but when Salomon was publicly accessible. *See SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008).

Petitioner asserts further that Salomon was publicly accessible on April 13, 1987. The '849 patent has an effective filing date of no later than

CBM2016-00076
Patent 7,072,849

July 28, 1989[1], and, thus, based on that and the above public accessibility date, Petitioner asserts that Salomon is a reference under 35 U.S.C. § 102(b).

To that end, the entirety of Petitioner's analysis concerning the public accessibility of Salomon, as set forth in the Petition, is as follows:

> Salomon, entitled "Design and Implementation of an Electronic Special Interest Magazine," is a master's thesis cataloged and indexed in a publicly-accessible Massachusetts Institute of Technology ("MIT") library. Ex. 1041. Salomon became "published" within the meaning of 35 U.S.C. § 102(b) (that is, sufficiently accessible to the public) upon being indexed and shelved in the MIT library. *See* MPEP 2128.01 (*citing In re Hall*, 781 F.2d 897 (Fed. Cir. 1986)). MIT's MARC records indicate that the publication date (which MIT's documentation explains corresponds to "when it has been cataloged and shelved in a publicly accessible library") of Salomon is "870413," or April 13, 1987. Ex. 1045 (MARC record and accompanying explanation from MIT explaining the "008" field in a MARC record indicates the publication date, where the first two digits correspond to the year, the third and fourth digits correspond to the month, and the last two digits correspond to the day).
>
>     Salomon, entitled "Design and Implementation of an Electronic Special Interest Magazine," which was not considered during prosecution, was published by Massachusetts Institute of Technology on April 13, 1987, and is therefore prior art under 35 U.S.C. 102(b). MIT [thesis] are "generally considered 'published' when [they have] been cataloged and shelved in a publicly accessible library." *Id.* The date that a particular thesis is cataloged, and therefore published, is found in the Barton (MIT Libraries catalog) record for that thesis next to the field "008." *Id.* The "008" field in the Barton record for Salomon contains the value "870413," which shows that Salomon was published on April 13, 1987. *Id.* (explaining that the first two digits of the

---

[1] The '849 patent issued from an application that is a divisional of an application filed July 28, 1989. That application is a continuation-in-part of two applications filed March 23, 1989 and July 15, 1989.

6

CBM2016-00076
Patent 7,072,849

> "008" field correspond to the year, the third and fourth digits correspond to the month, and the fifth and sixth digits correspond to the day).

Pet. 29–31. In other words, Petitioner relies almost exclusively on field "008" of Exhibit 1045, where Exhibit 1045 appears to be two webpages (7 total pages) printed from http://library.mit.edu on May 13, 2016. Of those, the first four pages are labelled at the top as "Access and Availability Questions — MIT Thesis FAQ — LibGuides at MIT Libraries," and the last three pages are labelled at the top as "MIT Libraries' catalog — Barton — Full Catalog — Full Record." Ex. 1045. We have reviewed Exhibit 1045, and agree with Petitioner that the "008" field on page 5 of Exhibit 1045 appears to correspond to what MIT Libraries indicates, on page 1 of Exhibit 1045, is a "publication date." We agree further with Petitioner that when the listing of "870413" next to the "008" field on page 5 of Exhibit 1045 is evaluated using the criteria set forth on page 2 of Exhibit 1045, "870413" would appear to correspond to a date of April 13, 1987. In the aggregate, these factors weigh in favor of Petitioner's assertion that Salomon was publicly accessible on April 13, 1987.[2]

> In opposition, Patent Owner asserts the following:

> Exhibit 1045 can only purport to represent what is in the MIT Library's catalog as of May 13, 2016. It is not a record of the

---

[2] We acknowledge that in order to show that Salomon is prior art to the '849 patent under 35 U.S.C. § 102(b), Petitioner only need show that Salomon was publicly accessible more than one year prior to the effective filing date of no later than July 28, 1989 filing date, i.e., July 27, 1988. Petitioner focuses almost exclusively on the date of April 13, 1987, however, and in any case, our conclusions would be the same even if Petitioner argued that Salomon was publicly accessible on July 27, 1988, or more one year prior to any other potential effective filing date.

7

CBM2016-00076
Patent 7,072,849

> public availability of Salomon before July 15, 1988. Petitioner did not provide any evidence that either MARC or BARTON were accessible or available to an ordinarily skilled artisan exercising reasonable diligence in 1988. Indeed, Petitioner did not provide any evidence that either MARC or BARTON even existed in 1988.

Prelim. Resp. 66. We agree with Patent Owner. Determining public accessibility of a thesis for prior art purposes requires a showing of both shelving and ***meaningful indexing/cataloging***. *See In re Cronyn*, 890 F.2d 1158, 1161 (Fed. Cir. 1989); *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986); *In re Bayer*, 568 F.2d 1357, 1358–59 (CCPA 1978). We agree with Patent Owner that Petitioner has not provided sufficient evidence and analysis concerning "the date" of "meaningful indexing/cataloging." More specifically, beginning with "the date," we agree with Patent Owner that Petitioner's proffered evidence and analysis concerning Exhibit 1045 is not sufficiently probative of MIT Library's indexing/cataloging practices on *April 13, 1987*. While Exhibit 1045 is perhaps probative of MIT Library's indexing/cataloging practices in *2016*, i.e., the printout date of Exhibit 1045, it does not, at least without further analysis by Petitioner as to the link between the "008" field and the rest of Exhibit 1045, provide adequate support for what MIT Library's practices were almost thirty years earlier. To be sure, we could perhaps presume, as a library of a world-renowned university, some sort of cataloging system existed in 1987, computerized or otherwise. The issue, however, is that all of this is speculation because Petitioner has not provided even attorney argument to that effect, and we decline to extrapolate such conclusions on our own when the burden of moving forward is on Petitioner.

CBM2016-00076
Patent 7,072,849

Moreover, when we couple Petitioner's lack of evidence and analysis concerning "the date" with Petitioner's lack of analysis concerning "meaningful indexing/cataloging," Petitioner's position becomes even more tenuous. More specifically, Patent Owner asserts that the lack of analysis as to the form of cataloging disclosed in Exhibit 1045 is relevant, because our reviewing court has held that certain forms of cataloging are insufficient to support a finding of public accessibility, and, thus, that Petitioner needed to specify whether the forms of cataloging available on April 13, 1987, at the MIT Library, were adequate. Prelim. Resp. 65. We agree. *See In re Bayer*, 568 F.2d at 1358–59 (holding that even though certain theses were literally "cataloged" by student last name, such "cataloging" was insufficient to support a legal determination of public accessibility because one of ordinary skill would not search for a topic by last name).

To be sure, in viewing Exhibit 1045 for ourselves, we could perhaps deduce that certain search fields appear to be present on page 6 of Exhibit 1045, underneath the section heading entitled "Basic Search of Full Catalog," and, thus, it perhaps is appropriate for us to excuse Petitioner's lack of analysis concerning the form of cataloging disclosed in Exhibit 1045. The problem, however, is that we come back to "the date"; that Petitioner has not explained sufficiently how any forms of cataloging disclosed in Exhibit 1045 are relevant to cataloging in 1987. Accordingly, when Petitioner's lack of evidence and analysis with respect to "the date" is coupled with Petitioner's lack of analysis with respect to "meaningful indexing/cataloging," even if we discern independently that Exhibit 1045 discloses some evidence of "meaningful indexing/cataloging" in 2016, we

CBM2016-00076
Patent 7,072,849

are unpersuaded that Petitioner has met its burden of showing sufficiently that Salomon was publicly accessible on April 13, 1987.

To clarify, however, we are not saying that the burden was on Petitioner to provide evidence supporting every little aspect of MIT library procedure in 1987. Instead, our main point is that when the critical issue here is how Salomon was cataloged in 1987, that Petitioner should have provided some analysis as to how the contents of Exhibit 1045 could be interpreted as supporting the conclusion that an analogous cataloging system existed in 1987. Exhibit 1045, on its face, is only directed to MIT Library practices in 2016, and not 1987, and Petitioner makes almost no attempt to provide that link. We discern that this deficiency weighs dispositively against Petitioner's burden of showing that Salomon was publicly accessible on April 13, 1987.

Patent Owner makes additional arguments specific to Exhibit 1045 that, while perhaps not individually or even collectively dispositive, do, nevertheless, also weigh against Petitioner's assertion that Salomon was publicly accessible on April 13, 1987. For example, Patent Owner asserts that Petitioner's reliance on the listing of "870413" in the "008" field of page 5 of Exhibit 1045 is insufficient to carry its burden concerning public accessibility for several reasons. First, Patent Owner asserts that while the listing on page 5 of Exhibit 1045 may refer to April 13, 1987, that Petitioner does not account adequately for the following listings under additional "008" fields on page 6, of Exhibit 1045, that also correspond to Salomon and read as follows: "010623" (three times); "120331." Prelim. Resp. 63–64. We agree. Using the criteria set forth on page 2 of Exhibit 1045, "010623" would correspond to June 23, 2001, and "120331" would correspond to

10

CBM2016-00076
Patent 7,072,849

March 31, 2012, both of which are well after the July 28, 1989 effective filing date of the '849 patent. To be sure, we acknowledge that there may be some perfectly reasonable explanation that accounts for those dates in a manner that would not impinge appreciably on the earliest alleged public accessibility date of April 13, 1987. In the absence of such explanation by Petitioner, however, we agree with Patent Owner, nevertheless, that it is a factor that weighs against Petitioner's assertion that Salomon was publicly accessible on April 13, 1987.

Next, Patent Owner asserts that the "008" field, at best, indicates a cataloging of Salomon, but not shelving, and that Petitioner needs to show both in order to meet its burden of showing that Salomon was publicly accessible on April 13, 1987. Prelim. Resp. 64–65. Again, we agree. The problem here for Petitioner is that pages 1 and 2 of Exhibit 1045 are inconsistent as to how it defines "publication date." When viewed in a light most favorable to Petitioner, we acknowledge that those pages disclose the following: "A thesis is generally considered 'published' when it has been cataloged and shelved in a publicly accessible library;" and that the "[t]heses are available for public inspection (MIT and non-MIT) on the day they are received in the MIT Libraries." Ex. 1045, 1–2. In the aggregate, these disclosures appear to indicate that a "publication date" is when a thesis is cataloged and shelved, and that the theses are available for public inspection the day they are received, implying that theses are immediately "shelved" upon receipt. When considered alone, Petitioner initially appears to have carried the day.

Unfortunately for Petitioner, however, when these disclosures are considered with the other disclosures of pages 1 and 2 of Exhibit 1045, the

11

CBM2016-00076
Patent 7,072,849


CBM2016-00076
Patent 7,072,849

picture becomes much murkier. For example, right after the phrase "[a] thesis is generally considered 'published' when it has been cataloged and shelved in a publicly accessible library," Exhibit 1045 discloses the following: "[B]ut other factors could impact the publication date for patent purposes. For example, a thesis submitted electronically might be considered published on the date the electronic version is first made available to the public online, if this occurred prior to the thesis being cataloged. It might also be considered 'published' if the student posted a copy on a personal website before submitting the thesis." Ex. 1045, 1. In other words, the latter quotation would appear to disclose that a thesis may be considered "published" even though it was not cataloged at all, which contradicts the earlier quotation. Petitioner does not provide any evidence or analysis as to which quotation, if any, is correct, or how to account for these discrepancies, when public accessibility for prior art purposes requires both cataloging and shelving. Furthermore, Petitioner does not explain adequately how to interpret "made available to the public online," given that the relevant issue is public accessibility on April 13, 1987. Again, while perhaps not individually dispositive, such lack of evidence and analysis, nevertheless, weighs against Petitioner.

Next, page 1 of Exhibit 1045 discloses the following:

CBM2016-00076
Patent 7,072,849



Ex 1045, 1. While the latter sentence indicates that the field "008" is a "publication date," the first sentence implies that the field "008" is only a cataloging date, bringing into question whether the "008" field, even though it is labelled "publication date," includes cataloging and shelving, or just cataloging. The same issue is raised by the following sentence on page 2 of Exhibit 1045, which also does not include any reference to shelving: "A thesis is considered published when its catalog record is created and made available in Barton, the MIT Libraries catalog." Again, Petitioner's lack of evidence or analysis accounting for these discrepancies weighs against its assertion that Salomon was publicly accessible on April 13, 1987.

Accordingly, when we consider the entirety of the aforementioned portions of pages 1 and 2 of Exhibit 1045 in the aggregate, the "publication date" of field "008" can indicate any or all of cataloging alone, shelving alone, or both cataloging and shelving. We agree with Patent Owner that Petitioner's lack of accounting for these discrepancies weighs against its assertion that Salomon was publicly accessible on April 13, 1987.

13

CBM2016-00076
Patent 7,072,849

In summary, when the aforementioned assertions and evidence are considered in the aggregate, we determine that Petitioner has not provided sufficient evidence or analysis to meet its burden of showing that Salomon was publicly accessible on April 13, 1987. *Compare In re Hall*, 781 F.2d 897, 897–899 (Fed. Cir. 1986) (Affidavits of Dr. Erich Will, director and manager of the Loan Department of the Library of Freiburg University, that explained library procedure as to indexing, cataloging, and shelving of theses were sufficient to support a finding of public accessibility of those theses on a particular date).

Finally, Patent Owner asserts that Petitioner has not properly authenticated Salomon, and that even if Salomon was properly authenticated, that any dates imprinted thereon are inadmissible hearsay that cannot be relied upon to prove a publication date. Prelim. Resp. 62–63. As we determine that even when those dates imprinted on Exhibit 1045 are accorded full weight, however, Petitioner has not met its burden of showing that Salomon was publicly accessible on April 13, 1987, we need not resolve Patent Owner's evidentiary assertions.

### 2. Conclusion

Petitioner relies on Salomon as the primary reference in asserting that claims 1–9, 12–22, and 25 would have been obvious in view of Salomon and Alber. Pet. 16–80. For the reasons set forth above, however, Petitioner has not met its burden of showing that Salomon is prior art. Moreover, Petitioner relies on Alber for only disclosing certain claim limitations, and Alber is not presented as accounting for all of the limitations of any of independent claims 1, 8, 13, 14, and 21. Accordingly, Petitioner has not

14

CBM2016-00076
Patent 7,072,849

demonstrated sufficiently that it is more likely than not that any of claims 1–9, 12–22, and 25 are obvious in view of Salomon and Alber.

### B. Eligibility for Covered Business Method Patent Review

Petitioner asserts that the '849 patent meets all the requirements for being eligible for a covered business method patent review. Pet. 5–16. Patent Owner disagrees, asserting that Petitioner has not met its burden of showing that the claims of the '849 patent are not directed to a technological invention. Prelim. Resp. 7–28. As we determine that even if the '849 patent is eligible for a covered business method patent review, Petitioner has not demonstrated sufficiently "that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable," we see no need to resolve this issue at this time.

### C. Conclusion

On this record, Petitioner has not demonstrated sufficiently "that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable." We, thus, decline to institute a covered business method patent review of claims 1–9, 12–22, and 25 of the '849 patent on any ground of unpatentability.

### III. ORDER

For the reasons given, it is:

ORDERED that that no trial or covered business method patent review is instituted for any claim of the '849 patent on any ground in this proceeding.

CBM2016-00076
Patent 7,072,849

For PETITIONER:

Richard Zembek
Gilbert A. Greene
Daniel S. Leventhal
Daniel A. Prati
NORTON ROSE FULBRIGHT US LLP

richard.zembek@nortonrosefulbright.com
bert.greene@nortonrosefulbright.com
daniel.leventhal@nortonrosefulbright.com
dan.prati@nortonrosefulbright.com

For PATENT OWNER:

Kevin K. McNish
Andrew G. Heinz
DESMARAIS LLP

kmcnish@desmaraisllp.com
aheinz@desmaraisllp.com