# EXHIBIT 3

Trials@uspto.gov

Tel: 571-272-7822

Paper 15

Entered: December 15, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————————

KAYAK SOFTWARE CORP., OPENTABLE, INC.,
PRICELINE.COM LLC, and THE PRICELINE GROUP INC.,
Petitioner,

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
Patent Owner.

———————————————

Case CBM2016-00077
Patent 5,796,967

———————————————

Before MICHAEL W. KIM, CHRISTOPHER M. KAISER,
and KEVIN W. CHERRY, *Administrative Patent Judges.*

Opinion for the Board filed by *Administrative Patent Judge* KAISER.

Concurring Opinion filed by *Administrative Patent Judge* KIM.

DECISION
Denying Institution of Covered Business Method Patent Review
*37 C.F.R. § 42.208*

CBM2016-00077
Patent 5,796,967

# INTRODUCTION

## A. Background

This is a preliminary proceeding to decide whether, under section 18 of the Leahy-Smith America Invents Act, Pub. L. No. 112–29, 125 Stat. 284, 331 (2011) ("AIA"), a covered business method patent review of U.S. Patent No. 5,796,967 (Ex. 1001, "the '967 patent") should be instituted under 35 U.S.C. § 324(a).[1]  KAYAK Software Corp., OpenTable, Inc., Priceline.com LLC, and The Priceline Group Inc. ("Petitioner") filed a Corrected Petition (Paper 11, "Pet.") requesting a covered business method patent review of claims 1–9 and 12–17 of the '967 patent.  International Business Machines Corp. ("Patent Owner") filed a Preliminary Response. Paper 12 ("Prelim. Resp.").  A covered business method patent review may not be instituted "unless . . . the information presented in the petition . . . , if such information is not rebutted, would demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable."  35 U.S.C. § 324(a); *see* 37 C.F.R. § 42.208.

For reasons that follow, we determine that Petitioner has not established that the challenged patent qualifies as a covered business method patent.  Accordingly, we do not institute a covered business method patent review of any of the challenged claims.

---

[1] *GTNX, Inc. v. INTTRA, Inc.*, 789 F.3d 1309, 1310 (Fed. Cir. 2015) (describing transitional program for review of covered business method patents under 35 U.S.C. §§ 321–329, pursuant to the AIA, as subject to "the standards and procedures of[] a post-grant review under . . .  35 U.S.C. §§ 321–329," absent exceptions not applicable here).

CBM2016-00077
Patent 5,796,967

*B. Related Matters*

The parties identify two related pieces of litigation: *International Business Machines Corp. v. The Priceline Group Inc.*, C.A. No. 1:15-cv-00137 (D. Del.), and *International Business Machines Corp. v. Groupon, Inc.*, C.A. No. 1:16-cv-00122 (D. Del.).  Pet. 4–5; Paper 9, 1.  Petitioner also challenges the claims of the '967 patent in CBM2016-00078, and the parties identify several other pending matters that may be affected by the result here, including CBM2016-00075 and CBM2016-00076 (both challenging related U.S. Patent No. 7,072,849), as well as IPR2016-00604, IPR2016-00605, IPR2016-00608, and IPR2016-00609, which challenge other related patents.  Pet. 4–5; Paper 9, 1–2.

*C. The Asserted Grounds of Unpatentability*

Petitioner contends that claims 1–9 and 12–17 of the '967 patent are unpatentable for lack of patent-eligible subject matter under 35 U.S.C. § 101.  Pet. 26–44.  Petitioner's arguments rely on a Declaration from David Eastburn.  Ex. 1002 ("the Eastburn Declaration" or "Eastburn Decl.").

In addition, Petitioner argues that claims 1–9, 12, 14, 15, and 17 are unpatentable under 35 U.S.C. § 103 as obvious over the combination of Morris[2] and Smith.[3]  Pet. 59–89.  Petitioner also argues that claim 13 is

---

[2] James H. Morris, et al., *Andrew: A Distributed Personal Computing Environment*, 29 COMMUNICATIONS OF THE ACM 184, 184–201 (March 1986) (Ex. 1004, "Morris").

[3] David Canfield Smith, et al., *The Star User Interface: An Overview*, in NATIONAL COMPUTER CONFERENCE, 1982, 515, 515–28 (1982) (Ex. 1005, "Smith").

CBM2016-00077
Patent 5,796,967

obvious over the combination of Morris, Smith, and Salomon,[4] and that claim 16 is obvious over the combination of Morris, Smith, and admitted prior art. *Id.* at 89–92.

### D. The '967 Patent

The '967 patent relates to "[a] method for presenting applications in an interactive service featuring steps for generating screen displays of the service applications at the reception systems of the respective users." Ex. 1001, at [57]. This method of presentation involves storing and processing applications or parts of applications at a user's local personal computer rather than at a remote server. *Id.* at 6:16–22, 6:33–34, 8:48–53. This helps avoid possible server bandwidth issues that can be caused by the server being required to serve too much data to multiple users simultaneously. *Id.* at 10:38–49, 10:54–57. The '967 patent lists many applications that can take advantage of this method of presentation, including games, news, weather, movie reviews, banking, investments, home shopping, messaging, and advertising. *Id.* at 1:16–34, 1:58–59, 4:57–61, 7:13–15, 7:19–40, 20:61–63, 22:16–17.

### E. Illustrative Claims

Of the challenged claims in the '967 patent, claim 1 is independent and illustrative. It recites:

> 1. A method for presenting interactive applications on a computer network, the network including a multiplicity of user reception systems at which respective users may request a multiplicity of available applications, the respective reception systems

---

[4] Gitta B. Salomon, *Design and Implementation of an Electronic Special Interest Magazine* (Aug. 29, 1986) (M.S. thesis, Massachusetts Institute of Technology) (Ex. 1007, "Salomon").

including a monitor at which the applications requested can be presented as one or more screens of display, the method comprising the steps of:

a. generating a screen display at a respective reception system for a requested application, the screen display being generated by the respective reception system from data objects having a prescribed data structure, at least some of which objects may be stored at the respective reception system, the screen display including a plurality of partitions, the partitions being constructed from objects, the objects being retrieved from the objects stored at the respective reception system, or if unavailable from the objects stored at the respective reception system, then from the network, such that at least some of the objects may be used in more than one application;

b. generating at least a first partition for presenting applications; and

c. generating concurrently with the first partition at least a second partition for presenting a plurality of command functions, the command functions including at least a first group which are selectable to permit movement between applications.

Ex. 1001, 39:35–61.

## ANALYSIS

### A.  *Claim Construction*

In a covered business method patent review, we construe claim terms in an unexpired patent according to their broadest reasonable construction in light of the specification of the patent in which they appear.  37 C.F.R. § 42.200(b); *see Cuozzo Speed Techs. LLC v. Lee*, 136 S. Ct. 2131, 2144–46 (2016) (upholding the use of the broadest reasonable interpretation standard).  Claim terms generally are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the

CBM2016-00077
Patent 5,796,967

context of the entire disclosure. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). An inventor, however, may define specific terms used to describe an invention, but must do so "with reasonable clarity, deliberateness, and precision" and must "'set out his uncommon definition in some manner within the patent disclosure' so as to give one of ordinary skill in the art notice of the change" in meaning. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994) (quoting *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387–88 (Fed. Cir. 1992)).

The parties disagree about the proper construction of "applications." Petitioner proposes that we construe this term as "information events composed of a sequence of one or more pages opened at a screen to provide requested information and/or transaction operations." Pet. 21. Patent Owner proposes that "applications" be construed as "information events composed of a sequence of one or more pages opened at a screen." Prelim. Resp. 18. As discussed more completely below, under either of these constructions, Petitioner has not shown that any claim of the '967 patent "claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service." AIA § 18(d)(1). Accordingly, we conclude that no term needs to be construed expressly in order for us to decide whether to institute trial. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (only terms in controversy need to be construed, and only to the extent necessary to resolve the controversy).

### B. Covered Business Method Patent

Section 18 of the AIA provides for the creation of a transitional program for reviewing covered business method patents. A "[c]overed

business method patent" is a patent that "claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions." AIA § 18(d)(1); *see* 37 C.F.R. § 42.301(a).  For purposes of determining whether a patent is eligible for a covered business method patent review, the focus is on the claims.  *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1340 (Fed. Cir. 2016) (stating that "§ 18(d)(1) directs us to examine *the claims* when deciding whether a patent is a [covered business method] patent").

### 1.  Effect of Statutory Disclaimer

Petitioner identifies three claims that it contends satisfy the financial-product-or-service requirement on the basis of their claim language.  Pet. 6.  Specifically, Petitioner identifies claims 1, 13, and 16.  *Id.*  Patent Owner argues, however, that neither claim 13 nor claim 16 may provide the basis for eligibility for covered business method patent review ("CBM eligibility"), because each of these claims has been disclaimed pursuant to 35 U.S.C. § 253(a) and 37 C.F.R. § 1.321(a).  Prelim. Resp. 9–10; Ex. 2001, 10.

The disclaimer of a claim "shall . . . be considered as part of the original patent."  35 U.S.C. § 253(a).  The language "considered as part of the original patent" means that a patent subject to a disclaimer under § 253(a) "is treated as though the disclaimed claims never existed."  *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1383 (Fed. Cir. 1998) (citing *Altoona Publix Theatres v. American Tri-Ergon Corp.*, 294 U.S. 477, 492 (1935); *Guinn v. Kopf*, 96 F.3d 1419, 1422 (Fed. Cir. 1996)).  Accordingly,

CBM2016-00077
Patent 5,796,967

even though claims 13 and 16 of the '967 patent existed at the time the
Petition here was filed, we must now treat the '967 patent as if it had never
included those claims.  Under this legal rubric, claims 13 and 16 cannot
provide the basis for the '967 patent's CBM eligibility.  Although previous
non-precedential decisions of the Board are not binding on us, we note that
this result has been reached by several other panels confronted with the issue
of CBM eligibility on the basis of disclaimed claims.  *See, e.g.*, *CoreLogic,
Inc. v. Boundary Solutions, Inc.*, Case CBM2016-00016, slip op. at 6–7
(Paper 9) ("[T]he disclaimed claims should not be consulted when
determining whether the patent is a covered business method patent.");
*AT&T Mobility LLC v. Intellectual Ventures II LLC*, Case CBM2015-00185,
slip op. at 10 (PTAB May 4, 2016) (Paper 10) ("[W]e will not consider the
now-statutorily disclaimed claims in our determination."); *Great West
Casualty Co. v. Intellectual Ventures II LLC*, Case CBM2015-00171, slip
op. at 7 (PTAB Feb. 9, 2016) (Paper 10) ("[F]or the purposes of whether or
not to institute a covered business method patent review, we treat [the
disclaimed claims] as never having existed."); *Google Inc. v. SimpleAir,
Inc.*, Case CBM2015-00019, slip op. at 14–15 (PTAB May 19, 2015)
(Paper 11) ("[W]e treat the [challenged] patent as though [the disclaimed
claim] never existed.").

Some panels of the Board have held that a disclaimed dependent
claim that includes finance-related subject matter may be considered for
purposes of CBM eligibility to the extent that a remaining claim from which
the disclaimed claim depends must include limitations that encompass the
finance-related subject matter of the disclaimed claim.  *See, e.g.*, *American
Express Co. v. Maxim Integrated Prods., Inc.*, Case CBM2015-00098, slip

CBM2016-00077
Patent 5,796,967

op. at 8–13 (PTAB Sept. 22, 2015) (Paper 17) (finding CBM eligibility where Petition used subsequently disclaimed claim as an example of financial uses of invention recited in remaining claims); *J.P. Morgan Chase & Co. v. Intellectual Ventures II LLC*, Case CBM2014-00157, slip op. at 2–3 (PTAB Feb. 18, 2015) (Paper 11) ("[S]tanding for covered business method patent review remains at least because disclaimer of claim 12 does not change the scope of independent claim 1, from which it depends."). Under this theory, although claims 13 and 16 have been disclaimed, the broader claims from which they depend, claims 1, 12, 14, and 15, must be broad enough in scope to encompass their subject matter. Thus, because claims 13 and 16 included finance-related subject matter, claims 1, 12, 14, or 15 must also encompass finance-related subject matter. We understand the logic of this position, but we do not agree that it means that claims 1, 12, 14, or 15 can provide CBM eligibility.

It is not enough that a claim of general applicability, such as claims 1, 12, 14, and 15, has some scope that may be described as finance-related. Rather, to find CBM eligibility, we should "focus[] on the claim language at issue" and determine whether there is anything "explicitly or inherently financial in the construed claim language." *Blue Calypso*, 815 F.3d at 1340. "It is not enough that a sale . . . may occur, or even that the specification speculates such a potential sale might occur." *Unwired Planet, LLC v. Google Inc.*, No. 2015-1812, 2016 WL 6832978, at *5 (Fed. Cir. Nov. 21, 2016). Under *Unwired Planet* and *Blue Calypso*, to provide CBM eligibility, a claim must be limited, explicitly or inherently, to "a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or

CBM2016-00077
Patent 5,796,967

service."  AIA § 18(d)(1).  The fact that a claim is broad enough to encompass a finance-related activity does not necessarily mean that the claim, as a whole, is limited to that finance-related activity.  Accordingly, we do not rely on claims 13 or 16, nor do we rely on the dependence of those claims from any remaining claims, in deciding whether or not to institute trial.

## 2.  *Claims Remaining After the Statutory Disclaimer*

"'[F]inancial product or service' should be interpreted broadly." *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1323–26 (Fed. Cir. 2015).  "[B]roadly" in this context, however, does not mean without limits. As the Federal Circuit explained, "[t]he plain text of the statutory definition contained in § 18(d)(1)—'performing . . . operations used in the practice, administration, or management of a financial product or service'—on its face covers a wide range of *finance-related activities*."  *Id.* at 1325 (emphasis added).

With respect to the claims of the '967 patent left after Patent Owner's statutory disclaimer, Petitioner presents CBM eligibility arguments only as to claim 1.  Pet. 12–14.  Specifically, Petitioner argues that, because claim 1 recites a "method for presenting interactive applications" and "generating at least a first partition for presenting applications," and because those applications may be financial in nature, claim 1 is financial in nature.  *Id.* As an example, Petitioner points to one application described in the '967 patent, the purpose of which appears to be to permit a user to purchase apples.  *Id.* at 12–13.  This application is illustrated in Figure 3b of the '967 patent, reproduced below:

10

CBM2016-00077
Patent 5,796,967



FIG. 3b

Figure 3b of the '967 patent depicts a page displayed on a monitor screen. Ex. 1001, 9:35–37. Partitions 250, 260, 280, and 290 each are "made up of a page element which defines the content of the partition." *Id.* at 9:44–46. Partition 250 "typically conveys information on the page's topic or sponsor," and partition 260 "gives the informational and transactional content of the page." *Id.* at 9:47–53. In the example application depicted in Figure 3b, partition 260 presents the user with the question "How many apples do you wish to order?" *Id.* at Fig. 3b. In addition, partition 280 is described as containing advertising, which "may be included in any partition of a page." *Id.* at 9:63–66.

We agree with Petitioner that the application depicted in Figure 3b is financial in nature, given that it gives the user the option to purchase apples and that it is described as presenting advertising to the user. But the

11

CBM2016-00077
Patent 5,796,967

presence of a financial application in the specification of the '967 patent does not limit the claims of the '967 patent to financial applications. As noted above, we must examine the language of the claims, not merely the specification, for any explicit or inherent limitation to finance-related activity. *Unwired Planet*, 2016 WL 6832978, at *5; *Blue Calypso*, 815 F.3d at 1340. Claim 1 contains limitations that recite "[a] method for presenting interactive applications" and "generating at least a first partition for presenting applications." Ex. 1001, 39:35–61. Petitioner argues that this claim is limited to financial contexts because the recited "applications" can be financial in nature. Pet. 12–14. As demonstrated by the application depicted in Figure 3b of the '967 patent and discussed above, we agree with Petitioner that the "applications" in question may be financial. But the question that *Blue Calypso* requires us to answer is not whether the applications may be financial, but rather whether they must be financial. Petitioner does not even argue, much less prove, that they must be.

In fact, the record demonstrates that the "applications" recited in claim 1 may be non-financial. First, the specification of the '967 patent describes several non-financial applications in addition to the financial application depicted in Figure 3b. These other applications include the display of information such as "movie reviews" and "the latest news." Ex. 1001, 7:29–31. Other types of information that can be displayed by applications include "hobbies and cultural interests," *id.* at 7:13–15, as well as "weather," *id.* at 22:16–17.

Second, under either party's proposed construction of "applications," the applications that claim 1 recites displaying are not limited to those that have financial purposes or operate in a financial context. As discussed

CBM2016-00077
Patent 5,796,967

above, Patent Owner proposes that "applications" be construed as
"information events composed of a sequence of one or more pages opened at
a screen." Prelim. Resp. 18. This construction places no limit on the
purpose or content of the applications, so it provides no reason to conclude
that "applications" are limited to financial contexts. Petitioner proposes a
construction that does place some limits on the purpose or content of
"applications": "information events composed of a sequence of one or more
pages opened at a screen to provide requested information and/or transaction
operations." Pet. 21. But, even if the phrase "transaction operations" in
Petitioner's proposed construction is interpreted as limited to financial
transactions, Petitioner's construction allows for applications that "provide
requested information" and do not perform "transaction operations." *Id.* As
we have noted, "provid[ing] requested information" can constitute providing
information about news, weather, movie reviews, and hobbies and cultural
interests, none of which has been shown by Petitioner to be either explicitly
or inherently financial. Given the failure of Petitioner to establish that any
claim of the '967 patent is explicitly or inherently limited to financial
contexts, we conclude that the claims of the '967 patent are claims of
general utility.

 Several earlier non-binding Board decisions have determined that a
patent is not CBM eligible when it has only claims of general utility with no
explicit or inherent finance-related terminology or limitations. *See, e.g.*,
*Qualtrics, LLC v. OpinionLab, Inc.*, Case CBM2015-00164, slip op. at 5–6
(PTAB Feb. 3, 2016) (Paper 8) ("*Qualtrics*") (determining that a claim that
"solicit[s] feedback from website visitors across a variety of sectors" is of
general utility and, therefore, is not directed to a covered business method

CBM2016-00077
Patent 5,796,967

patent eligible for review); *ServiceNow, Inc. v. Hewlett-Packard Co.*, Case CBM2015-00077, slip op. at 5–7 (PTAB Sept. 17, 2015) (Paper 12) (determining that a claim reciting "a system for managing a Web service" is of general utility and, therefore, is not directed to a covered business method patent eligible for review); *ServiceNow, Inc. v. BMC Software, Inc.*, Case CBM2015-00107, slip op. at 10–15 (PTAB Sept. 11, 2015) (Paper 12) (determining that a claim that performs "fault analysis" is of general utility and, therefore, is not directed to a covered business method patent eligible for review). Thus, claims of general utility are not converted into finance-related claims merely because the Specification of the challenged patent suggests that the scope of the claims is broad enough to encompass some finance-related activities. *See Qualtrics*, slip op. at 5–6. Here, other than the disclaimed claims discussed above, Petitioner has not alleged that any claim of the '967 patent is anything other than a claim of general utility, so the mere fact that the Specification contains some discussion of financial activities is of little moment.

Of course, if the Specification were to make clear that the claims should be interpreted as limited to finance-related contexts, the presence of general-utility claim language would not preclude a finding of CBM eligibility, but, as discussed above, Petitioner has not established that such is the case here. Accordingly, we are not persuaded that the language of the remaining claims of the '967 patent has any particular connection to finance-related activities, because these claims are of general utility with no explicit or inherent finance-related terminology or limitations.

CBM2016-00077
Patent 5,796,967

> ### 3. Conclusion
>
> In view of the foregoing, we conclude that Petitioner has not established that the '967 patent is a covered business method patent under AIA § 18(d)(1).

## CONCLUSION

Upon consideration of the Petition, the Preliminary Response, and the evidence presently before us, we determine that Petitioner has not demonstrated that the '967 patent is eligible for review under the transitional covered business method patent review program.

## ORDER

It is hereby

ORDERED that the Petition is denied, and no covered business method patent review is instituted.

CBM2016-00077
Patent 5,796,967

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

KAYAK SOFTWARE CORP., OPENTABLE, INC.,
PRICELINE.COM LLC, and THE PRICELINE GROUP INC.,
Petitioner,

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
Patent Owner.

_____

Case CBM2016-00077
Patent 5,796,967

_____

KIM, *Administrative Patent Judge*, CONCURRING

My esteemed colleagues have identified the appropriate facts and law
relevant to this issue, the general characterizations of which I concur.
Ultimately, my only disagreement is whether there is a bright line test that
the relevant claims must be explicitly or inherently limited to financial
contexts in order for them to considered "financial."  Generally, the Supreme
Court disfavors bright line tests in patent contexts.  *See In re Bilski*, 545 F.3d
943 (2008) (rejecting the "machine-or-transformation" test as the only test
for determining subject matter eligibility); *KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007) (rejecting the rigid application of the teaching-
suggestion-motivation test for obviousness).  Instead, I believe all
appropriate factors should be weighed in determining whether or not the
relevant claims are financial.  *Cf. eBay v. MercExchange, LLC*, 547 U.S. 338

CBM2016-00077
Patent 5,796,967

(2005) (traditional four factor test should be used to determine appropriateness of an injunction); *Graham v. John Deere Co.*, 383 U.S. 1 (1966) (listing factors to be weighed in determining obviousness).

To that end, here, certain factors, such as the informational nature of the disclaimed claims and certain embodiments in the '967 patent, weigh in favor of a determination that the relevant claims are financial.  Nevertheless, when all the factors set forth herein are considered in the aggregate, in particular that the specification discloses significantly more "non-financial" than "financial" examples related to the claim term "application," I concur that the Petitioner has not met its burden.

CBM2016-00077
Patent 5,796,967

PETITIONER:

Richard S. Zembek
Gilbert A. Greene
Daniel S. Leventhal
Daniel A. Prati
NORTON ROSE FULBRIGHT US LLP
richard.zembek@nortonrosefulbright.com
bert.greene@nortonrosefulbright.com
daniel.leventhal@nortonrosefulbright.com
dan.prati@nortonrosefulbright.com


PATENT OWNER:

Kevin K. McNish
Andrew G. Heinz
DESMARAIS LLP
kmcnish@desmaraisllp.com
aheinz@desmaraisllp.com