**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE PRICELINE GROUP INC., )<br>KAYAK SOFTWARE CORPORATION, )<br>OPENTABLE, INC., AND )<br>PRICELINE.COM LLC )<br>)<br>Defendants. ) | C.A. No. 15-137-LPS<br><br>**JURY TRIAL DEMANDED** |

**JOINT STATUS REPORT**

The parties in the above-referenced matter write to submit this joint status report consistent with the Court's direction at the January 20, 2017 Hearing regarding the parties' January 11, 2017 Joint Discovery Dispute Letter to the Court (D.I. 295), and the parties' subsequent briefing (D.I. 299, D.I. 302). Unfortunately, no agreement has been reached and the dispute outlined below remains before the Court.

**Defendants' Statement**

Defendants have made what they believe is a fair and reasonable proposal to IBM that is consistent with the representations made during the January 20, 2017 Hearing (*see* Exhibit A, 02/06/2017 email correspondence between C. Lambert and K. Oussayef). Specifically, Defendants' most recent proposal comprised the following:

1. IBM will not dispute the authenticity or admissibility (including on grounds of hearsay) of the McSweeney (MIT) declaration and the Rous (ACM) declaration (excerpted to remove reference to the Teitelman and Caplinger publications) in this action.

2. Defendants will not dispute the authenticity or admissibility (including on grounds of hearsay) of the Neerdaels (Fastly) and Tolwinski (Akamai) declarations in this action.

3. Defendants will produce their communications with McSweeney, MIT, Rous, and ACM concerning their declarations or this action.

4. IBM will not contest the authenticity of the Morris, Satyanarayanan, Smith (a.k.a., Star), Terry, Byte Magazine, Reference 7 (a.k.a., American Banker), Hypercard, Rose, Alber, Pfitzmann, and Salomon prior art references.

5. Defendants will not affirmatively use the declarations of Berard, Watters, Bennett, Goodman, Eiden, or Grenier; Defendants reserve the right to seek to use them as rebuttal evidence against IBM's challenges (if any) as to admissibility of the underlying prior art references (e.g., on hearsay grounds).  IBM will not object to Defendants' use of the declarations as rebuttal evidence based on the timeliness of the declarations' production in this action; IBM reserves the right to object to the declarations and underlying prior art references on any other grounds (excluding authenticity of prior art references as set forth above).

IBM rejected the proposal and its draft briefing indicates that it is only agreeable to item 2 (because IBM believes it is in their benefit), item 3 (because, again, it is in IBM's benefit), and item 4 (authenticity of the prior art referenced in Defendants' opening letter). With respect to item 1, IBM did not agree to this proposal in recent communications, but indicates in its statement that it will agree to item 1.

This leaves item 5 which IBM has rejected outright. IBM's apparent basis for rejecting and refusing to negotiate with Defendants on the entirety of item 5 is based on IBM's unfounded belief that item 5 exceeds what was discussed at the Hearing.  This is simply untrue.

Defendants expressly stated at the Hearing that the declarations would be for authentication purposes *and* as potential rebuttal evidence in the event that IBM challenges the admissibility of the prior art references under a hearsay objection:[1]

> THE COURT:  But, again, I think this goes to Mr. Oussayef's concern.  It isn't the case that we're all going to have an agreement that says at least these ten declarations may be utilized without objection to demonstrate that the references at issue are authentic and at least as to Pfitzmann, that the reference is not, there is an exception to the hearsay rule.  But then the defendant is going to, at trial, say, oh, you know what? Here is another issue that relates to validity and as part of my evidentiary package for this point, let me point to

---

[1] The parties and the Court expressed their understanding that the McSweeney declaration would be used to establish that the Salomon Thesis was publicly available pursuant to the MIT Library's cataloging and shelving procedures (Hearing Tr. 18:20-20:6), as well as for authentication purposes.

>   the blank declaration, the one that we got in by agreement only because we had this prior art prior agreement. You are not going to do that; right?
>
>   MR. DiGIOVANNI: We're not going do that. That I have to give one caveat here. And that is part of our assumption is the documents themselves are not hearsay, right? That nine of them are ancient document and nonhearsay. If they come in trying to somehow establish, I'm not sure how, that they're nonhearsay or that they are hearsay, *we would like to either use the declaration to rebut that or perhaps take a deposition, if necessary*. So that does expand it beyond the way you have characterized it and the way I even characterized it earlier, but I guess I wasn't expecting what I thought I heard is a potential challenge to the hearsay of the ancient documents that was a surprise.

Hearing Tr. 36:23-37:23. IBM's citations to other portions of the Hearing Transcript do not present an accurate representation of the intent of the third party declarations, and should be read in the context of the entire Hearing, including 36:23-37:23.[2] Consistent with the entirety of the representations made to the Court, Defendants have offered to not use the declarations for any affirmative purpose, but seek to reserve their rights to use the declarations only to rebut admissibility challenges from IBM. IBM's rejection of Defendants' proposed item 5 is simply unreasonable. IBM wants Defendants to affirmatively agree not to use the declarations at all, whether affirmatively or in rebuttal, and has offered nothing in return. IBM's proposal—that Defendants essentially rip up the declarations—is unacceptable to Defendants.

The tenor of the parties' negotiations has made it clear that IBM intends to challenge the admissibility of all the prior art references on yet unspecified grounds. Accordingly, and consistent with counsel's representation during the Hearing, Defendants seek to preserve their ability to rely on the declarations to rebut challenges to the admissibility of the underlying prior art.

---

[2] IBM's counsel has repeatedly ignored this clear and unambiguous representation made at the Hearing throughout the negotiation process, making it impossible for the parties to reach a compromise.

Because IBM has rejected Defendants' proposal, **Defendants respectfully request that the Court grant** Defendants **leave to depose four declarants: Ms. McSweeney (or another MIT representative), Mr. Rous (for ACM), Mr. Eiden (for Pearson Publishers), and Mr. Grenier (for the Institute for Electrical and Electronics Engineers)**.[3]

Good cause exists for this relief in light of the facts set forth in Defendants' January 17, 2016 Opening Letter Brief (D.I. 299) and because: (1) these witnesses were all identified as persons likely to have discoverable information in Defendants' initial disclosures served in March 9, 2016,[4] *during the fact discovery period* (2) the witnesses were also disclosed by and through the subpoenas (and corresponding notices sent to IBM) *during the fact discovery period*, (3) in lieu of taking their deposition at the time of subpoena, Defendants worked to secure a declaration that they reasonably believed would obviate the need for a deposition; and (4) since that time Defendants have been diligently attempting to resolve any and all issues that IBM expressed with regard to the declarations and their underlying prior art references.

---

[3] All of these individuals were subpoenaed prior to the close of fact discovery. Defendants diligently worked to quickly obtain the declarants' declarations, provided the declarations to IBM as soon as practicable thereafter, and have diligently worked until the present time to negotiate a fair compromise with IBM. Specifically, (1) Defendants issued a subpoena to MIT on October 12, 2016, and MIT's now-retired librarian Marilyn McSweeney's declaration was provided to IBM on November 29, 2016; (2) Defendants issued a subpoena to ACM on October 12, 2016, and Bernard Rous's declaration was provided to IBM on November 29, 2016; (3) Defendants issued a subpoena to Pearson Publishers on October 12, 2016, and Peter Eiden's declaration was provided to IBM on November 29, 2016; and (4) Defendants issued a subpoena to the Institute for Electrical and Electronics Engineers on October 12, 2016, and Gerard Grenier's declaration was provided to IBM on November 29, 2016.

[4] Priceline's March 9, 2016, disclosure stated: "In addition to the individuals and entities listed below, Defendants have produced prior art which identifies additional individuals who may have knowledge or relevant facts, including, for example, persons with knowledge as to the invalidity of the patent-in-suit under 35 U.S.C. §§ 102, 103 and/or 112. Defendants may seek information from such persons to support its claims. Defendants hereby incorporate by reference the prior art that has been or will be identified and/or produced by any party and any authors or individuals identified therein." Exhibit B at 2-3.

IBM will not be unfairly prejudiced because Defendants anticipate that each deposition on average would last approximately 1 hour, and all could likely be accomplished telephonically. The case schedule would be unaffected by these short telephonic depositions.

IBM's sole substantive objection as to the production of the declarations is that they were provided after the close of fact discovery, despite the fact that IBM produced literally thousands of documents—including the Fastly and Akamai declarations—after the close of fact discovery. Indeed, in assessing Defendants' conduct and any potential prejudice to IBM, it is useful to examine IBM's shifting positions with respect to discovery from Fastly and Akamai. IBM's Fastly and Akamai declarations were produced after the close of fact discovery and do far more than authenticate documents. They contribute to IBM's infringement theory by opining on the inner workings of the accused products. IBM initially attempted to barter admission of the declarations for Defendants' declarations and later unilaterally reserved for itself the right to take an out-of-time deposition of Fastly without agreement or leave of this Court. IBM abandoned this position only after Defendants brought the present dispute before the Court.

Defendants have not operated in bad faith by trying to resolve any potential authentication and admissibility issues of prior art references well before trial.  Quite the opposite, Defendants' efforts demonstrate a desire to streamline pretrial activities and resolve disputes early. Accordingly, Defendants respectfully request that the Court grant Defendants leave to depose the four declarants.

**IBM's Statement**

During last week's discovery hearing, counsel for Defendants repeatedly stated that they would only use the declarations at issue, except for the McSweeney declaration, for authentication purposes:

5

- "Ten of the 11 declarations are purely authentication." Exhibit 1, January 20, 2017 Hearing Transcript ("Hearing Tr.") at 8:14-17.
- "So for the first 10, if I can address those quickly. All we ask, all we're trying to use the declaration for is authentication purposes." *Id.* at 8:23-25.
- "[W]e are not going to rely on those declarations other than to establish the authenticity of those references." *Id.* at 14:9-10.

Defendants confirmed that this was true, even for the Goodman and Bennett declarations, which went beyond testimony directed to authentication:

- "I can tell you we are not offering Bennett or the Goodman declaration for anything beyond the authentication of one or more of the 11 [prior art references] that we're talking about today." *Id.* at 16:10-12.
- "[T]o the extent there is additional language where Mr. Bennett has described more than he needs to to authenticate, we are not relying on that." *Id.* at 17:8-10.

Only for the last declaration, the McSweeney declaration, did Defendants state that they would seek to introduce the declaration for other purposes. *Id.* at 18:20-19:17. Although later, counsel for Defendants clarified that "The one slight caveat is the ACM proceedings element. . . . So technically there is a hearsay component to that one, okay? So that one is authentication and hearsay." *Id.* at 27:16-21.

Counsel for IBM confirmed the Court's understanding that Defendants would only use the declarations for authentication purposes with the exception of (1) possibly using the Rous / ACM declaration to overcome hearsay objections to the Pfitzmann reference and (2) possibly using the McSweeney / MIT declaration to prove facts about the Solomon reference.

> MR. OUSSAYEF: I guess there is just a little bit of ambiguity in my mind as to whether defendants are really saying that they're not going to use any of the declarations or the declarant is perhaps a witness at trial to establish anything besides authenticity. If that is really what defendants are saying, then I think we can have a much narrower discussion about that issue.
> THE COURT: I mean I understood them to be saying that as to at least 10 of the 11 references.
> MR. OUSSAYEF: Okay.
> THE COURT: All but the Salomon reference. I understood the proffer to be that none of the declarations would be utilized for any other purpose other than authentication or, in the case of the Pfitzmann reference, to overcome a hearsay

6

objection, that is, to demonstrate something is a business record with the exception of the Salomon reference.  Mr. DiGiovanni, is that correct?
MR. DiGIOVANNI: That is correct, Your Honor.  *Id.* at 35:7-25, *see also id.* at 29:12-21.

Consistent with Defendants' representations, and the Court's order for the parties to attempt to reach agreement, IBM offered a compromise to Defendants whereby: (1) IBM would not dispute authenticity of the prior art references from Defendants' letter brief, (2) IBM would not challenge the Pfitzmann reference on hearsay grounds, and (3) IBM would not dispute the admissibility of the McSweeney / MIT declaration.  In exchange Defendants (1) would not rely on or seek to introduce the declarations cited in D.I. 299, except the McSweeney (MIT) declaration, and (2) Defendants would not dispute the authenticity or admissibility of the Neerdaels (Fastly) and Tolwinski (Akamai) declarations.  *See* Exhibit 2, Letter from K. Oussayef to F. DiGiovanni at 7.  IBM's proposed agreement offered Defendants everything they said they were looking for from their untimely-produced declarations: authentication of the prior art references, protection from a hearsay challenge to the Pfitzmann reference, and admissibility of the McSweeney reference.[5]  IBM's proposed agreement also followed the Court's guidance to the parties about how they might reach agreement.  *See* Exhibit 1, Hearing Tr. at 54:5-55:22.

Defendants rejected IBM's proposal in favor of a counter-proposal that would require IBM to concede not only the authentication but also the admissibility of all of Defendants' prior art references without giving IBM any assurances that Defendants would abide by their promise not to use the declarations for other purposes.  *Compare* Exhibit 2, Letter from K. Oussayef to F.

---

[5] Defendants have pointed out that after they repeatedly stated that they would only use the declarations for authentication purposes, they may have equivocated about that position. Exhibit 2, Letter from K. Oussayef to F. DiGiovanni at 2; Defendants' Statement.  Even if Defendants did change their mind during the hearing, the premise on which the parties were to meet and attempt to reach agreement was authentication for 9 of the 11 references, not other evidentiary issues. Exhibit 1, Hearing Tr. at 35:7-25; 54:5-55:22.

7

DiGiovanni at 5-6, *with, e.g.*, Exhibit 1, Hearing Tr. at 26:25-27:21. Defendants made other counteroffers but all of them would have required IBM to concede evidentiary issues that go beyond authenticity. *See* Exhibit 2, Letter from K. Oussayef to F. DiGiovanni at 2-4. Defendants' proposed agreement is inconsistent with how Defendants stated that they intended to use the declarations and with the Court's guidance. *See* Exhibit 1, Hearing Tr. at 54:5-55:22. Indeed, Defendants are trying to have it both ways: they are asking for IBM to stipulate to the authenticity of the prior art references and they are asking for IBM to do so without giving any assurances that Defendants will not try to rely on the untimely and prejudicial declarations in the future.

IBM has made every attempt to reach agreement with Defendants both during discovery (*see* D.I. 302 at 2) and in the context of the parties' current discovery dispute. *See generally* Exhibit A, 02/06/2017 email correspondence between C. Lambert and K. Oussayef. IBM has also proposed smaller-scale agreements to resolve the evidentiary concerns that Defendants expressed during the hearing about the Pfitzmann reference and McSweeney declaration. *Id.* at 1-2, 3, 4.

Given Defendants' decision to reject IBM's offers, the parties are in the same situation they were when Defendants filed their discovery motion. *See* D.I. 299. As discussed in great detail in IBM's opposition, the Court should deny Defendants' request for relief because (1) the declarations were untimely produced, (2) Defendants did not produce relevant communications, (3) the witnesses were not disclosed to IBM, and (4) Defendants did not serve subpoenas on the witnesses. D.I. 302 at 2; *see also* D.I. 302, Ex. A. Defendants' declarations should also be rejected because they include expert testimony about how the prior art allegedly functioned. D.I. 302 at 2-3. Likewise, the Court should deny Defendants' request for relief regarding their prior

8

art references because (1) it is procedurally improper to seek evidentiary judgments in a discovery dispute letter, (2) Defendants have not articulated the basis for their evidentiary arguments, and (3) Defendants have not presented any non-hearsay evidence to support their arguments. D.I. 302 at 3. Defendants did not address any of the above arguments at the January 20, 2017 hearing. *See generally* Exhibit 1, Hearing Tr. Instead, Defendants represented that they would only use the declarations to establish authenticity, which provides another independent reason to reject Defendants' attempts to introduce the declarations for any other purpose.

The Court should also deny Defendants' request for relief for leave to depose four of the declarants, Ms. McSweeney, Mr. Rous, Mr. Eiden, and Mr. Grenier[6] for substantially the same reasons as stated above and in IBM's January 19, 2016 Letter Brief. (D.I. 302). Namely, (1) the declarations were produced after the close of fact discovery, (2) the declarations were produced weeks after Defendants obtained them, (3) Defendants did not produce relevant communications with the declarants, and (4) the witnesses were **never** identified in Defendants' initial disclosures.[7] D.I. 302, Exhibit A. The fact that Defendants chose to produce declarations after the close of fact discovery "in lieu of taking [the declarants] deposition at the time of subpoena" does not give Defendants the right to now take the depositions, long after fact discover has closed. That would simply reward Defendants for their late production of declarations. Defendants' proposed relief should be denied.

---

[6] Furthermore, Defendants have not properly raised this issue in a meet and confer and it is therefore improper for them to request leave to depose the four declarants at this time.

[7] Defendants' reference to a "catch-all" statement in its initial disclosure about "persons with knowledge as to the invalidity of the patents-in-suit" for all "prior art that has been or will be identified" and "any authors or individuals therein," *supra* n.4, **never** named the declarants by name and is so generic in its passing reference to dozens and dozens of prior art references and associated documents that it amounts no meaningful disclosure whatsoever.

9

| | Respectfully submitted, |
|---|---|
| POTTER ANDERSON & CORROON LLP | DRINKER BIDDLE & REATH LLP |
| By: */s/ Bindu A. Palapura*<br>David E. Moore (#3983)<br>Bindu A. Palapura (#5370)<br>Stephanie E. O'Byrne (#4446)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>Tel: (302) 984-6000<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com<br>sobyrne@potteranderson.com | By: */s/ Francis DiGiovanni*<br>Francis DiGiovanni (#3189)<br>Curt M. Lambert (#4882)<br>Thatcher A. Rahmeier (#5222)<br>222 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Tel: (302) 467-4200<br>francis.digiovanni@dbr.com<br>curt.lambert@dbr.com<br>thatcher.rahmeier@dbr.com |
| OF COUNSEL:<br><br>John M. Desmarais<br>Karim Z. Oussayef<br>Laurie N. Stempler<br>Robert C. Harrits<br>Elizabeth Kimmel<br>Michael James Xavier Matulewicz-Crowley<br>Jon T. Hohenthaner<br>Kevin K. McNish<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 351-3400<br><br>*Attorneys for Plaintiff International Business Machines Corporation*<br><br>Dated: February 8, 2017 | OF COUNSEL:<br><br>Marwan Elrakabawy<br>Gilbert A. Greene<br>W. Andrew Liddell<br>NORTON ROSE FULBRIGHT US LLP<br>98 San Jacinto Boulevard, Suite 1100<br>Austin, TX 78701<br>Tel: (512) 474-5201<br><br>Dan D. Davison<br>Brandy S. Nolan<br>NORTON ROSE FULBRIGHT US LLP<br>2200 Ross Avenue, Suite 3600<br>Dallas, TX 75201<br>Tel: (214) 855-8000<br><br>Richard S. Zembek<br>Daniel S. Leventhal<br>Daniel A. Prati<br>Eric B. Hall<br>Mark F. Eberhard<br>NORTON ROSE FULBRIGHT US LLP<br>1301 McKinney, Suite 5100<br>Houston, TX 77010<br>Tel: (713) 651-5151<br><br>*Attorneys for Defendants The Priceline Group Inc., Kayak Software Corporation, Opentable, Inc., Priceline.com LLC* |