# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 15-137-LPS |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| THE PRICELINE GROUP INC., KAYAK SOFTWARE CORPORATION, OPENTABLE, INC., AND PRICELINE.COM LLC | ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF IBM'S OPENING BRIEF IN SUPPORT OF IBM'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' AFFIRMATIVE DEFENSES

OF COUNSEL:

John M. Desmarais
Karim Z. Oussayef
Laurie N. Stempler
Robert C. Harrits
Elizabeth Kimmel
Michael James Xavier Matulewicz-Crowley
Jon T. Hohenthaner
Kevin K. McNish
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated: February 13, 2017
1245411 / 42141

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff*
*International Business Machines Corporation*

# TABLE OF CONTENTS

I. NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

II. SUMMARY OF IBM'S ARGUMENTS .................................................................. 1

III. STATEMENT OF UNDISPUTED FACTS .............................................................. 2

IV. ARGUMENT .............................................................................................................. 3

   A. Summary Judgment Standard ....................................................................... 3

   B. Summary Judgment Of Defendants' Affirmative Defenses Should Be Granted ........ 3

      1. Marking .................................................................................................. 3

      2. Laches ..................................................................................................... 4

      3. Full Compensation, Exhaustion/First Sale, License/Implied License, Covenant Not To Sue/Release ........................................................................ 7

      4. No Costs ................................................................................................. 13

      5. Inequitable Conduct ............................................................................... 13

V. CONCLUSION .......................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R. L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) (en banc) .................................................................... 2, 4, 5, 6

*Alicea v. City of New York*,
  534 N.Y.S.2d 983 (N.Y. App. Div. 1988) ................................................................................ 2

*Anton/Bauer, Inc. v. PAG, Ltd.*,
  329 F.3d 1343 (Fed. Cir. 2003) ............................................................................................... 10

*Carborundum Co. v. Molten Metal Equip. Innovations*,
  72 F.3d 872 (Fed. Cir. 1995) ................................................................................................ 2, 10

*Caronia v. Philip Morris USA, Inc.*,
  No. 06-224, 2014 WL 4639184 (E.D.N.Y. Sept. 16, 2014) ..................................................... 2

*Cyrix Corp. v. Intel Corp.*,
  77 F.3d 1381 (Fed. Cir. 1996) ................................................................................................. 10

*Ecolab, Inc. v. Envirochem, Inc.*,
  264 F.3d 1358 (Fed. Cir. 2001) ......................................................................................... 4, 6, 7

*Empire Props. Corp. v. Manufacturers Trust Co.*,
  288 N.Y. 242 (1942) ................................................................................................................ 11

*Eulo v. Deval Aerodynamics, Inc.*,
  430 F.2d 325 (3d Cir. 1970) ...................................................................................................... 2

*ExcelStor Tech., Inc. v. Papst Licensing GmbH & Co. KG*,
  541 F.3d 1373 (Fed. Cir. 2008) ................................................................................................. 2

*Halsted v. Globe Indemnity Co.*,
  258 N.Y. 176 (1932) ................................................................................................................ 11

*Helferich Patent Licensing, LLC v. New York Times Co.*,
  778 F.3d 1293 (Fed. Cir. 2015) ................................................................................................. 8

*Intel Corp. v. Broadcom Corp.*,
  173 F. Supp. 2d 201 (D. Del. 2001) .................................................................................... 2, 10

*Intellectual Ventures I LLC v. Symantec Corp.*,
  C.A. No. 10-1067, 2015 WL 294240 (D. Del. Jan. 21, 2015) .............................................. 3, 4

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  No. 04-1371, 2005 WL 5949576 (D. Del. Aug. 9, 2005) ......................................................... 4

*Scheibe v. Fort James Corp.*,
  276 F. Supp. 2d 246 (D. Del. 2003) .......................................................................................... 2

*Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*,
   829 F.2d 1075 (Fed. Cir. 1987) .......................................................................................... 10

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ................................................................................. 2, 13, 14

*Union Tool Co. v. Wilson*,
   259 U.S. 107 (1922) ............................................................................................................ 8

*Wang Labs., Inc. v. Mitsubishi Elecs. Am.*,
   103 F.2d 1571 (Fed. Cir. 1997) .......................................................................................... 10

**Statutes**

35 U.S.C. § 287 ........................................................................................................................ 3, 4

## I. NATURE AND STAGE OF THE PROCEEDINGS

IBM incorporates the "Nature and Stage of the Proceedings" section of its Opening Brief in Support of IBM's Motion for Partial Summary Judgment of No Anticipation of the Asserted Claims of U.S. Patent No. 5,796,967, filed concurrently herewith.

## II. SUMMARY OF IBM'S ARGUMENTS

IBM seeks summary judgment on Defendants' Fourth, Sixth, Eighth, Ninth, Tenth, Eleventh, Thirteenth, and Fourteenth Affirmative Defenses for the following reasons:

1. Priceline.com pled "marking," "laches," "single recovery," "license," "covenant not to sue," "release," "no costs," and "inequitable conduct" as its fourth, sixth, eighth, ninth, tenth, eleventh, thirteenth, and fourteenth affirmative defenses.  D.I. 106 ¶¶ 55, 57-62, 64-67.

2. The Priceline Group pled "marking," "laches," "single recovery," "license," "covenant not to sue," "release," "no costs," and "inequitable conduct" as its fourth, sixth, eighth, ninth, tenth, eleventh, thirteenth, and fourteenth affirmative defenses.  D.I. 105 ¶¶ 55, 57-62, 64-67.

3. Kayak pled "marking," "laches," "single recovery," "license," "covenant not to sue," "release," "no costs," and "inequitable conduct" as its fourth, sixth, eighth, ninth, tenth, eleventh, thirteenth, and fourteenth affirmative defenses.  D.I. 103 ¶¶ 55, 57-62, 64-67.[1]

4. OpenTable pled "marking," "laches," "single recovery," "license," "covenant not to sue," "release," "no costs," and "inequitable conduct" as its fourth, sixth, eighth, ninth, tenth, eleventh, thirteenth, and fourteenth affirmative defenses.  D.I. 104 ¶¶ 55, 57-62, 64-67.

---

[1] For ease of reference, subsequent citations are to Kayak's First Amended Answer to Complaint for Patent Infringement and First Amended Counterclaims (D.I. 103), which is representative of all Defendants' amended answers and counterclaims.

5. Defendants bear the burden of proving their affirmative defenses. *See, e.g.*, *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 206 (D. Del. 2001); *A.C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc) (laches); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (inequitable conduct); *Caronia v. Philip Morris USA, Inc.*, No. 06-224, 2014 WL 4639184, at *2 (E.D.N.Y. Sept. 16, 2014) (no costs); *Carborundum Co. v. Molten Metal Equip. Innovations*, 72 F.3d 872, 878 (Fed. Cir. 1995) (implied license); *ExcelStor Tech., Inc. v. Papst Licensing GmbH & Co. KG*, 541 F.3d 1373, 1376 (Fed. Cir. 2008) (exhaustion/first sale); *Eulo v. Deval Aerodynamics, Inc.*, 430 F.2d 325, 328 (3d Cir. 1970) (release); *see also Alicea v. City of New York*, 534 N.Y.S.2d 983, 985 (N.Y. App. Div. 1988) ("[A] party claiming to be a third party beneficiary has the burden of demonstrating an enforceable right.").

6. Defendants have not established the essential elements of any of the above-named defenses, warranting entry of summary judgment in IBM's favor. *Scheibe v. Fort James Corp.*, 276 F. Supp. 2d 246, 253 (D. Del. 2003).

7. Defendants have also not identified sufficient proof to support the above-listed defenses, despite having had over a year's worth of fact and expert discovery and despite having supplemented their discovery responses numerous times. Therefore, the Court should grant summary judgment on those defenses.

### III. STATEMENT OF UNDISPUTED FACTS

The following facts are believed to be undisputed and/or indisputable by Defendants and are undisputed by IBM for the purposes of this motion.

1. Defendants asserted affirmative defenses of "marking," "laches," "single recovery," "license," "covenant not to sue," "release," "no costs," and "inequitable conduct." D.I.

103 ¶¶ 55, 57-62, 64-67; D.I. 104 ¶¶ 55, 57-62, 64-67; D.I. 105 ¶¶ 55, 57-62, 64-67; D.I. 106 ¶¶ 55, 57-62, 64-67.

2.  IBM sought the bases for Defendants' affirmative defenses through interrogatories and deposition topics. Defendants' sole bases for their affirmative defenses are set forth in their interrogatory responses.[2]

## IV. ARGUMENT

### A. Summary Judgment Standard

IBM incorporates the "Summary Judgment Standard" section of its Opening Brief in Support of IBM's Motion for Partial Summary Judgment of No Anticipation of the Asserted Claims of U.S. Patent No. 5,796,967, filed concurrently herewith.

### B. Summary Judgment Of Defendants' Affirmative Defenses Should Be Granted

Defendants have not identified sufficient proof to support affirmative defenses on which they bear the burden of proof. For affirmative defenses that place a burden on IBM, the factual record in this case demonstrates that summary judgment should be granted.

#### 1. Marking

A patentee may notify the public of a patented article "by fixing thereon the word 'patent' or the abbreviation 'pat.,' together with the number of the patent." 35 U.S.C. § 287. "In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." *Id.* Method claims do not require the patentee to mark. *Intellectual Ventures I LLC v. Symantec Corp.*, C.A. No. 10-1067, 2015 WL 294240, at *1 (D. Del. Jan. 21, 2015).

---

[2] Exs. A-F; *see also* Exs. G-I (Topic 24).

IBM bears the burden of proving that it satisfied the marking requirement for the patents-in-suit. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371, 2005 WL 5949576, at *2 (D. Del. Aug. 9, 2005). There is no factual dispute that IBM has met its obligation. IBM has asserted only the method claims of the '967, '849, and '346 patents and thus need not mark products with those patent numbers. *Intellectual Ventures*, 2015 WL 294240, at *1. For the '601 patent, for which IBM does assert apparatus claims, Defendants have come forward with no evidence that IBM makes products that it is or was required to mark and have done no analysis of any licensed third party products to show that any third party should have marked.[3] Therefore, the Defendants cannot make out a marking defense for this patent either. Summary judgment that IBM has met its marking obligation with respect to the '967, '849, and '346 patents pursuant to 35 U.S.C. § 287 is thus appropriate.

**2. Laches**

Laches requires that the patentee "unreasonably and inexcusably delayed in filing suit and that the delay resulted in material prejudice to the defendant." *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371 (Fed. Cir. 2001). "A presumption of laches arises if the patentee delays bringing suit for more than six years after actual or constructive knowledge of the defendant's infringing activity." *Id.*

Defendants must show that any "delay" was unreasonable, beginning when IBM knew or should have known of ***infringement*** (not of the accused products). *See Aukerman*, 960 F.3d at 1032. Defendants cite IBM's litigation against Amazon, "e-commerce websites accessible by

---

[3] Rather, deposition testimony demonstrates that IBM is not aware of any products of IBM or its licensees that practice the '601 patent. Ex. U at 31-32; Ex. V at 97, 99-101, 139-140.

4

commercial browsers," and inventor testimony and email correspondence that Defendants allege reflect knowledge of Defendants' infringement as support for the alleged delay.[4]

IBM's assertion of two of the patents-in-suit against Amazon, a third party online retailer that Defendants' own expert has acknowledged is a very different company from Defendants, has no bearing on IBM's knowledge of Defendants' infringement.[5]  Moreover, none of the inventors have testified that they were aware of infringement of any of the patents-in-suit more than six years before the filing of this case.  In addition, the emails Defendants cite do not identify any of the patents-in-suit in conjunction with any of the Defendants.  Some of the emails are entirely unrelated to IBM's assertion of its patents.[6]

IBM's investigation into potential infringement is a rigorous process, during which IBM may discover additional infringement.[7]  Moreover, ongoing negotiations for a potential license with the accused infringer rebut evidence of delay.  *See Aukerman*, 960 F.3d at 1033.  Defendants ignore that discussions between IBM and Priceline spanned more than three years, in which Priceline repeatedly delayed responding to IBM while simultaneously refusing to provide a counteroffer or an explanation for contending that it did not infringe IBM's patents.[8]  Priceline's acquisitions of OpenTable and Kayak further interrupted the discussions, causing IBM to have to postpone its discussions while Priceline completed its mergers.[9]

---

[4] Ex. B at 6-8.
[5] Ex. J ¶ 197 (noting that Amazon "is a different type of website").
[6] *See, e.g.*, Ex. K (discussing new lawsuit from Parallel Networks).
[7] *See, e.g.*, Ex. L at 61-65, 72-73, 162-163; Ex. M at 97-99.  Even Defendants' damages expert acknowledged that IBM undertakes a rigorous process before asserting its patents.  Ex. J ¶¶ 313-316.
[8] *See, e.g.*, Ex. L at 139, 152-153, 201-202, 235.
[9] *See, e.g.*, Ex. L at 133, 297. A presumption of laches does not apply because Defendants have not identified any evidence that IBM had actual or constructive knowledge of the infringement more than 6 years before filing the lawsuit. Defendants cite IBM's internal email correspondence

Even if Defendants were able to establish unreasonable delay (which they were not), they also have to show economic or evidentiary prejudice. Defendants have shown neither. Economic prejudice requires that the accused infringer show "a change in the economic position of [the accused infringer] during the period of delay that would not have occurred had [the patentee] sued earlier." *Echolab*, 264 F.3d at 1371. Defendants have not identified any change in their economic position with any meaningful specificity. For example, Defendants have not quantified the expenses that could have been avoided had IBM brought suit earlier.[10]

Evidentiary prejudice requires Defendants to show that because of the unreasonable delay, Defendants cannot "present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Aukerman*, 960 F.2d at 1033. Defendants' sole allegation of evidentiary prejudice is that Paul Scifo, the prosecuting attorney for the '967 and '849 patents, has suffered a health condition that allegedly made him unavailable. Defendants admit that no one knows whether Mr. Scifo has had any health mishaps.[11] Moreover, Defendants inexplicably waited over a year before notifying IBM of their intention to depose Mr. Scifo.[12] After waiting to depose Mr. Scifo, Defendants cannot now claim that his unavailability is related to the timing of this lawsuit. Other than Mr. Scifo, Defendants have not identified any witness whom they claim would have provided evidence that Defendants have not been able to otherwise obtain, nor have Defendants identified any specific documents that Defendants have sought but been unable to

---

(Ex. B at 10-11), but none of those emails identify the patents-in-suit or indicate that IBM was aware of Defendants' infringement of the patents-in-suit.

[10] Ex. B; Ex. D at 5; Ex. E at 5; Ex. F at 5.

[11] Ex. B at 9 ("Neither IBM nor Defendants have been able to actually make contact with Mr. Scifo, confirm his illness or to confirm is unavailability.").

[12] Ex. N.

obtain.[13] Summary judgment is thus appropriate. *Ecolab*, 264 F.3d at 1372 (affirming summary judgment disposing of accused infringer's laches defense).

### 3. Full Compensation, Exhaustion/First Sale, License/Implied License, Covenant Not To Sue/Release

Although IBM served interrogatories so that IBM could understand the bases for Defendants' affirmative defenses, Defendants attempted to shift the burden onto IBM to decipher Defendants' theories: "IBM may further determine the answer to this interrogatory by examining these documents, and the burden of deriving or ascertaining the answer will be substantially the same for either party."[14] But Defendants bear the burden to prove these defenses, and for this reason alone, summary judgment should be granted.

Moreover, Defendants have not set forth sufficient evidence to support any of the doctrines underlying their eighth, ninth, tenth, and eleventh affirmative defenses.[15] Rather than setting forth proof for each defense, Defendants mention each defense haphazardly in their interrogatory responses.[16] The defenses are addressed separately below.

Defendants identify four agreements between IBM and third parties for support: IBM's patent cross license with Facebook ("Facebook Agreement"),[17] IBM's patent cross license with Google ("Google Agreement"),[18] IBM's patent cross license with Apple ("Apple Agreement),[19] and IBM's January 1, 1992 agreement with Microsoft ("Microsoft Agreement")[20] (collectively, the "Third Party Agreements"). In each Third Party Agreement, a "Licensed Product" is one that,

---

[13] Ex. B at 9-10.
[14] *See, e.g.*, Ex. A at 6, 19.
[15] D.I. 103 ¶¶ 59-62.
[16] *See generally* Ex. A; *see also* Exs. D-F.
[17] Ex. O.
[18] Ex. P.
[19] Ex. Q.
[20] Ex. R.

7

but for the existence of the license, would infringe IBM's patents.[21] Defendants have not undertaken any analysis to demonstrate that any of Google's, Facebook's, Microsoft's, or Apple's products, when implemented or used in or with the accused instrumentalities, are "Licensed Products" pursuant to the Third Party Agreements. None of Defendants' experts have opined on whether any such products are "Licensed Products" under the Third Party Agreements. And, for the reasons set forth in further detail below, Defendants have not established that IBM has been fully compensated, exhausted its patent rights, granted a license or implied license to Defendants, covenanted not to sue Defendants, or released Defendants from infringement liability under any of the Third Party Agreements.

        a. **Full Compensation**

"A patentee, in demanding and receiving full compensation for the wrongful use of his invention in devices made and sold by a manufacturer adopts the sales as though made by himself, and therefore necessarily licenses the use of the devise, and frees them from the monopoly of the patent." *Union Tool Co. v. Wilson*, 259 U.S. 107, 113 (1922). Defendants contend the accused instrumentalities "are subject to the existing licenses, releases, and covenants" in the Facebook and Google Agreements. Defendants conclude, "Thus, IBM's claims are barred, and IBM has been fully compensated for alleged infringement by the accused products and services."[22] Defendants have not demonstrated that IBM received compensation for infringement of the patents-in-suit from Facebook or Google. And, as explained below, the accused instrumentalities are not subject to the Facebook Agreement or Google Agreement.

---

[21] *See, e.g.*, Ex. P at IBM-PCLN00003336; Ex. O at IBM-PCLN00003776; Ex. Q at IBM-PCLN00089486; Ex. R at IBM-PCLN00089405, IBM-PCLN00089406.
[22] Ex. A at 5, 18.

8

### b. Exhaustion / First Sale

The doctrine of patent exhaustion "lifts legal restrictions on an authorized acquirer." *Helferich Patent Licensing, LLC v. New York Times Co.*, 778 F.3d 1293, 1302 (Fed. Cir. 2015). Once the patentee authorizes the sale of a patented item, the acquirer has the right to use it or sell it freely. *Id.* at 1301. Exhaustion only applies if the patentee's infringement allegations include infringement by "authorized acquirers." If the patentee does not assert infringement of the claims by the authorized acquirer, or if infringement does not require that the authorized acquirer practice the claims, the patentee's rights have not been exhausted. *Id.* at 1302.

Defendants identify products such as Facebook Login, Facebook APIs, Google Sign-In, Google AdSense, Google Double-Click, Google Chrome, and Google APIs as "Licensed Products."[23] Defendants also contend that IBM authorized Microsoft, Apple, and Google to distribute their respective browsers.[24] But Defendants never establish—through their interrogatory responses or their experts—that any of the alleged "Licensed Products" or the browsers infringe the patents-in-suit and therefore have not met their burden to show that any of those products are "patented items" under the patents-in-suit that could trigger exhaustion or constitute a first sale. Instead, without any analysis or explanation, Defendants state that the Facebook and Google Licensed Products "are only useful in creating the accused combinations or practicing the accused method" and that "the browsers control and carry out the purportedly inventive functions described in the asserted method claims of the '849, '967, and '601."[25] Defendants have not explained how the Licensed Products "creat[e] the accused combinations or practice[e] the accused method" or how the browsers "carry out" the functions in the asserted claims. Defendants also have not

---

[23] Ex. A at 5.
[24] *See* Ex. A at 18; *see also* Exs. D-F.
[25] Ex. A at 6, 18.

9

undertaken any analysis to show that Microsoft, Apple, and Google constitute "authorized acquirers" of a patented item.[26] Defendants thus have not met their burden to establish an exhaustion defense.

### c. License / Implied License

A license may be express or implied. *Carborundum*, 72 F.3d at 878. A license is "nothing more than a promise by the licensor not to sue the licensee." *Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987). An implied license requires that (1) the patentee sell an item with no non-infringing uses; and (2) the grant of a license is inferred from the circumstances. *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003). "[I]mplied license looks for an affirmative grant of consent or permission to make, use, or sell, i.e., a license." *Wang Labs., Inc. v. Mitsubishi Elecs. Am.*, 103 F.2d 1571, 1581 (Fed. Cir. 1997).

No license agreement exists between IBM and any Defendant, and Defendants do not contend otherwise. Defendants have also not pointed to any agreement or statement from IBM promising Defendants that IBM would not sue them for infringement of the patents-in-suit. Nor have Defendants identified any "affirmative grant" from IBM to make, use, or sell products or instrumentalities that practice the claimed inventions of the patents-in-suit. To the extent Defendants contend that they are licensed to the patents-in-suit via the Third Party Agreements, Defendants have not set forth sufficient detail in their interrogatory responses—or via their experts—to establish that the Third Party Agreements extend to Defendants or the accused instrumentalities.

---

[26] *See generally* Ex. A; *see also* Exs. D-F.

10

### d. Covenant Not To Sue And Release Defenses

Interpretation of a patent license is a question of law. *See, e.g.*, *Cyrix Corp. v. Intel Corp.*, 77 F.3d 1381, 1384 (Fed. Cir. 1996). License agreements are governed by state law. *Intel*, 173 F. Supp. 2d at 210. The Third Party Agreements are governed by New York law.[27] Under New York law, "[a] written contract will be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." *Empire Props. Corp. v. Manufacturers Trust Co.*, 288 N.Y. 242, 248 (1942) (quotations and citation omitted). "The intention of the parties must be sought for the language used. To understand the language, we may put ourselves in their place and discern if possible the objects they had in view and the motives which dictated their choice of words." *Halsted v. Globe Indemnity Co.*, 258 N.Y. 176, 180 (1932).

### i. Release

Defendants have not identified any release language from any agreements that Defendants contend applies to Defendants' acts of accused infringement. Defendants' sole support for their affirmative defense of release is that "[t]he accused products and services are subject to the existing licenses, releases, and covenants set forth in" the Facebook Agreement and the Google Agreement and that "IBM's claims of infringement of the '849, '601, and '967 Patents through the use of Internet Explorer are licensed and released under the terms of the January 1, 1992 Microsoft Agreement." Defendants have not identified provisions they contend release the accused instrumentalities or explained why the accused instrumentalities are encompassed in releases of

---

[27] Ex. P at IBM-PCLN00003348; Ex. O at IBM-PCLN00003785; Ex. Q at IBM-PCLN00089500; Ex. R at IBM-PCLN00089425.

11

third parties. They therefore have no support for the notion that any release granted in the Third Party Agreements extends to Defendants or the accused instrumentalities.

### ii. Covenant Not To Sue

Defendants identify covenant not to sue provisions from the Apple Agreement and the Google Agreement.[28] Defendants contend, "IBM's claims of infringement of the '346, '849 and '601 Patent[s] through the use of mobile apps on [sic] downloaded from the Apple iTunes and run on iPhones and iPads are subject to the covenant not to sue of Section 2.3.2."[29] Defendants further contend that IBM's claims of infringement of all of the patents-in-suit "through the use of Apple products such as Safari, iPhones, and computers and Apps downloaded from the Apple iTunes store are subject to the covenant of Section 2.5."[30] But those covenants apply to Licensed Products, and there is no evidence that the products licensed under the Apple Agreement would infringe the patents-in-suit. Defendants have also not established how the combination of any Licensed Product in the Apple Agreement with the accused instrumentalities would be encompassed by either covenant. Defendants' experts are silent on this issue as well.

The Google Agreement's covenant not to sue is limited to products that would infringe but for the license granted in the agreement.[31] Defendants' interrogatory responses and expert reports are silent on whether and how the Google licensed products would have infringed any of the Patents-in-Suit. Defendants have thus identified no basis for asserting that Google's covenant not to sue includes the accused instrumentalities.

---

[28] Ex. A at 17-18.
[29] Ex. A at 17.
[30] Ex. A at 17.
[31] *See, e.g.*, Ex. P at IBM-PCLN00003336, -3338.

### 4. No Costs

Defendants have alleged that "IBM failed to disclaim the claims of the Patents-In-Suit that are invalid before commencement of suit and therefore may recover no costs." Defendants have not identified any patent claims that IBM allegedly failed to disclaim before filing suit. Defendants have not even identified a reason for why IBM would have thought to disclaim any claims of the patents-in-suit, and the facts suggest otherwise. For example, the PTAB has denied institution on 6 of the 8 IPR and CBM petitions Defendants filed, challenging claims of the patents-in-suit.[32] Moreover, none of Defendants' experts have opined on whether IBM should have disclaimed any claim of any asserted patent before IBM brought suit. Summary judgment in favor of IBM is warranted.

### 5. Inequitable Conduct

Defendants' affirmative defense of inequitable conduct is limited to the '967 and '849 patents.[33] Inequitable conduct requires that (1) the applicant knew of a material reference and (2) withheld that reference with specific intent to deceive the PTO. *Therasense*, 649 F.3d at 1290.

Although Defendants made a series of unsupported allegations in their amended answers,[34] their sole evidentiary basis for their inequitable conduct theory exists in a single interrogatory response from The Priceline Group.[35] That response is entirely devoid of any mention of the intent prong. Defendants bear the burden of establishing specific intent to deceive the Patent Office.

---

[32] D.I. 285; Ex. S at 2; Ex. T at 2.
[33] D.I. 103 ¶¶ 65-66.
[34] Additionally, for the reasons set forth in IBM's Motion to Dismiss (D.I. 121, D.I. 149), Defendants have not set forth sufficient evidence to establish that the applicants knew of material information. Defendants' interrogatory response does not identify with any specificity (beyond broadly incorporating by reference) documents or testimony that demonstrate materiality. Moreover, none of Defendants' experts offered an opinion on the materiality of any references or information.
[35] Ex. C.

*Therasense*, 649 F.3d at 1290. They have not identified any evidence from which the Court may infer intent to deceive the Patent Office on the part of any individual.[36] Summary judgment of no inequitable conduct is thus appropriate.

## V. CONCLUSION

For the foregoing reasons, IBM respectfully requests that the Court issue an order granting summary judgment on Defendants' Fourth, Sixth, Eighth, Ninth, Tenth, Eleventh, Thirteenth, and Fourteenth Affirmative Defenses.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

John M. Desmarais
Karim Z. Oussayef
Laurie N. Stempler
Robert C. Harrits
Elizabeth Kimmel
Michael James Xavier Matulewicz-Crowley
Jon T. Hohenthaner
Kevin K. McNish
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated: February 13, 2017
1245411 / 42141

By: */s/ Bindu A. Palapura*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    sobyrne@potteranderson.com

*Attorneys for Plaintiff*
*International Business Machines Corporation*

---

[36] Ex. C; *see also* D.I. 121, D.I. 149.