# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE PRICELINE GROUP INC., )<br>KAYAK SOFTWARE CORPORATION, )<br>OPENTABLE, INC., AND )<br>PRICELINE.COM LLC, )<br>)<br>Defendants. ) | C.A. No. 15-137-LPS<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INDEFINITENESS OF THE '967 AND '849 PATENTS

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

Dan D. Davison
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201
(214) 855-8000
dan.davison@nortonrosefulbright.com

Dated: February 13, 2017

Richard S. Zembek
Daniel S. Leventhal
Daniel A. Prati
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010
(713) 651-5151
richard.zembek@nortonrosefulbright.com
daniel.leventhal@nortonrosefulbright.com
dan.prati@nortonrosefulbright.com

Gilbert A. Greene
Marwan Elrakabawy
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
(512) 474-5201
bert.greene@nortonrosefulbright.com
marwan.elrakabawy@nortonrosefulbright.com

*Attorneys for Defendants The Priceline Group Inc., Priceline.com LLC, KAYAK Software Corporation, and OpenTable, Inc.*

## TABLE OF CONTENTS

                                                                                                              **Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

II.    SUMMARY OF THE ARGUMENT ............................................................................. 1

III.    STATEMENT OF FACTS ............................................................................................. 1

        A.    The Asserted Claims Require Delineating Between Applications ........................ 1

        B.    IBM Advocates Delineating Applications Based on "Subject Matter" (i.e., "End Game") and "Sequence of Pages" ................................................................ 2

IV.    ARGUMENT .................................................................................................................. 4

        A.    "Applications" Is Indefinite Absent an "Objective" Basis to Delineate Between Applications .............................................................................................. 4

        B.    There is No Objective Standard for Delineating Between Applications for the Accused Websites and Mobile Applications ................................................... 4

V.    CONCLUSION ............................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*,
    803 F.3d 620 (Fed. Cir. 2015)......................................................................................4

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014)..................................................................................4, 5

*Nautilus, Inc. v. Biosig Instr., Inc.*,
    134 S.Ct. 2120 (2014)................................................................................................4, 7

## TABLE OF EXHIBITS

All emphasis in quotations is added unless otherwise indicated.

| NO. | EXHIBIT [full document or excerpt is included as appropriate] |
|---|---|
| 1 | Deposition Transcript of Douglas Schmidt |
| 2 | 12/6/2016 Corrected Expert Report of Benjamin Goldberg, |
| 3 | October 21, 1994, Disclosure Statement in '967 Patent File History |
| 4 | U.S. Patent No. 5,796,967 |
| 5 | U.S. Patent No. 7,072,849 |
| 6 | Markman Declaration of Douglas Schmidt |
| 7 | August 29, 2016, *Markman* Hearing Transcript |
| 8 | 12/6/2016 Opening Infringement Report of Douglas Schmidt |
| 8A | 12/6/2016 Opening Infringement Report of Douglas Schmidt, Exhibit VI A |
| 8B | 12/6/2016 Opening Infringement Report of Douglas Schmidt, Exhibit VI C |
| 9 | 1/17/2017 Rebuttal Validity Report of Douglas Schmidt – Responding to the Opening Report of Dr. Goldberg |
| 10 | Deposition Transcript of Benjamin Goldberg |
| 11 | 1/17/2017 Rebuttal Expert Report of David Eastburn Regarding Non-infringement |
| 12 | 1/17/2017 Rebuttal Expert Report of Douglas Schmidt Concerning Validity – Responding to the Opening Report of Mr. Eastburn |
| 13 | Ex. A1 to IBM's Infringement Contentions in IBM v. Amazon.com, Inc., 9:06-cv-242 (E.D. Tex). |
| 14 | Ex. F1 to to IBM's Infringement Contentions in IBM v. Amazon.com, Inc., 9:06-cv-242 (E.D. Tex). |

I.     **NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiff alleges that Defendants' desktop websites infringe the '967 Patent and Defendants' desktop and mobile websites, as well as mobile applications, infringe the '849 Patent (collectively, "Filepp Patents"). Defendants submit this brief in support of their motion for summary judgment of invalidity based on indefiniteness of the Filepp Patents.

II.    **SUMMARY OF THE ARGUMENT**

At claim construction, the Court deferred ruling on the indefiniteness of the term "application" (used in the '967 and '849 Patents), noting that it "may benefit from expert testimony developed in connection with the parties' infringement/non-infringement cases." D.I. 235 at 9-10. The indefiniteness issue is now ripe for decision, and indeed, as foretold by the Court, expert testimony (along with other record evidence) has exposed the term "application" as indefinite. IBM's expert has opined that the boundaries of what constitutes an "application" are dependent on ███████████████████████████████████████████ ████████████████ confirming that there is no objective basis to delineate what does and does not constitute an "application."

Thus, the record is clear that (a) there is no objective basis by which to determine what constitutes an "application" and (b) the mere choice of which subjective test to use alters the conclusion of whether the accused websites and mobile applications are within the scope of the claims. Under these facts, the claims are indefinite and summary judgment of invalidity is appropriate.

III.   **STATEMENT OF FACTS**

   A.   **The Asserted Claims Require Delineating Between Applications**

There is no dispute that "[i]n order to understand the scope of the Asserted Claims of the '967 and '849 Patents, a POSA must be able to not only understand what an application is, but

understand the boundaries between applications." Ex. 2[1] at ¶¶ 21-25. Claim 1 of the '967 Patent requires "presenting interactive *applications*" (plural), and Claims 1-3 recite various "command functions" for movement/random movement/navigation "*between applications*" (plural) and "to *a new application*." Ex. 4. Claims 1 and 8 of the '849 Patent each require that a user "can request *applications*" (plural), and Claim 1 further requires "structuring *applications*" (plural) and "structuring advertising in a manner compatible to that of the *applications*" (plural). Ex. 5.

The Court has construed the term "application" in accordance with what all parties agreed is an explicit definition in the patent: "information events composed of a sequence of one or more pages opened at a screen." D.I. 234 at 7. In doing so, the Court acknowledged Defendants' arguments that an indefiniteness problem arises when attempting to read the asserted claims on modern website functionality and deferred ruling on whether the construction was sufficient to provide an objective standard for delineating between applications. D.I. 235 at 9-10. Defendants were permitted to later raise an indefiniteness defense. *Id.* at 9 fn.7.

**B.  IBM Advocates Delineating Applications Based on "Subject Matter" (*i.e.*, "End Game") and "Sequence of Pages"**

At the *Markman* stage, Dr. Schmidt issued a claim construction declaration opining that "applications are described as 'information events,' *clearly distinguishable by the subject matter* that they represent." Ex. 6 at ¶ 19. At the claim construction hearing, IBM's counsel downplayed the subject matter distinction (Ex. 7 at 45:21-24) and Dr. Schmidt subsequently issued an infringement expert report in which he did not delineate between applications based on subject matter, but instead pointed to the "███████████" (*see, e.g.*, Ex. 8 at ¶ 270; Ex. 8A, VI.A ¶ 274). Most recently, Dr. Schmidt issued a rebuttal report, arguing that the Court's claim

---

[1] Exhibit numbers referenced herein refer to Exhibits to the Declaration of Marwan Elrakabawy, filed contemporaneously herewith.

construction set forth a ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮ Ex. 9 at ¶ 88. Dr. Schmidt further stated that in identifying the "information event(s)" for a website, one looks to the ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* at ¶ 98. Thus, Dr. Schmidt uses "information events," "▮▮▮▮▮▮," and "▮▮▮▮▮"—all of which are subjective—interchangeably.

Dr. Schmidt's theory fell apart, however, when he conceded in deposition that whether or not a particular sequence of pages of the accused Priceline website is or is not an application ▮▮▮▮▮▮▮▮▮▮▮▮▮▮:



Ex. 1, p. 626:12-19. Dr. Schmidt further explained—when arguing that the "Terms & Conditions" link on the Priceline website does not constitute a separate application—that ▮▮ ▮▮▮▮▮▮ (in his subjective view) ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮:



Ex. 1 at 606:6-23; 607:21-608:16.

IV. **ARGUMENT**

A. *Nautilus* Requires an "Objective" Basis to Delineate Between Applications

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, **with reasonable certainty**, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instr., Inc.*, 134 S.Ct. 2120, 2124 (2014). To find "reasonable certainty," "[t]he claims, when read in light of the specification and the prosecution history, must provide **objective boundaries** for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014). That is, "a claim term is indefinite if it 'leave[s] the skilled artisan to consult the **unpredictable vagaries of any one person's opinion**." *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 635 (Fed. Cir. 2015) (internal quotations omitted). All asserted claims are indefinite unless there is an objective basis to delineate between applications that is not subject to the unpredictable vagaries of any one person's opinion.

B. There is No Objective Standard for Delineating Between Applications

In declining to decide this issue at the claim construction stage, the court noted that it "may benefit from expert testimony developed in connection with the parties' infringement/non-infringement cases." D.I. 235 at 9-10. This has proven correct as the testimony and opinions of both IBM's and Defendants' experts confirm the subjective nature of delineating between applications in the accused websites and mobile applications.

As explained in Section III.B, Dr. Schmidt advocates using "█████" (which he uses interchangeably with "████████" and "information event") to delineate between applications. Dr. Schmidt confirms the subjective nature of this test, agreeing that for different end users "████████████████████████████████████." Ex. 1, at 603:7-21. █████
████████████████████████████████████████████████████████████
████████████████████████████████████████████. Ex. 1 at 626:12-19. This admission confirms that "application" is indefinite as it "leave[s] the skilled artisan to consult the '***unpredictable vagaries of any one person's opinion***.'" *Interval Licensing LLC*, 766 F.3d at 1371. The subjective nature of Dr. Schmidt's reliance on "█████" to define applications is further highlighted by his testimony that "████████████████" (selected by him) are relevant to his assessment of whether an aspect of a website qualifies as an application. *See* Ex. 1, 607:21-608:16.

Dr. Schmidt's testimony is in accord with Defendants' expert, Dr. Goldberg, who separately opines that "████████████████████████████████████████████
████████████████████████████████████████████." Ex. 10, at 25:4-8. Therefore, Dr. Goldberg concludes that "trying to discern what is in the mind of the user does not provide a -- an objective basis for determining when the user has left one application and started using another." *Id.* at 25:9-13. That is, whether labeled "█████," "████████," or "█████," "████████████████████████████████████████." Ex. 2 at ¶ 55. This is because the "█████" that Dr. Schmidt identifies "████████████████████████████
████████████████████████████████████████." *Id.*

Another of Defendants' experts, Mr. Eastburn, who regularly worked with interactive services at the priority date, explains the difficulty in applying the claims to modern websites.

Ex. 11, at ¶¶ 146-47. He explains that in "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* In that closed system, the administrator's list can be used to objectively identify "applications." *Id.* But, because the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.*[2]

Even beyond the unanimous testimony of both sides' experts, the subjective nature of Dr. Schmidt's infringement theories are apparent by comparing the theories to each other and prior IBM examples of "applications." For example, for the OpenTable mobile application, Dr. Schmidt lists ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as constituting separate applications. Ex. 8, at ¶ 270, Ex. 8B, at VI.C at ¶ 470. Dr. Goldberg explains that IBM's subjective conclusion that ▮▮▮▮▮▮▮▮▮▮▮▮ constitutes different applications "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 2, at ¶ 68. Dr. Schmidt not only "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," he does so in a way that is contrary to IBM's prior statements to the Patent Office, identifying "travel reservations" as a *single* "application." *Id.*, Ex. 3, History at 4.[3]

Nothing about the Priceline and OpenTable websites themselves justify Dr. Schmidt's disparate treatment—both sites contain general search pages[4] as well as city-specific search

---

[2] The Court made a similar observation: "However, the Court does not construe the claims to be limited to these embodiments in the specification, and the Court cannot rule conclusively that the claims are *not* indefinite based solely on the fact that certain embodiments disclose a way to distinguish between two different applications." D.I. 234 at 8 (emphasis in original).

[3] Mr. Eastburn was familiar with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. 11, at ¶¶ 104-07.

[4] http://www.priceline.com/hotels/; https://www.opentable.com/start/home.

pages.[5] The different, arbitrary divisions used to demonstrate infringement highlight the entirely subjective nature of "applications." IBM's reliance on this ambiguity to contrive post hoc arbitrary infringement theories establishes that the claims are indefinite, rather than "precise enough to afford clear notice of what is claimed, thereby appris[ing] the public of what is still open to them." *Nautilus, Inc.*, 134 S.Ct. at 2129 (quotation omitted).

Finally, while Dr. Schmidt asserts that Defendants' mobile applications each contain multiple "applications," IBM's counsel said the opposite at the *Markman* hearing: "Everybody knows what an application is today or an app. If you have an iPhone or Android, you know what an application is… ." Ex. 7, *Markman* Hearing Transcript at 31:5-11. And the inconsistency and confusion inherent in applying IBM's arbitrary distinctions was highlighted when Dr. Schmidt offered an opinion at his deposition that ████████████████████████████ which stands in diametric opposition to IBM's position in a previous lawsuit—that ████████ ████████████████████ . *Compare* Ex. 1, 690:15-691:3 with Ex. 12, at ¶ 460 ████████ ████████████████████████████████████████████████████ ████████████████████████████████████ , and Ex. 14 (same). Thus, the unanimous expert testimony, as well as the subjectiveness that is apparent from simply reviewing IBM's various infringement theories, mandate a finding of indefiniteness.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion should be granted.

---

[5] http://www.priceline.com/cheap-hotels-philadelphia-pennsylvania-PA-tk-c289560-hl.hotel-reviews-hotel-guidesid; https://www.opentable.com/san-francisco-restaurants.

| | |
|---|---|
| Dated: February 13, 2017 | */s/ Francis DiGiovanni* |
| | Francis DiGiovanni (#3189) |
| *Of Counsel:* | Thatcher A. Rahmeier (#5222) |
| | DRINKER BIDDLE & REATH LLP |
| Dan D. Davison | 222 Delaware Avenue, Suite 1410 |
| NORTON ROSE FULBRIGHT US LLP | Wilmington, DE 19801 |
| 2200 Ross Ave., Suite 3600 | (302) 467-4200 |
| Dallas, TX 75201 | francis.digiovanni@dbr.com |
| (214) 855-8000 | thatcher.rahmeier@dbr.com |
| dan.davison@nortonrosefulbright.com | |
| | |
| Richard S. Zembek | *Attorneys for Defendants The Priceline* |
| Daniel S. Leventhal | *Group Inc., Priceline.com LLC, KAYAK* |
| Daniel A. Prati | *Software Corporation, and OpenTable, Inc.* |
| NORTON ROSE FULBRIGHT US LLP | |
| Fulbright Tower | |
| 1301 McKinney, Suite 5100 | |
| Houston, TX 77010 | |
| (713) 651-5151 | |
| richard.zembek@nortonrosefulbright.com | |
| daniel.leventhal@nortonrosefulbright.com | |
| dan.prati@nortonrosefulbright.com | |

Gilbert A. Greene
Marwan Elrakabawy
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
(512) 474-5201
bert.greene@nortonrosefulbright.com
marwan.elrakabawy@nortonrosefulbright.com

- 9 -

## CERTIFICATE OF SERVICE

I certify that on February 13, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF prior to 6:00 p.m. ET, which will send notification of such filing to all registered participants. In addition, the foregoing will be served upon counsel of record via electronic mail.

Dated:  February 13, 2017                         */s/  Francis DiGiovanni*
                                                  Francis DiGiovanni (#3189)