# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, ) ) ) Plaintiff, ) ) v. ) ) THE PRICELINE GROUP INC., ) KAYAK SOFTWARE CORPORATION, ) OPENTABLE, INC., AND ) PRICELINE.COM LLC, ) ) Defendants. ) | C.A. No. 15-137-LPS<br><br>JURY TRIAL DEMANDED |

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '967 AND '849 PATENTS

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

Dan D. Davison
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201
(214) 855-8000
dan.davison@nortonrosefulbright.com

Dated:  February 13, 2017

Richard S. Zembek
Daniel S. Leventhal
Daniel A. Prati
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010
(713) 651-5151
richard.zembek@nortonrosefulbright.com
daniel.leventhal@nortonrosefulbright.com
dan.prati@nortonrosefulbright.com

Gilbert A. Greene
Marwan Elrakabawy
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
(512) 474-5201
bert.greene@nortonrosefulbright.com
marwan.elrakabawy@nortonrosefulbright.com

*Attorneys for Defendants The Priceline Group Inc., Priceline.com LLC, KAYAK Software Corporation, and OpenTable, Inc.*

**TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

II. SUMMARY OF THE ARGUMENT .............................................................................. 1

III. STATEMENT OF FACTS .............................................................................................. 1

    A. IBM Accuses Passive Caching by the User's Web Browser or Mobile OS of Performing all Retrieving/Fetching and Storing Steps of the Filepp Patents. ................................................................................................................ 1

    B. IBM Accuses Defendants of Sending Non-Binding Caching Instructions ............ 4

IV. PASSIVE CACHING IS NOT "PREFETCHING" OBJECTS OR "PREDETERMINING" AN AMOUNT OF DATA. ......................................................... 8

    A. IBM Fails to Identify any "Prefetching" as Required by Claim 1. ........................ 8

    B. IBM Fails to Identify Storing a "Predetermined Amount" of Advertising Data as Required by Claim 8. ................................................................................ 11

V. DEFENDANTS DO NOT DIRECT OR CONTROL STEPS PERFORMED, IF AT ALL, BY THIRD PARTIES. ..................................................................................... 5

    A. IBM Must Show Direction or Control Steps Defendants Do Not Perform. .......... 5

    B. IBM Accuses Third Party Hardware and Software of Performing the Claimed Retrieving/Fetching and Storing Steps. .................................................... 6

    C. IBM Fails to Show any Direction or Control of the Claimed Retrieving/Fetching and Storing Steps. ................................................................. 7

VI. CONCLUSION ............................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) (en banc) ................................................................. 5, 6, 7

*Medgraph, Inc. v. Medtronic, Inc.*,
    843 F.3d 942, 948 (Fed. Cir. 2016) ............................................................................. 6, 8

*Nalco Co. v. Chem-Mod, LLC*,
    No. 14-CV-2510, 2016 WL 1594966 (N.D. Ill. Apr. 20, 2016) ......................................... 7

*Travel Sentry, Inc. v. Tropp*,
    192 F. Supp. 3d 332, 336 (E.D. N.Y. 2016) ................................................................. 6, 7

*Voter Verified, Inc. v. Premier Election Sols., Inc.*,
    698 F.3d 1374 (Fed. Cir. 2012) ......................................................................................... 7

## TABLE OF EXHIBITS

1. All emphasis in quotations is added unless otherwise indicated. Citations are to last three digits of Bates number.

| NO. | EXHIBIT [full document or excerpt is included as appropriate] |
|---|---|
| 1 | U.S. Patent No. 7,072,849 ("'849 Pat.") |
| 2 | 1/17/2017 Rebuttal Expert Report of David Eastburn Regarding Noninfringement of U.S. Patent No. 5,796,967 and U.S. Patent No. 7,072,849 ("Eastburn Reb. Rep.") |
| 3 | Palpanas et al., *Reducing Retrieval Latencies in the Web: the Past, the Present, and the Future* (University of Toronto Technical Report CSRG-378, January 1999) |
| 4 | Deposition Transcript of Robert Filepp |
| 5 | U.S. Patent No. 5,796,967 |
| 6 | 12/6/2016 Opening Expert Report of Douglas C. Schmidt Concerning Infringement of U.S. Patent Nos. 5,796,967, 7,072,849, 5,961,601, and 7,631,346. |
| 6A | Opening Expert Report of Douglas C. Schmidt, Exhibit V.A, |
| 6B | Opening Expert Report of Douglas C. Schmidt, Exhibit VI.C |
| 6C | Opening Expert Report of Douglas C. Schmidt, Exhibit VI.A |
| 7 | Rebuttal Expert Report for Dr. Benjamin Goldberg Regarding Noninfringement of U.S. Patent Nos. 5,796,967 and 7,072,849 ("Goldberg Reb. Rep.") |
| 8 | Deposition of Jonathan Taylor ("Taylor Dep.") |
| 9 | Deposition of Travis Gebhardt ("Gebhardt Dep.") |
| 10 | Deposition of Olivier Larivain ("Larivain Dep.") |
| 11 | Deposition of Douglas Schmidt ("Schmidt Dep.") |
| 12 | IBM-PCLN00080320, Network Working Group, RFC: 2616, June 1999 |
| 13 | 12/3/16 Expert Report of David Stewart |
| 14 | '849 Patent Prosecution Document: April 29, 2002, Appeal Brief |
| 15 | IBM's Final Infringement Contentions |
| 16 | IBM's 2nd Supplemental Responses to Defendants Common Interrogatories 1-3 |
| 17 | Deposition of Amit Poddar |

## I. NATURE AND STAGE OF THE PROCEEDINGS

IBM alleges that Defendants' desktop websites infringe its '967 Patent and Defendants' desktop and mobile websites, as well as mobile applications infringe its '849 Patent (collectively, "the Filepp Patents"). Defendants move for summary judgment of noninfringement of the Filepp Patents.

## II. SUMMARY OF THE ARGUMENT

1. IBM's infringement theories for the Filepp Patents are based on *the end user's* web browser or mobile operating system—*not* Defendants—performing the steps of retrieving/fetching and storing. Because IBM cannot attribute those undisputed third-party acts to Defendants, summary judgment of noninfringement of both Filepp Patents is appropriate.

2. The Court determined Claim 1 of the '849 Patent requires "prefetching," D.I. 234 at 3, and rejected IBM's proposed construction of Claim 8 of the '849 that replaced "predetermined" with "certain" as "erroneously read[ing] out the temporal 'predetermined' limitation from the claim language." D.I. 234 at 21. IBM's '849 infringement theory does not meet the "prefetching" or "predetermined amount" limitations in all asserted claims. IBM accuses "passive" storing of objects by web browsers *after* the browser retrieved the objects as part of executing HTML code. This is not, as a matter of law, *pre*fetching or storing a *pre*determined amount. Summary judgment of noninfringement of the '849 Patent is appropriate for this additional, independent reason.

## III. STATEMENT OF FACTS

### A. IBM Accuses Passive Caching by the User's Web Browser or Mobile OS of Performing the Retrieving/Fetching and Storing Steps of the Filepp Patents.

Each of the asserted independent claims of the Filepp patents requires action by the "reception system" of intelligent retrieving/fetching and storing of objects.

Claim 1 of the '967 Patent, which is only asserted against Defendants' desktop websites (and not their mobile products) requires "the objects being retrieved from the objects stored *at the respective reception system*, or if unavailable from the objects stored *at the respective reception system*, then from the network." Ex. 5,[1] at Claim 1. The language is part of a broader step of "generating a screen display" that is performed, "***by the respective reception system***":

> a. ***generating a screen display at a respective reception*** system for a requested application, ***the screen display being generated by the respective reception system*** from data objects having a prescribed data structure, at least some of which objects may be stored at the respective reception system, ***the screen display including a plurality of partitions, the partitions being constructed from objects, the objects being retrieved from the objects stored at the respective reception system, or if unavailable from the objects stored at the respective reception system, then from the network***, such that at least some of the objects may be used in more than one application;

Ex. 5 at Claim 1.

Claim 1 of the '849 Patent requires "***selectively storing*** advertising objects <u>***at a store established at the reception system***</u>." Ex. 1. The Court construed this step to mean "***pre-fetching*** advertising objects ***and storing*** <u>***at a store established at the reception system***</u> in anticipation of display concurrently with the applications." D.I. 235 at 3. Claim 8 of the '849 Patent requires "***storing a predetermined amount of the advertising data*** <u>***in a store established at the respective reception systems***</u>." Ex. 1.

Addressing the retrieving step of Claim 1 of the '967 Patent, Dr. Schmidt asserts that " ▌ ▌ ▌ " *See, e.g.*, Ex. 6A, ¶ 61. Dr. Schmidt uses this same language— ▌ —to assert that the storing steps of Claims 1 and 8 of

---

[1] All Exhibit references herein are to the Exhibits appended to the Declaration of Marwan Elrakabawy, filed contemporaneously herewith.

the '849 patents are met for the desktop and mobile websites. *See, e.g.*, Ex. 6 ¶ 270; 6C ¶¶ 136, 354; *see also id.* at Ex. 6C ¶¶ 131-39 (███); *see also id.* at Ex. 6C ¶ 216 (███); Ex. 6C ¶¶ 348-56, 442 (███).[2]

For mobile applications, against which IBM asserts only the '849 Patent, Dr. Schmidt slightly varies his allegations, ███ *See* Ex. 6, ¶ 270; 6C ¶ 589; *see also* Ex. 6C ¶¶ 581-89, 675. While Dr. Schmidt makes the general statement that ███, he makes this statement based on ███. *See id.* ("███."). Engineers from each Defendant testified that ███. *See* Ex. 7, at ¶ 65 ███ (citing Ex. 8 at 65:10-66:7, 67:17-68:19), ¶ 108 (same for Kayak) (citing Ex. 9, at 26:2-18, 33:1-20, 134:23-135:6), ¶ 151 (same for OpenTable) (citing Ex. 10, at 13:17-17:16; 30:2-22). Dr. Schmidt's observations do not contradict this undisputed testimony.

Thus, for all asserted claims of the Filepp Patents, Dr. Schmidt asserts that the same functionality—███—meets each of the retrieving/fetching and storing limitations.

---

[2] As they pertain to this motion, Dr. Schmidt's allegations are substantially identical for all Defendants. Accordingly, specific allegations made against one of Priceline.com LLC, KAYAK, or OpenTable are cited as representative of allegations against the others.

### B. IBM Accuses Defendants of Sending Non-Binding Caching Instructions

Dr. Schmidt alleges Defendants ███████████████████████████████████████ ███████████████████████████████████████████████████████████" Ex. 6, ¶ 270; Ex. 6A ¶ 52. The record is clear that sending "cache value," is, at most, *optional* guidance to the user's device. Dr. Schmidt confirmed that ███████████████████████████ ███████████████████████████████████████████████ Ex. 6, at ¶ 93. As a result, Dr. Schmidt does not dispute that: "█████████████████████████████ ██████████████████████████████████████████████████████████████████ █████████████████████████████████." Ex. 11, at 723:23-724:4.

█████████████████████████████████ the HTTP Protocol standard ███████, which states that the cache control parameters that Dr. Schmidt identifies indicate only that the object "MAY be cached by any cache." Ex. 12, at 428 (capitalization in original). ████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████. *See* Ex. 13. As Defendants' expert, Dr. Goldberg, explains: "█████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████." Ex. 7, at ¶¶ 42, 85, 128. IBM cannot dispute this testimony from Dr. Goldberg.

### C. The '849 Patent Claims as Construed by the Court Require "Prefetching" and "Storing a Predetermined Amount."

Claim 1 of the '849 Patent requires "*selectively storing* advertising objects at a store established at the reception system." Ex. 1. The Court construed this step to mean "*pre-fetching* advertising objects *and storing* at a store established at the reception system in anticipation of display concurrently with the applications." D.I. 235 at 3. The Court held that "'selectively' …



relates to 'characterizations established for the respective reception system users' and involves the retrieval of customized advertising based on these characterizations. This is in contrast to Plaintiff's incorrect construction of 'selectively' as being directed to the criticality or non-volatile nature of advertisement objects." D.I. 234 at 20.

Claim 8 of the '849 Patent requires "***storing a predetermined amount*** of the advertising data in a store established at the respective reception systems." Ex. 1. The Court, in ruling that this phrase did not require construction, expressly rejected IBM's proposal to replace "predetermined" with "certain" because it would "erroneously read out ***the temporal 'predetermined' limitation*** from the claim language." D.I. 234 at 21.



*. See* Ex. 2 at ¶ 424 (quoting Ex. 3 at 10). *Id.* One of the named inventors and IBM's corporate representative, Mr. Filepp, likewise explained: ." Ex. 4, at 99:4-25 (" .").

## IV. DEFENDANTS DO NOT DIRECT OR CONTROL STEPS PERFORMED, IF AT ALL, BY THIRD PARTIES.

### A. IBM Must Show Direction or Control of Steps Defendants Do Not Perform.

"Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*,

797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). "Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Id.* An entity is responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, or (2) where the actors form a joint enterprise. *Id.* IBM does not allege that Defendants form a joint enterprise with the entities that perform those steps. *See, e.g.,* Ex. 6, at ¶¶ 288, 350, 322 (alleging only direction or control).[3]

Summary judgment is appropriate where the plaintiff fails to demonstrate direction or control of a third party. In *Medgraph, Inc. v. Medtronic, Inc.*, the Federal Circuit affirmed summary judgment of lack of direction or control of end users where the defendants "do[] not deny users the ability to use the [accused device] without performance of the claim step," do not offer an incentive to perform the claim step, and do not withhold a benefit where the claim step is not performed. 843 F.3d 942, 948 (Fed. Cir. 2016). Similarly, in *Travel Sentry, Inc. v. Tropp*, the court granted summary judgment finding lack of direction or control where the defendant's users were under no obligation to perform claim steps and would suffer no consequences from the defendant for failure to do so. 192 F. Supp. 3d 332, 336 (E.D. N.Y. 2016).

**B.  IBM Accuses Third-Party Hardware and Software of Performing the Claimed Retrieving/Fetching and Storing Steps**

As discussed in Section III.A, Dr. Schmidt asserts that the same functionality— ███████████████████████████████████████████████████—meets each of the ███████████████████████ limitations of the independent claims of the Filepp Patents for the accused websites. And, as discussed in that section, while Dr. Schmidt baldly claims that ███ ███████████████████████████, all evidence of record confirms that HTTP caching is

---

[3] *See also* Ex. 15, at 4, 8, 12 (███████████████████); Ex. 16, at 4 (same).

performed, if at all, by functionality in the mobile operating system. *See* Ex. 7, at ¶¶ 65, 108, 151 (gathering testimony). Thus, there is no factual dispute that if the required step occurs, the user's web browser or the user's mobile OS must perform that step.

### C. IBM Fails to Show Any Direction or Control of the Claimed Retrieving/Fetching and Storing Steps.

The sole argument Dr. Schmidt makes that could even arguably be related to "direction or control" is a repeated assertion that Defendants ███████████████████████████ ███████████████ which is insufficient as a matter of law. *See, e.g.,* Ex. 6, ¶ 270; 6C at ¶ 132. As discussed above, Dr. Schmidt has conceded that ███████████████████████ ████████████████████████████████████████████████████████████████ ████.[4] Nonbinding instructions are insufficient, as a matter of law, to show direction or control. *Voter Verified, Inc. v. Premier Election Sols., Inc.*, 698 F.3d 1374, 1384 (Fed. Cir. 2012) (summary judgment of no "direction or control" because "the record shows, at most, that the Defendants provide instructions on how to use their systems"); *Travel Sentry*, 192 F. Supp. at 366; *Nalco Co. v. Chem-Mod, LLC*, No. 14-CV-2510, 2016 WL 1594966, at *3 (N.D. Ill. Apr. 20, 2016) ("instructing power plants on how to use the Chem-Mod Solution Mixture does not show any control over the plants' performance of any alleged infringing method steps").

There is also no evidence of other indicia of direction or control. *See Akamai Techs.*, 797 F.3d at 1023 (explaining there can be direction or control where (1) a party acts through an agent, (2) a party contracts with another to perform method steps, or (3) "an alleged infringer conditions participating in an activity or receipt of a benefit upon performance of a step or steps" of a method). Indeed, IBM has not set forth any basis that supports the conclusion that

---

[4] Under IBM's own survey, ████████████████████████████████████████. *See id.* at ¶ 109. But the survey numbers are irrelevant—the fact of the survey itself establishes that ████████ ████████████████████████████████.



. *See, e.g.*, Ex. 6, at ¶¶ 288, 350, 322.

Nor does IBM suggest that Defendants ▮▮▮. Importantly, while for other browser-performed steps not subject to this Motion Dr. Schmidt asserts that ▮▮▮, he makes no such assertion ▮▮▮. *Compare, e.g.,* Ex. 6, ¶ 270; 6A ¶ 49 ▮▮▮ *with id.* at ¶¶ 58-66 (▮▮▮), Ex. 6, ¶ 270; 6C at ¶¶ 131-139 (▮▮▮). Defendants' expert, Dr. Goldberg, confirmed that ▮▮▮. *See* Ex. 7, at ¶¶ 52, 95, 138. Additionally, Dr. Goldberg confirmed that ▮▮▮. *Id.* Accordingly, summary judgment is appropriate. *See Medgraph, Inc.*, 843 at 948.

## V. PASSIVE CACHING IS NOT "PREFETCHING" OBJECTS OR "PREDETERMINING" AN AMOUNT OF DATA.

Despite failing at the claim construction stage to remove "prefetching" from Claim 1 and "predetermined amount" from Claim 8, IBM asserts theories that ignore the Court's claim construction order and read-out these limitations.

### A. IBM Fails to Identify Any "Prefetching" as Required by Claim 1.

IBM asserts three alternative theories for how "prefetching" in Claim 1 is met, none of which actually involve "prefetching." In each of the three theories IBM's expert, Dr. Schmidt ▮▮▮ Ex. 6, ¶ 270; 6B, at ¶¶ 89, 92, 98. "Prefetching" does not happen "▮▮▮

████████████████████████" rather, as explained in Section III.C above, the Court's construction and the testimony of Mr. Filepp (a named inventor and IBM's corporate representative) make clear that prefetching refers to requesting advertising before a user request.

First, Dr. Schmidt argues that "████████████ ████ ████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████." *See, e.g.*, Ex. 6, ¶ 270; Ex. 6B, at ¶ 89. As an initial matter, Dr. Schmidt admitted at his deposition that ████████████████████
████████████████████████████████████████████████████
████████████████ Ex. 11 at 299:5-21; *see also id.* at 305:22-306:11. This argument fails as a matter of law. The claim language unambiguously requires "selectively storing advertising objects at a store established *at the reception system*." The very purpose of prefetching, which the Court ruled is part of "selectively storing," is "so [the advertising objects] are available in RS local store 440 when requested." See Ex. 2, at ¶ 419 (quoting Ex. 1, at 33:63-65). Thus, the prefetching must result in the pre-fetched advertising being stored at the reception system. Here, Dr. Schmidt alleges that "████████████████████████████████" (Ex. 6 ¶ 270; 6B at ¶ 308)—████████████████████████████████████████████████████
████████████████████████. Ex. 11, at 299:5-21, 305:22-306:11. In any event, as discussed above, Dr. Schmidt does not identify ████████████████████████
████████████████████████ which is not enough.[6]

---

[5] Defendants dispute that anything Dr. Schmidt identifies is properly considered advertising, but are not seeking summary judgment on that issue.

[6] Dr. Schmidt acknowledges that ████████████████████████████████████████
████████████████████████████████████████████████████ Ex. 6A, at ¶ 114. This is incorrect. Ex. 17, 230:4-17. This is a further and independent basis to conclude Priceline.com

Second, Dr. Schmidt argues that "███████████████████

████████████████████████████████████████████████████████

█████████████████████████████." *See, e.g.* Ex. 6, ¶ 270; 6B at ¶ 95; 6C ¶ 119.

That is, Dr. Schmidt states in no uncertain terms that ███████████████

████████████████████████████████████████████████████████

████████████████████████████. If Dr. Schmidt were correct, every object request made as part of building a current page that is passively cached would comprise an instance of prefetching. Dr. Schmidt makes this logical leap by assuming that ████████████

██████████████████████████████████ Dr. Schmidt ignores the Court's claim construction, which requires both "prefetching" *and* storing "in anticipation of display." Dr. Schmidt cannot satisfy proof of "prefetching" ████████████████

████████████████████████████████████████████████████████

██████████████████████████████. The patent, named inventor, and computer science literature all distinguish between active and passive caching. The '849 Patent discloses and claims passive and active caching separately, even using two different programming commands—"GET" for "synchronous requests" as part of page rendering and "FETCH" for "asynchronously requests." Ex. 1, at 27:8-13. The Palpanas paper likewise describes passive and active (i.e., prefetching) caching as separate concepts. *See* Ex. 2, at ¶ 431 (citing Ex. 3, at 10). What Dr. Schmidt accuses is precisely what the inventor and IBM corporate representative Mr. Filepp conceded was *not* prefetching: ██████████████████████████

████████████████ Ex. 4, at 99:4-25.

Third, Dr. Schmidt once again argues that ████████████████████████

---

does not practice this claim limitation under Dr. Schmidt's first theory.

██████████████████████████. *See, e.g.*, Ex. 6, ¶ 270; Ex. 6B at ¶¶ 98-100. In this variation, Dr. Schmidt once against explains that ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████. *Id.*; 6C at VI.A-55.[7] Dr. Schmidt once again conflates the separate requirements in the Claim Construction Order of "prefetching" and storing "in anticipation of display." This argument contradicts the patent, Palpanas, and Mr. Filepp for the same reasons as IBM's second theory, i.e., ████████

████████████████████████████████████████████. Ex. 2, at ¶ 434.

### B. IBM Fails to Identify Storing a "Predetermined Amount" of Advertising Data as Required by Claim 8.

Claim 8 requires "storing a *predetermined* amount of the advertising data." Dr. Schmidt alleges that the ████████████████████████████████████████████████████

████████████████████████████████████████████████████ *See, e.g.* Ex. 6, ¶ 270; 6C, at ¶ 215. More specifically, Dr. Schmidt asserts that ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████. *See id.* at ¶ 216. Even to the extent the combination of ████████

████████████████████████████████████████████████ provide guidance on storing of specified objects, such guidance is neither "predetermined" nor an "amount."

First, despite the Court explicitly rejecting IBM's attempts to remove "predetermined" from the claim in favor of "certain (i.e., specific)" (D.I. 234 at 21), Dr. Schmidt applies a

---

[7] Dr. Schmidt does not assert this third theory applies to KAYAK's website or mobile applications, but rather only KAYAK's mobile website. He specifically alleges ████████ ████████████████████████████████████████████████████████████████.

██████████████████████████████████████████████████████████████████

██████. *See id.* at ¶¶ 215-18. Dr. Schmidt's failure to address ███████████████ of the claim ignores the Court's claim construction. As Defendants' expert, Mr. Eastburn, explains, "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." Ex. 2, at ¶ 443. Thus, the browser cannot make any determinations until *after* this information is received, and Dr. Schmidt identifies ████████████████████████████████████. *Id.* Further, the number of objects stored would vary from page to page. Therefore, "████████████████████████████████████████████████████████████." *Id.* at ¶ 444.

Second, beyond the temporal limitation, the claim requires an "amount." During prosecution, IBM said the "predetermined amount" is "the amount of data which is pre-fetched." Ex. 14, at 27. And the specification explains that when the available pre-fetched data drops below "the pre-fetched advertising threshold", the ad manager will pre-fetch additional advertising objects. Ex. 2, at ¶¶ 438-440 (quoting Ex. 1, at 33:65-34:3). But Dr. Schmidt just describes ████████████████████████████████████████████████. *See, e.g.,* Ex. 6 ¶ 270; 6C at ¶ 218. For example, Dr. Schmidt argues ██████████████████████████████████████████████████████████████████████████████████████████ *Id.* But as Mr. Eastburn explains, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Thus, IBM's theory also fails for this reason.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment of noninfringement of the '849 and '967 Patents.

Dated: February 13, 2017

*Of Counsel:*

Dan D. Davison
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201
(214) 855-8000
dan.davison@nortonrosefulbright.com

Richard S. Zembek
Daniel S. Leventhal
Daniel A. Prati
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010
(713) 651-5151
richard.zembek@nortonrosefulbright.com
daniel.leventhal@nortonrosefulbright.com
dan.prati@nortonrosefulbright.com

Gilbert A. Greene
Marwan Elrakabawy
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
(512) 474-5201
bert.greene@nortonrosefulbright.com
marwan.elrakabawy@nortonrosefulbright.com

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

*Attorneys for Defendants The Priceline Group Inc., Priceline.com LLC, KAYAK Software Corporation, and OpenTable, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on February 13, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF prior to 6:00 p.m. ET, which will send notification of such filing to all registered participants.  In addition, the foregoing will be served upon counsel of record via electronic mail.

Dated:  February 13, 2017                              */s/  Francis DiGiovanni*
                                                                    Francis DiGiovanni (#3189)